# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **WAYNE WELMON, Individually and on Behalf of all others similarly situated,** : : : | |
| : | Case No.  06-CV-01283 (JES) |
| **Plaintiff,** : | |
| : | <u>CLASS ACTION</u> |
| **vs.** : : | |
| **CHICAGO BRIDGE & IRON CO. N.V., GERALD M. GLENN, ROBERT B. JORDAN, and RICHARD E. GOODRICH,** : : : : | |
| : | |
| **Defendants.** : | |

## LEAD PLAINTIFFS' REPLY MEMORANDUM OF LAW
## <u>IN SUPPORT OF MOTION FOR CLASS CERTIFICATION</u>

**COHEN, MILSTEIN, HAUSFELD & TOLL, P.L.L.C.**
Steven J. Toll (admitted *pro hac vice*)
Mark S. Willis (admitted *pro hac vice*)
Jason M. Leviton (admitted *pro hac vice*)
1100 New York Avenue, N.W.
Suite 500, West Tower
Washington, D.C.  20005
Telephone:  (202) 408-4600
Facsimile:  (202) 408-4699

**MILBERG, WEISS & BERSHAD LLP**
Barry A. Weprin (BW-8637)
Kristi Stahnke McGregor (KSM-1575)
Belinda Williams (BW-6652)
One Pennsylvania Plaza - 49th Floor
New York, NY  10119
Telephone:  (212) 594-5300
Facsimile:  (212) 868-1229

***Co-Lead Counsel For Lead Plaintiffs***

**SPECTOR ROSEMAN & KODROFF, P.C.**
Robert M. Roseman (RR-1103)
Jeffrey L. Kodroff
David Felderman
Rachel E. Kopp
Richard A. Kraemer (admitted *pro hac vice*)
1818 Market Street, 25th Floor
Philadelphia, PA  19103
Telephone:  (215) 496-0300
Facsimile:  (215) 496-6611

# TABLE OF CONTENTS

PRELIMINARY STATEMENT .................................................................................1

ARGUMENT .........................................................................................................2

I.      PLAINTIFFS' CLAIMS ARE TYPICAL OF THOSE HELD BY THE
        CLASS ...................................................................................................2

        A.      Plaintiffs' Sophistication and Trading Strategies Do Not Affect
                Typicality ....................................................................................3

                1.      Fortis ..............................................................................5

                2.      Metzler ...........................................................................6

        B.      The Timing of Plaintiffs' Purchases Does Not Render Them
                Atypical .......................................................................................7

                1.      Fortis' and Metzler's Purchase of CB&I Securities After The
                        Company's October 31, 2005 Press Release Does Not Render
                        Them Atypical..................................................................8

                2.      Fortis' Strategy of Averaging Down in CB&I Securities After
                        the Class Period Is A Common Investment Strategy That Does
                        Not Render It Atypical ....................................................10

                3.      Mr. Mundy .....................................................................11

III.    PLAINTIFFS CLEARLY SATISFY THE ADEQUACY
        REQUIREMENT .....................................................................................13

        A.      Plaintiffs Possess The Requisite Level Of Knowledge And
                Understanding About The Action And Appropriately Rely
                On Counsel .................................................................................13

                1.      Fortis and Metzler .........................................................15

                2.      Mr. Mundy .....................................................................16

        B.      Defendants' Attack On The Adequacy Of Certain Plaintiffs Who Have
                Not Negotiated A Fee Agreement Or Monitored Expenses Should Be
                Rejected......................................................................................18

        C.      A Plaintiff Has The Right To Substitute Counsel ...................................20

        D.      Defendants' Argument That Fortis Failed To Preserve Relevant
                Documents Is Baseless ..................................................................21

        E.      Metzler Has Standing To Sue On Behalf Of Metzler Ireland And Its
                Certification Does Not Raise An Inference Of A Lack Of Credibility
                Rendering Metzler An Inadequate Lead Plaintiff ...................................22

i

F.    Direct Communication Between All Three Class Representatives Has Not Yet Been Necessary ........................................................................25

**CONCLUSION**...................................................................................................................26

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Adelphia Communications. Corp. Sec. & Derivative Litig.*,
No. 03 MDL 1529 (LMM), 2005 WL. 2667201 (S.D.N.Y. Oct. 19, 2005)....................23

*In re AM International, Inc. Sec. Litig.*,
108 F.R.D. 190 (S.D.N.Y. 1985)...............................................................8, 12

*In re American Italian Pasta Co. Sec. Litig.*, No. 05-0725-CV-W-ODS,
2007 WL. 927745 (W.D. Mo. Mar. 26, 2007) ...............................................3, 7

*Alidina v. Penton Media, Inc.*,
143 F. Supp. 2d 363 (S.D.N.Y. 2001) ............................................................14

*In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*,
Case No. MDL Docket No. 1500, 2006 U.S. Dist. LEXIS 78101,
(S.D.N.Y. Sept. 28, 2006) ........................................................................20-21

*In re Arakis Energy Corp. Sec. Litig.*,
No. 95-CV-3431 (ARR), 1999 WL. 1021819 (E.D.N.Y. Apr. 27, 1999) ...................5, 11

*In re Avon Sec. Litig.*,
No. 91 Civ. 2287 (LMM), 1998 WL. 834366 (S.D.N.Y. Nov. 30, 1998)........................6

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
185 F.R.D. 172, 177 (S.D.N.Y. 1999)................................................................3

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
222 F.3d 52 (2d Cir. 2000) ..............................................................3, 13-14, 16

*Beck v. Status Game Corp.*,
No. 89 Civ 2923 (DNE), 1995 WL. 422067 (S.D.N.Y. July 14, 1995) ...........................14

*Berger v. Compaq Computer Corp.*,
279 F.3d 313 (5th Cir. 2002)........................................................................3

*Berwecky v. Bear, Stearns & Co., Inc.*,
197 F.R.D. 65 (S.D.N.Y. 2000).....................................................................11

*In re Cendant Corp. Sec. Litig.*,
264 F.3d 201 (3d Cir. 2001) .........................................................................15

*Cosmas v. DelGiorno*,
No. CV-941974, 1995 WL. 62598 (E.D.N.Y. Feb. 8, 1995) ............................................11

*Cromer Finance Ltd. v. Berger*,
205 F.R.D. 113 (S.D.N.Y. 2001).....................................................................6

*Cross v. 21st Century Holding Co.*,
    No. 00 Civ. 4333 (MBM), 2004 WL. 307306 (S.D.N.Y. Feb. 18, 2004) .......................... 5

*Darvin v. Int'l Harvester Co.*,
    610 F. Supp. 255 (S.D.N.Y. 1985) ................................................................................ 14

*Davidson v. Citizens Gas & Coke Utility*,
    238 F.R.D. 225 (S.D. Ind. 2006) ................................................................................... 24

*Davis v. Speechworks Int'l, Inc.*,
    No. 03-CV-533S(F), 2005 WL. 1206894 (W.D.N.Y. May 20, 2005) ...................... 21, 22

*DeMarco v. Robertson Stephens Inc.*,
    228 F.R.D. 468 (S.D.N.Y. 2005) .................................................................................... 4

*Dietrich v. Bauer*,
    192 F.R.D. 119 (S.D.N.Y. 2000) .................................................................................... 8

*Dura-Bilt Corp. v. Chase Manhattan Corp.*,
    89 F.R.D. 87 (S.D.N.Y. 1981) ....................................................................................... 7

*Epstein v. Am. Reserve Corp.*,
    Nos. 79 C 4767, 80 C 6251, 81 C 1475, 1985 WL 2598 (N.D. Ill.
    Sept. 18, 1985) ............................................................................................................. 19

*Epstein v. Am. Reserve Corp.*,
    No. 79 C 4767, 1988 WL 40500, (N.D. Ill. Apr. 21, 1988) ........................................... 11

*Feder v. Elec. Data Sys. Corp.*,
    429 F.3d 125 (5th Cir. 2005) ........................................................................................ 10

*Ferraro v. General Motors Corp.*,
    105 F.R.D. 429 (D.N.J. 1985) ...................................................................................... 19

*Matter of First City Nat. Bank & Trust Co.*,
    759 F. Supp. 1048 (S.D.N.Y. 1991) ............................................................................. 20

*In re FirstPlus Fin. Group, Inc.*,
    No. Civ.A.3: 98-CV-2551-M, 2002 WL 31415951 (N.D. Tex. Oct. 28, 2002).............. 10

*Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    119 F.R.D. 344 (S.D.N.Y. 1988) .................................................................................. 11

*Gary Plastic Packaging Corp v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    903 F.2d 176 (2d Cir. 1990) ........................................................................................... 3

*In re Global Crossing Sec. & ERISA Litig.*,
    225 F.R.D. 436 (S.D.N.Y. 2004) .................................................................................... 2

*In re Harcourt Brace Jovanovich, Inc. Sec. Litig.*,
    838 F. Supp. 109 (S.D.N.Y. 1993) ................................................................................. 6

*In re Initial Pub. Offering Sec. Litig.*,
  227 F.R.D. 65 (S.D.N.Y. 2004) *vacated on other grounds by*
  471 F.3d 24 (2d Cir. 2006) ....................................................................................... 4, 23

*In re Initial Pub. Offering Sec. Litig.*,
  471 F.3d 24 (2d Cir. 2006) ........................................................................................ 1, 3

*Kline v. Wolf*,
  88 F.R.D. 696 (S.D.N.Y. 1981) ...................................................................................... 4

*Koenig v. Benson*,
  117 F.R.D. 330, 336 (E.D.N.Y. 1987)........................................................................... 11

*Kolin v. American Plan Corp.*,
  No. CV-84-3183, 1986 WL 36311 (E.D.N.Y. Apr. 8, 1986)...................................... 4, 11

*Kovaleff v. Piano*,
  142 F.R.D. 406 (S.D.N.Y. 1992)................................................................................... 11

*Madanes v. Madanes*,
  981 F. Supp. 241 (S.D.N.Y. 1997) ................................................................................ 23

*McAnaney v. Astoria Financial Corp.*,
  No. 04-CV-1101 (JFB)(WDW), 2006 WL 2689621
  (E.D.N.Y. Sept. 19, 2006) .............................................................................................. 16

*McDaniel v. County of Schenectady*,
  No. 04-cv-757 GLS/RFT, 2005 WL 1745566, (N.D.N.Y. July 21, 2005)...................... 22

*In re McDonnell Douglas Equip. Leasing Sec. Litig.*,
  842 F. Supp. 733 (S.D.N.Y. 1994) ................................................................................ 19

*In re Microstrategy Sec. Litig.*,
  172 F. Supp. 2d 778 (E.D. Va. 2001) ............................................................................ 24

*In re Network Assoc., Inc., Sec. Litig.*,
  76 F. Supp. 2d 1017 (N.D. Cal. 1999)............................................................................ 25

*Norman v. Arcs Equities Corp.*,
  72 F.R.D. 502 (S.D.N.Y. 1976)...................................................................................... 22

*In re Nortel Networks Corp. Sec. Litig.*,
  No. 01 Civ. 1855(RMB), 2003 WL 22077464 (S.D.N.Y. Sept. 8, 2003) ................... 9, 15

*In re NTL, Inc. Sec. Litig.*,
  No. 02 Civ. 3013 (LAK ) (AJP), 2006 WL 330113 (S.D.N.Y. 2006)............................. 13

*In re Organogenesis Sec. Litig.*,
  No. 04-10027-JLT, -- F.R.D. --, 2007 WL 776425  (D. Mass.
  March 15, 2007) .............................................................................................................. 24

v

*Piambino v. Bailey*,
610 F.2d 1306 (5th Cir. 1980) ........................................................................... 19

*Rolex Employees Ret. Trust v. Mentor Graphics Corp.*,
136 F.R.D. 658 (D. Ore. 1991) ........................................................................... 11

*Saddle Rock Partners, Ltd. v. Hiatt,* No. 96 Civ. 9474 (SHS),
2000 WL. 1182793 (S.D.N.Y. Aug. 21, 2000) ............................................... 4-5

*In re Safeguard Scientifics*,
216 F.R.D. 577 (E.D. Pa. 2003). ................................................ 11, 12, 13, 17

*In re Salomon Analyst Metromedia Litig.*,
236 F.R.D. 208 (S.D.N.Y. 2006) ....................................................... 4, 7, 10-11

*Scott v. N.Y. City Dist. Council of Carpenters Pension Plan*,
224 F.R.D. 353 (S.D.N.Y. 2004) ....................................................................... 14

*In Re Sepracor Inc. Sec. Litig.*,
233 F.R.D. 52 (D. Mass. 2005) .......................................................................... 24

*In re Sonus Networks, Inc. Sec. Litig.*,
229 F.R.D. 339 (D. Mass. 2005) ....................................................................... 16

*Surowitz v. Hilton Hotels Corp.*,
383 U.S. 363 (1966) ............................................................................................ 14

*Swack v. Credit Suisse First Boston*,
230 F.R.D. 250 (D. Mass. 2005) ................................................................. 16, 24

*In re Texaco, Inc. Shareholder Litig.*,
20 F. Supp. 2d 577 (S.D.N.Y. 1998) *rev'd on other grounds by*
*Kaplan v. Rand*, 192 F.3d 60 (2d Cir. 1999) ................................................... 19

*In re USEC Sec. Litig.*,
168 F. Supp. 2d 560 (D. Md. 2001) ................................................................... 16

*In re Veeco Instruments, Inc. Sec. Litig.*,
235 F.R.D. 220 (S.D.N.Y. 2006) ....................................................................... 14

*In re Vivendi Universal, S.A. Sec. LitiG.*,
No. 02 Civ. 5571 (RJH)(HBP),  ---F.R.D.---, 2007 WL 861147
(S.D.N.Y. Mar. 22, 2007) ........................................................................ 3, 5, 21

*Weikel v. Tower Semiconductor Ltd.*,
183 F.R.D. 377 (D.N.J. 1998) .............................................................................. 4

*Weinberg v. Atlas Air Worldwide Holdings, Inc.*,
216 F.R.D. 248 (S.D.N.Y.2003) ........................................................................ 23

*In re WorldCom Sec. Litigation*,
    219 F.R.D. 267 (S.D.N.Y. 2003) ................................................................. 2-3, 4, 18-19

*Yang v. Odom*,
    No. Civ.A. 02-5968(JAP), Civ.A. 03-725(JAP), 2005 WL 2000156
    (D.N.J. Aug. 19, 2005) ........................................................................................ 11

*Young Am. Merch. Corp. v. Top Quality Products*,
    Case No. 02-cv-5962, 2004 U.S. Dist. LEXIS 5748 (S.D.N.Y. Apr. 6, 2004) ............... 20

## DOCKETED CASES

*In re Converium Holding AG Sec. Litig.*,
    04 Civ. 7897 (MBM) (S.D.N.Y) ...................................................................... 20

*Ong, et al. v. Sears, Roebuck & Co., et al.*,
    No. 03 C 4142 (RRP) (N.D. Ill) ...................................................................... 20

*In re Parmalat Sec. Litig.*,
    No. 04 MD 1653 (LAK) (S.D.N.Y.) ............................................................... 20

*In re PSINet, Inc. Sec. Litig.*,
    No. 00-1850-A (E.D. Va.) .............................................................................. 20

*Welmon v. Chicago Bridge & Iron Co. N.V.*,
    Case No. 06-CV-01283 (JES) ....................................................................... 20

## FEDERAL STATUTES

15 U.S.C. § 78u-4(a)(3)(B)(v) ................................................................................ 20

## STATE STATUTES

N.Y. Judiciary Law § 488 (2006) .......................................................................... 19

Lead Plaintiffs, Fortis Investment Management N.A./S.A. ("Fortis") and Metzler Investment GmbH ("Metzler") and class member Walter J. Mundy ("Mundy") (collectively "Plaintiffs"), respectfully submit this Reply Memorandum of Law in support of their motion for Class Certification[1] in response to the opposition briefs filed by defendants Chicago Bridge and Iron Company N.V. ("CB&I"), Richard E. Goodrich ("Goodrich"), Gerald M. Glenn ("Glenn") and Robert B. Jordan ("Jordan") (collectively "Defendants").

## PRELIMINARY STATEMENT

In their opening brief, Plaintiffs proffer ample evidence that clearly establishes that they each meet Rule 23's requirements for certification of a class, including factual evidence from the record and a declaration of a well-respected expert on damages and market efficiency.[2] Simply put, Plaintiffs have overwhelmingly made the requisite showing and have satisfied the legal standard under the Federal Rules and Second Circuit case law. *See In re Initial Public Offering Sec. Litig.*, 471 F.3d 24, 40-41 (2d Cir. 2006) ("*IPO*").[3]

Defendants' challenges to class certification raise the usual panoply of reasons suggesting that no class can ever be certified. By mischaracterizing deposition testimony, Defendants resort to specious attacks on the adequacy and typicality of each Plaintiff ranging from not knowing

---

[1] The class is defined as all those who purchased and/or otherwise acquired the securities of Chicago Bridge & Iron N.V. ("Chicago Bridge," "CB&I," or the "Company") during the period March 9, 2005 through February 3, 2006, inclusive (the "Class Period"), and who were damaged thereby.

[2] Defendants do not challenge that the market in which CB&I traded was efficient at all relevant times.

[3] The Second Circuit recently "clarified" the standard of proof for class certification in *IPO*. Now, courts must make a "ruling" or "determination" that the plaintiffs meet each element of Rule 23 to certify a class. by assessing all evidence applicable to each element of Rule 23, even where such an assessment overlaps with a finding on the merits. *IPO*, 471 F.3d at 27, 40, 41. Additionally, the Court "must receive enough evidence, by affidavits, documents, or testimony, to be satisfied that each Rule 23 requirement has been met." *Id.* at 41. As illustrated by the substantial evidence Plaintiffs have presented in their opening brief and in the declarations and exhibits in support thereof, Plaintiffs have satisfied each of the Rule 23 elements, and class certification should be granted.

every facet of the litigation, to failing to oversee the litigation, to using sophisticated trading practices when making the decision to purchase CB&I stock.[4]    Additionally, Defendants argue that because of the timing of each Plaintiff's purchases in CB&I, regardless of the circumstances under which the decision to purchase was made, Plaintiffs cannot represent the entire class.  Yet, neither the facts developed during class discovery nor the law provides any support for Defendants' arguments.

For the reasons set forth herein and in Plaintiffs' opening brief, the Court should certify this action and the Plaintiffs as representatives of the class.

## ARGUMENT

## I.    PLAINTIFFS' CLAIMS ARE TYPICAL OF THOSE HELD BY THE CLASS

Defendants attack Fortis and Metzler, two widely respected institutional investors, as atypical because of their status as institutional investors, their "sophisticated" trading strategies, and having purchased stock after CB&I's October 31, 2005 partial disclosure.  Defendants also argue that Mr. Mundy, a highly educated retired construction engineer, who purchased prior to the partial disclosure, is atypical of post-October 31 purchasers.  Defendants' arguments are entirely unavailing.

The typicality requirement of Rule 23(a)(3) addresses whether the *claims* of the representative plaintiffs are typical of the *claims* of other class members – *not* whether the class representatives are typical of all class members in other respects.  Thus, the typicality requirement is met, regardless of the "variations in [underlying] fact patterns" -- such as the timing of the class representatives' transactions, their purportedly differing investment strategies, or their access to supposedly different information.  *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 452 (S.D.N.Y. 2004).  Moreover, Defendants fail to show, because they cannot, that any of the Plaintiffs are "subject to unique defenses *which threaten to become the focus* of the litigation."  *In*

---

[4] Defendants have only raised challenges to the proposed class representatives' typicality and adequacy and have therefore conceded that all other Rule 23 requirements have been met.

*re WorldCom, Inc. Sec. Litig.*,, 219 F.R.D. 267, 281 (S.D.N.Y. 2003) (emphasis in original)

(citations omitted).[5]  *See also In re Vivendi Universal, S.A. Sec. Litig.*, No. 02 Civ. 5571

(RJH)(HBP), ___F.R.D.___, 2007 WL 861147, *7 (S.D.N.Y. Mar. 22, 2007) (typicality requires

that claims of the named plaintiffs arise from the same practice or course of conduct that gives

rise to the claims of putative class members).

     As set forth below, nothing about the timing of Plaintiffs' purchases makes them unable

to represent the entire Class.  Nor do their particular investment strategies affect typicality.

     **A.**     **<u>Plaintiffs' Sophistication and Trading Strategies Do Not Affect Typicality</u>**

     Defendants attack both Fortis and Metzler for their sophistication and investment

strategies.[6]  *See CB&I Opp.* at 5-6, 13-16.  They argue that both Fortis' and Metzler's investment

strategies involved seeking out distressed companies that were replete with problems and invited

---

[5] *See also Gary Plastic Packaging Corp v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 180 (2d Cir. 1990) ("[I]t is settled that the mere existence of individualized factual questions with respect to the class representative's claim will not bar class certification.")

[6] The PSLRA was specifically created to encourage institutions – with a necessarily more sophisticated investment approach – to take lead roles in securities class actions.  Indeed, the drafters of this legislation specifically described the claims of such investors as "typical."  House Conf. Rep. No. 104-369, at 34 (1995), *as reprinted in* 1995 U.S.C.C.A.N. 730, 733.  *See also, e.g., Berger v. Compaq Computer Corp*., 279 F.3d 313, 313 (5th Cir. 2002).  Defendants' reliance on *Baffa* that a sophisticated broker is atypical of other investors, *CB&I Opp.* at 16, is misplaced. In *Baffa*, the trial court determined that the broker had access to more information than the potential class that even led to purchases after the company in question declared bankruptcy. *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 59-60 (2d Cir. 2000).  *See also Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.,* 185 F.R.D. 172, 177 (S.D.N.Y. 1999). However, it is patently clear that neither Fortis nor Metzler had any inside information or information that was otherwise unavailable to the public.

Defendants also make a nebulous reference that Fortis' and Metzler's relationship with outside counsel to monitor their holdings and advise them of potential litigation is somehow improper. *CB&I Opp.* at 19.  However, the pre-existing relationship between the lead plaintiff and class counsel is not problematic and, due to the operation of large funds, not surprising that a lead plaintiff would arrange for a law firm to keep it apprised of events through portfolio monitoring, including relevant lawsuits.  *In re American Italian Pasta Co. Sec. Litig.*, No. 05-0725-CV-W-ODS, 2007 WL 927745, *5 (W.D. Mo. Mar. 26, 2007).  Accordingly, Fortis and Metzler did nothing improper when they engaged counsel to monitor their investments for precisely the type of conduct CB&I engaged in - fraud.

investment only by those experienced in dealing with volatile securities. Not only does the

testimony indicate otherwise, but the law completely eviscerates Defendants' contention.

It is well established that a class representative's particular investment strategy does not

destroy typicality. *See In re IPO Sec. Litig.*, 227 F.R.D. 65, 96 (S.D.N.Y. 2004) *vacated on other*

*grounds by* 471 F.3d 24; *WorldCom,* 219 F.R.D. 267, 281-82 (S.D.N.Y. 2003). Notably, in

*Weikel v. Tower Semiconductor Ltd.*, 183 F.R.D. 377, 392-393 (D.N.J. 1998), the court held that

"[b]ecause a particular investor is sophisticated or engages in speculation does not mean the fraud

on the market theory is inapplicable or the investor is an inappropriate class representative." *Id.*

at 392-93.[7]  As stated by Judge Lynch, an investor's

> sophistication and the particulars of his investment strategy do not suffice to
> render him inadequate or atypical of the class. Courts in this circuit have
> repeatedly rejected claims that the presence of different types of investors within
> a plaintiff class can defeat the Rule 23(a) requirements.

*In re Salomon Analyst Metromedia Litig.*, 236 F.R.D. 208, 215 (S.D.N.Y. 2006) (*citing*, *inter*

*alia, WorldCom,* 219 F.R.D. at 281-82); *DeMarco v. Robertson Stephens, Inc.*, 228 F.R.D. 468,

471-72 (S.D.N.Y. 2006) (same).[8]

Where, as here, the sophisticated plaintiffs' claims are based on the fraud-on-the-market

theory, and the alleged fraudulent conduct flowed from the same pattern of events that gave rise

to the same liability as it did for the class members, the sophisticated investors are entirely typical

of the class. *See Saddle Rock Partners, Ltd. v. Hiatt,* No. 96 Civ. 9474 (SHS), 2000 WL

---

[7] Defendants suggest that the class representative was deemed inadequate in *Kline v. Wolf*
because he engaged in speculative trading of the stock based on his belief that the price drop was
due to profit taking and a desire to average down his per share value. 88 F.R.D. 696, 699
(S.D.N.Y. 1981). However, as discussed above, cases such as *WorldCom* and *Weikel* instruct that
unique trading strategies of investors do not render them atypical. Nevertheless, *Kline* is
inapposite because it hinged on the proposed representative's inaccurate testimony that the
company's 1978 financial statement caused him to purchase shares when, in fact it had not,
subjecting him to unique defenses that would become the focus of the litigation. *Id.* at 700. Here,
Defendants tacitly concede that this is not an issue because they claim that it was the partial
disclosures that led Fortis and Metzler to purchase CB&I securities.

[8] *See also Kolin v. American Plan Corp.*, No. CV-84-3183, 1986 WL 36311 (E.D.N.Y. Apr. 8,
1986) (finding plaintiff a suitable class representative despite defense argument that plaintiff
attempted to engage in purchasing strategy).

1182793, *4 (S.D.N.Y. Aug. 21, 2000). *See also Cross v. 21st Century Holding Co.*, No. 00 Civ. 4333 (MBM), 2004 WL 307306, at *3 (S.D.N.Y. Feb. 18, 2004) (investor's sophistication does not detract from its ability to represent the class based on the fraud-on-the-market). As such, even if Plaintiffs had pursued strategies which caused them to buy at different periods – including late in the Class Period or at lower prices – "such strategies do not make their claims so atypical as to be unrepresentative of the shareholder class." *In re Arakis Energy Corp. Sec. Litig.,* No. 95-CV-3431 (ARR), 1999 WL 1021819, at *12 (E.D.N.Y. Apr. 27, 1999).

Ultimately, there is nothing atypical about either Fortis' and Metzler's investment approaches.

### 1.     Fortis

As made abundantly clear in the deposition of Fortis representative Paul Martin, the Fortis funds which purchased CB&I stock are funds designated as "high risk" for the sole reason that the funds contain equities (as opposed to bonds and cash investments which are more conservative). Martin Tr. 80:19, 81:2.[9] This designation is a rating of the investor profile as opposed to defining the risks of the investments. Martin Tr. 81:3, 85:11-23. Thus, Defendants either mischaracterize or misunderstand the testimony in its argument that Fortis' investment in CB&I was considered a risky investment.

With respect to Fortis' investment strategy, Mr. Martin testified that Rolf Stout, the Fortis employee responsible for the CB&I investment, like many reasonable investors, attempts to identify fundamentally sound companies where he believes the underlying value is not fully recognized by the stock market. Martin Tr. 12:5-13:15, 18:18-25, 20:2-21:2, 62:2-23, 95:16-24. Indeed, Defendants' suggestion that Fortis invested in CB&I "because of the accounting problems" (*CB&I Opp.* at 13) is troubling, as Mr. Martin repeatedly explained that Fortis invested in CB&I because it "was undervalued, *not because of the accounting problems*." Martin Tr.

---

[9]  The full transcript is attached as Ex. 2 to the Declaration of Steven J. Toll in Support of Plaintiffs' Motion for Class Certification (the "Toll Declaration").

21:16-18 (emphasis added).  In fact, Mr. Martin stated that Mr. Stout "felt that [CB&I] was a good long-term story, and ultimately, he felt the value of [CB&I] was worth more than the price he paid at the time of investing."  Martin Tr. 20:25-21:2.  Mr. Martin stated that Fortis' involvement in CB&I was an investment on a long-term basis.  *Id.* at 20:7-12.

Mr. Martin further testified that Fortis did not view CB&I as a "turnaround investment."  Martin Tr. 95:20-25.  *See also id.* at 11:10-11, 93:16, 96:8.  Rather, in describing it as a "fallen angel," he merely considered it undervalued.  *Id.* at 67:2-25.  *See also id.* at 95:20-25 (Mr. Stout "thought that the stock was undervalued.").

The inescapable truth is that in deciding whether to purchase CB&I shares, Fortis relied solely on public information, including Company press releases, analyst reports and discussions with analysts.[10]  Martin Tr. 99:22-101:16, 106:25-107:12.  For instance, Fortis' research regarding CB&I consisted of internet searches for publicly available material.  Martin Tr. 101:9-16.  Accordingly, Fortis took the same risks, based on all publicly available information, as every other investor in determining whether to invest in CB&I.

## 2.    Metzler

Stefanie Buchmann, as Metzler's representative, testified that it was also Metzler's strategy to identify fundamentally sound companies whose value was not fully recognized by the

---

[10] Mr. Martin testified that Mr. Stout read analyst reports and public disclosures in making his decision to invest in CB&I.  Martin Tr. 24:7-9.  Defendant CB&I makes an issue of the fact that Mr. Stout attended an investor conference hosted by Bear Stearns, saying that he relied on it in his investment decision.  *CB&I Opp.* at 13-14.  However, Defendants misrepresent Mr. Martin's deposition testimony.  Mr. Martin testified that information presented at the conference was "part of his decision," but he never agreed that it was a "big part of his investment decision."  Martin Tr. 17:8-12.  Nevertheless, even if Fortis relied on advice from Bear Stearns to make its decision to invest in CB&I, that does not make them atypical to represent the Class.  *See Cromer Finance Ltd. v. Berger,* 205 F.R.D. 113, 132 (S.D.N.Y. 2001) ("Reliance on third parties, such as investment managers, does not undermine the reliability of the presumption where the advice itself is based upon or assumes the accuracy of [defendant's information].");  *In re Harcourt Brace Jovanovich, Inc. Sec. Litig.,* 838 F. Supp. 109, 114 n.4 (S.D.N.Y. 1993) ("reliance on the advice of third parties does not, in and of itself, constitute non-reliance, so long as the third party, in turn, relied on the integrity of the market");  *In re Avon Sec. Litig.,* No. 91 Civ. 2287 (LMM), 1998 WL 834366, *8 (S.D.N.Y. July 14, 1995) (no basis to find plaintiff atypical where he inquired about the company to a broker, but did not receive any inside information).

market.  Buchmann Tr. 76:8-24, 88:5-13.[11]  Specifically, Ms. Buchmann stated that Metzler's

Fund 705 identifies companies that "lack a bit in the market," but have a reasonable upside

potential.  Buchmann Tr. 86:4-15.  Moreover, as Ms. Buchmann explained, German law requires

every fund that invests in equity securities (as opposed to debt or cash) to be categorized as "high

risk."

Defense counsel's repeated attempts to characterize Fund 705 as an investment in

"volatile" securities is highly misleading.  Buchmann Tr. 95:9-18, 97:1-5, 100:19-101:6.

Defendants' assertion notwithstanding (*CB&I Opp.* at 13, 15), this strategy is typical of virtually

all value-focused investors, institutional or otherwise, and clearly is not a basis to characterize

Metzler as atypical.  *See In re American Italian Pasta Sec. Litig.*, No. 05-0725-CV-W-ODS, 2007

WL 927745, at *3 (W.D. Mo. Mar. 26, 2007) (lead plaintiff utilized a variety of formulae in an

attempt to identify stocks undervalued by the market, which the court found consistent with

typicality because "value investing" is a common strategy engaged in by many investors).

Ultimately, Defendants' attacks on Plaintiffs' sophistication and the manner or timing of

their purchases simply miss the mark.  "[A] difference in the amount of damages, date, size, or

manner of purchase, the type of purchaser, and even the specific document influencing the

purchase will not render the claim atypical in most securities actions."  *Dura-Bilt Corp. v. Chase*

*Manhattan Corp.*, 89 F.R.D. 87, 98-99 (S.D.N.Y. 1981).

**B.    The Timing of Plaintiffs' Purchases Does Not Render Them Atypical**

Defendants argue that all three representatives are atypical, claiming that:  (1) both Fortis

and Metzler purchased their CB&I securities after the October 31, 2005 partial disclosure; (2)

Fortis purchased additional CB&I securities after the proposed class period; and (3) Mr. Mundy

cannot represent investors that purchased CB&I stock after the October 31, 2005 partial

disclosure.  *CB&I Opp.* at 3-8, 12-17.  Defendants' arguments are misplaced.

---

[11] The full transcript is attached as Ex. 3 to the Toll Declaration.

1.    **Fortis' and Metzler's Purchase of CB&I Securities After The Company's October 31, 2005 Press Release Does Not Render Them Atypical**

Courts routinely hold that the fact that any partial disclosures may have been made prior to a proposed representative's purchase and the ultimate revelation of the fraud does not defeat typicality.  *See Salomon Analyst Metromedia.*, 236 F.R.D. at 216 (Lynch, J.) (purchases after disclosures do not mean the plaintiff was on notice of fraud or did not rely on integrity of market during the class period); *Dietrich v. Bauer,* 192 F.R.D. 119, 125 (S.D.N.Y. 2000); *In re AM Int'l., Inc. Sec. Litig.*, 108 F.R.D. 190, 194 (S.D.N.Y. 1985) (Sprizzo, J.) (plaintiffs who purchased after a partial disclosure were not atypical:  "Because the Court has held that this period is appropriately encompassed within the class period, it rejects defendants' contention that anyone who purchased during that period is subject to a unique defense disqualifying him as a class representative.").

In the instant case, until the actual fraud was disclosed on February 3, 2006, Defendants' false and misleading statements continued to artificially inflate CB&I's stock price.  The limited adverse information that came to light through any partial disclosures prior to February 3, 2006 led these investors (and indeed, all CB&I investors) to believe that CB&I securities were not fraudulently inflated.  The October 31, 2005 press release even reassured investors that "the overall earnings capacity, financial viability, growth potential and strong cash position of the Company will remain intact [. . .]."  (Consol. Am. Compl. ¶101).  This contention, however, was untrue.

As detailed in the unrefuted Declaration of Dr. Scott D. Hakala, Ph.D., CFA Regarding Market Efficiency and Loss Causation (submitted in support of Plaintiffs' opening brief), CB&I's October 31, 2005 partial disclosure was not nearly the revelation Defendants portray it to be.  *See* Hakala Dec. ¶20.  Rather, the true scope of the Company's wrongdoing was not at all evident to investors until the announcement on February 3, 2006 - namely, that the Company: (1) fired Defendants Glenn and Jordan based on the Audit Committee's investigation; (2) the Company

expected to issue revised guidance for year end December 31, 2005; and (3) all previous earnings guidance issued by the Company was no longer operable. *Id.* at ¶21. As Dr. Hakala concluded, the "corrective events were extremely significant and did not cause investors to realize the full extent of the damages until at least February 6, 2006. *Id.* Thus, all purchasers of CB&I stock were similarly affected by Defendants' fraud until the truth was revealed on February 3, 2006.

The October 31 partial disclosure also gave Fortis and Metzler (as well as all investors) comfort – as it was specifically intended to do – as to their decision to purchase CB&I stock. With respect to Fortis, Mr. Martin testified that Mr. Stout, while aware of the potential accounting issue, purchased CB&I stock without knowing that the stock continued to be artificially inflated. Martin Tr. 12:24-25, 18:22-25, 19:1-21:10. Likewise, as the testimony makes abundantly clear, Metzler purchased CB&I stock in concert with its "strategy to get earnings out of the stocks. And, so [Metzler] bought stocks that were behind the market." Buchmann Tr. 75:18-20. *See also id.* at 76:8-24.

Notably absent from the Company's public statements was any reference to the cost of overruns and increases that should have resulted in a charge in CB&I's 2005 earnings. Although some negative information may have been disclosed to the market, Defendants clearly, and deliberately, softened its impact. Thus, Fortis' and Metzler's purchases after the October 31 announcement were made without knowledge of Defendants' fraudulent conduct, and as such, have no bearing on typicality.

Defendants have not cited to any evidence in the record – nor could they – that Fortis or Metzler were aware of the full extent of the chicanery engaged in by CB&I when it purchased the Company's stock during the Class Period. *See, e.g.*, Buchmann Tr. 216:21-24 ("[. . .] after this partial disclosure, there was some more information in the market, but it was not. . .the full information and not the whole correct information."). Thus, even if Fortis and Metzler had specifically purchased CB&I stock because of the accounting irregularities (and the evidence

9

does not suggest that they did), they still would have done so based on the integrity of the market – which Defendants undermined through their fraudulent conduct.

2.  **Fortis' Strategy of Averaging Down in CB&I Securities After the Class Period Is A Common Investment Strategy That Does Not Render It Atypical**

Defendants' contention that Fortis' post-class period purchases of CB&I render it atypical directly conflicts with the law. The purchase of additional shares of securities after the close of the class period has no bearing on whether the proposed class representative relied on the integrity of the market for purchases during the class period. *See Salomon Analyst Metromedia*, 236 F.R.D. at 216 (typicality not defeated even though class representative purchased shares after the disclosure of accounting irregularities); *In re Nortel Networks Corp. Sec. Litig.*, No. 01 Civ. 1855(RMB), 2003 WL 22077464, *3 & n.4 (S.D.N.Y. Sept. 8, 2003) (rejecting defendant's argument that purchase of stock well after fraud was revealed defeated typicality). *See also Feder v. Elec. Data Sys. Corp.*, 429 F.3d 125, 137-38 (5th Cir. 2005) (collecting cases and noting the "generally accepted" view that post-disclosure investing in a fraud on the market case does not defeat typicality).

Fortis's purchases of additional CB&I securities after the close of the class period "upon learning new information does not mean that [Fortis] did not rely on the integrity of the market in purchasing shares before the new information was known." *Salomon Analyst Metromedia*, 236 F.R.D. at 216. *See also In re FirstPlus Fin. Group, Inc.,* 2002 WL 31415951, at *6 (N.D. Tex. 2002) (indicating vast majority of courts hold that a plaintiff's purchase of stock after the close of a class period or after disclosure of materially adverse information does not raise a unique defense to destroy typicality).

As such, there is nothing atypical about those additional purchases. To the contrary, as Mr. Martin testified, these purchases were made to "average down" – accumulate the stock while the price was low, as Fortis considered CB&I a long-term investment. Martin Tr. 189. There is nothing atypical about engaging in this investment strategy, and indeed, an investor who does so

10

is not ill-suited to represent a class of purchasers. *See Salomon Analyst Metromedia*, 236 F.R.D. at 215, n.4 (even if proposed class representative engaged in "averaging," individualized issues resulting from the investment practice would not threaten to become the focus of litigation to render certification improper); *Arakis Energy Corp.,* 1999 WL 1021819, at *12 (despite possible averaging down, proposed class representatives' claims contain sufficiently similar factual allegations typical of other class members); *Yang v. Odom*, No. Civ.A. 02-5968(JAP), Civ.A. 03-725(JAP), 2005 WL 2000156, *6 (D.N.J. Aug. 19, 2005) (averaging down does not defeat typicality of proposed class representative).[12]  Significantly, the authority relied upon by Defendants (*CB&I Opp.* at 12, 13) does not specifically hold that averaging down contravenes typicality.[13]

### 3.    Mr. Mundy

Defendants concede that Mr. Mundy is typical of class members that purchased CB&I shares from March 9, 2005 through October 31, 2005.  Thus, Defendants' *only* argument regarding Mr. Mundy's typicality relates to post-October 31, 2005 CB&I stock purchasers. Specifically, Defendants argue that because Mr. Mundy "probably" would not have purchased CB&I shares after October 31, 2005, his testimony somehow "undermined the class's case" and would "adversely impact[] the interests of the proposed class."  *CB&I Opp.* at 16, *citing In re Safeguard Scientifics*, 216 F.R.D. 577, 583 (E.D. Pa. 2003).  This argument is nonsensical.

First, Defendants argue that Mr. Mundy has an antagonistic view of class members that purchased CB&I shares after October 31, 2005.  Defendants completely ignore Mr. Mundy's

---

[12] *See also Cosmas v. DelGiorno*, No. CV-941974, 1995 WL 62598, *4 (E.D.N.Y. Feb. 8, 1995) (averaging down does not obviate reliance on integrity of the market and does not subject proposed representative to atypical defenses); *Kolin*, 1986 WL 36311, at *10 ("averaging down is of little importance to [plaintiff's] suitability as a class representative.").

[13] *Berwecky v. Bear, Stearns & Co., Inc.*, 197 F.R.D. 65 (S.D.N.Y. 2000), *Kovaleff v. Piano*, 142 F.R.D. 406, 408 (S.D.N.Y. 1992); *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 119 F.R.D. 344, 348-49 (S.D.N.Y. 1988); *In re Safeguard Scientifics*, 216 F.R.D. 577, 582 (E.D. Pa. 2003); *Rolex Employees Ret. Trust v. Mentor Graphics Corp.*, 136 F.R.D. 658, 664 (D. Ore. 1991); *Epstein v. Am. Reserve Corp.*, No. 79 C 4767, 1988 WL 40500, at *4 (N.D. Ill. Apr. 21, 1988); *Koenig v. Benson*, 117 F.R.D. 330, 336 (E.D.N.Y. 1987).

actual answer (to a hypothetical question which counsel objected to) regarding why he would not have purchased CB&I shares after October 31, 2005: "[a]t that point I had all I wanted, so I wouldn't buy it under any condition probably." Mundy Tr. at 112:5-8.[14] Indeed, while Mr. Mundy would "probably" not have purchased any stock after October 31, 2005, he certainly did not take a position adverse to those class members that did purchase later in the Class Period. *Id.* at 112:12 (stating that the October 31, 2005 disclosure "doesn't make any difference"). *See also Id.* at 112:23-25; 113:6-9; 125:7-11 (stating, in reference to the October 31, 2005 press release, that he "can't comment [on] what other people will do."). Thus, Mr. Mundy's consistent position throughout his deposition was that he purchased his CB&I shares based on the information that was currently available to him and while he "probably" would not have purchased any shares after October 31, 2005, it was not unreasonable for others to have done so. Therefore, there is clearly no antagonism between Mr. Mundy and post-October 31, 2005 stock purchasers.

Defendants reliance on *In re Safeguard Scientifics*, 216 F.R.D. at 588, for the proposition that Mr. Mundy should not be appointed as a class representative because his views will "adversely impact[] the interests of the proposed class," has nothing to do with a proposed class representative's timing of stock purchases.[15] Rather, Defendants' cherry-picked quotation relates to the refusal to certify a particular proposed class representative because that individual stated "when I purchased the stock I wasn't concerned, aware, cared, or anything about or was even aware what [the defendant] was doing and I wasn't focusing on it." *Id.* at 583. The court,

---

[14] The full transcript is attached as Ex. 4 to the Toll Declaration.

[15] This Court's decision in *AM Int'l.*, however, is illustrative. There, the defendants argued that the class should not be certified beyond a certain date because "AMI issued a press release which, according to defendants, 'eliminated subsequent claims and rendered continued reliance on prior financial statements and the integrity of the market price unreliable." 108 F.R.D. at 192. This Court rejected this partial disclosure theory and held that it "cannot accept as a matter of law . . . defendants' contention that the press release 'cured the market', thereby requiring the Court to cut off the class period at that date." 108 F.R.D. at 192. Thus, this Court concluded that "[b]ecause the Court has held that this period is appropriately encompassed within the class period, it rejects defendants' contention that anyone who purchased . . . [later in the class] period is subject to a unique defense disqualifying him as a class representative." *Id.* at 194.

therefore, refused to appoint him as a class representative because his "statements . . . undermine a crucial aspect of [p]laintiffs' case . . . and thereby places him in an antagonistic position from the class." *Id*. As opposed to *Safeguard Scientifics*, Defendants have not – and cannot – point to any statement by Mr. Mundy demonstrating his lack of interest in CB&I during or even after the Class Period. *See, e.g.,* Mundy Tr. at 24:18-19; 25:1-7; 26:6-7. Thus, *Safeguard Scientifics* is inapposite and irrelevant to the issues currently before this Court.[16]

Therefore, Mr. Mundy is typical of class members that purchased CB&I shares throughout the entire Class Period.[17]

## III.     PLAINTIFFS CLEARLY SATISFY THE ADEQUACY REQUIREMENT

As with their challenges to typicality, Defendants' attacks on Plaintiffs' adequacy are meritless. *CB&I Opp.* at 17.[18]

### A.     Plaintiffs Possess The Requisite Level Of Knowledge And Understanding About The Action And Appropriately Rely On Counsel

"[I]t is well established that 'in complex litigations such as securities actions, a plaintiff need not have expert knowledge of all aspects of the case to qualify as a class representative, and a great deal of reliance upon the expertise of counsel is to be expected.'" *In re NTL, Inc. Sec. Litig.*, No. 02 Civ. 3013 (LAK ) (AJP), 2006 WL 330113, at *11 (S.D.N.Y. 2006) (citations

---

[16] Moreover, Defendants' citation is curious because *Safeguard Scientifics* specifically rejects Defendants' argument that a purchaser who bought prior to a certain date cannot represent those that purchased after that date. *Id.* at 581 (the court easily disposed of defendants' arguments, including that "investors who bought prior to November 29th and those who bought after" cannot represent one another).

[17] It deserves note that Defendants selectively quote from the transcript of the November 7, 2006 hearing. *CB&I Opp.* at 1. The Court observes that "it is going to be awfully difficult to have a person represent people who bought during that initial period," but does so in the context of a colloquy with Plaintiffs' counsel regarding the impact of partial disclosures. Nov. 7, 2006 Hearing Tr. at 49-51. The Court acknowledges that continuing fraudulent conduct, a further stock price drop, and other factors might make the situation "different." *Id.* at 51.

[18] In their Opening Brief, Plaintiffs amply demonstrated that they meet Rule 23(a)(4)'s two-pronged adequacy requirement, *i.e.*, that (1) plaintiffs' interests are not antagonistic to other class members, and that (2) plaintiffs' attorneys are qualified, experienced and able to conduct the litigation. *See* Pls. Mov. Br. at 10-11.

omitted).  Indeed, "[t]he Supreme Court . . . expressly disapproved of attacks on the adequacy of

a class representative based on the representative's ignorance" about the case. *Baffa v.*

*Donaldson, Lufkin & Jenrette Sec. Corp.,* 222 F.3d 52, 61 (2d Cir. 2000) (*citing Surowitz v.*

*Hilton Hotels Corp.*, 383 U.S. 363, 370-374 (1966)).[19]

The Second Circuit has emphasized that a "harsh application" of the knowledge

requirement regarding a proposed class representative is inappropriate and that reliance upon

qualified counsel is absolutely proper.  *Baffa*, 222 F.3d at 61; *see also Alidina v. Penton Media,*

*Inc.*, 143 F. Supp. 2d 363, (S.D.N.Y. 2001) (J. Sprizzo) (rejecting defendants' argument that the

proposed class representative was inadequate because of a lack of knowledge regarding the

allegations in the complaint).[20]

These principles notwithstanding, Defendants launch a desperate attack against the

Plaintiffs for doing precisely what class representatives are supposed to do:  relying on counsel

and overseeing the litigation.  *CB&I Opp.* at 18, 19. All such challenges – which are based on

mischaracterized and out-of-context testimony – fail to show anything inadequate about any

proposed class representative.[21]

---

[19] *See also In re Veeco Instruments, Inc. Sec. Litig.,* 235 F.R.D. 220, 239-240 (S.D.N.Y. 2006);
*Scott v. N.Y. City Dist. Council of Carpenters Pension Plan*, 224 F.R.D. 353, 355 (S.D.N.Y.
2004) ("To discharge [the] duty of control, the class representative must possess a minimal
degree of knowledge regarding the action" and an understanding about the general nature of a
class-action suit).

[20] Defendants' cases do not hold otherwise.  In *Darvin v. Int'l Harvester Co.*, 610 F. Supp. 255
(S.D.N.Y. 1985) (J. Sprizzo), this Court refused to appoint the proposed class representative
because his deposition testimony was highly "inconsistent" and he "repeatedly stated that his
memory regarding the complaint and his dealings in Harvester stock were poor."  *Id*. at 257.
Similarly, the court in *Beck v. Status Game Corp.*, No. 89 Civ 2923 (DNE), 1995 WL 422067
(S.D.N.Y. July 14, 1995), denied the motion for class certification because the proposed class
representatives had not met with their attorneys for the first two years of the litigation.  *Id*. at *6-
7.  As noted herein, Mr. Mundy does not suffer from any of these aforementioned and substantial
defects.

[21] The record easily distinguishes *Scott,* 224 F.R.D. 353, cited by Defendants in support of their
claim that Fortis and Metzler turned over the "prosecution and monitoring of their case to
counsel."  *CB&I Opp.* at 18.  In *Scott*, one of the proposed class representatives did not read the
complaint, he did not even know what the subject of the litigation was, and met with counsel on

1.    **Fortis and Metzler**

Defendants accuse Fortis and Metzler of turning over the prosecution and monitoring of the litigation to Class Counsel (*CB&I Opp.* at 18) – which is flatly contradicted by the record. To the contrary, Fortis and Metzler clearly understand that class representatives have a responsibility to act in the best interests of the Class and appoint qualified counsel to act on their behalf. Martin Tr. 107:19-20, 109:4-18; Buchmann Tr. 20:18-22. Fortis will do what is necessary to protect the Class, and has done so by bringing this lawsuit, reviewing the pleadings, retaining qualified counsel, and providing frank deposition testimony concerning Fortis' investment in CB&I and monitoring the litigation through its law department. Martin Tr. 9:9-15; 108:12-17, 109:12-21, 110:16-111:24. Likewise, Ms. Buchmann testified that Metzler clearly understands the role of class representative and intends to ensure that Metzler fulfills its obligations to the Class. Buchmann Tr. 20:17-25, 21:2-7. In that role, she monitors the litigation on behalf of Metzler and has read the Complaint and other important pleadings. Buchmann Tr. 17:21-23, 18-15. Moreover, she will request additional materials if she does not feel adequately informed. Buchmann Tr. 158:15-17.

---

only one occasion prior to his deposition. 224 F.R.D. at 356. Moreover, the proposed class representative abdicated his own role by stating health concerns would prevent him from fully participating in the litigation. *Id.* The court found the other proposed class representative equally as ill-informed where he did not know what a class action was nor that the litigation was as a class action. *Id.* Fortis and Metzler are fully aware of their obligations as proposed class representatives and have reviewed the necessary pleadings, participated in class discovery, and attended depositions in furtherance of their obligations. Martin Tr. 9:915; 108:12-17; 109:12-21; 110:16-111:24; Buchmann Tr. 17:21-23; 18:15. Moreover, both Fortis and Metzler are aware that this is a continuing obligation and will do whatever is necessary to protect the interests of the proposed class. Martin Tr. 107:19-20; 109:4-18; Buchmann Tr. 20:17-25; 21:2-7.

Defendants also take what the Third Circuit said in *In re Cendant Corp. Sec. Litig.*, 264 F.3d 201, 265 (3d Cir. 2001), *see CB&I Opp.* at 18, completely out of context. There, the Third Circuit stated that it is possible that a potential class representative could be inadequate if it lacks legal expertise or sophistication, hired a firm incapable of undertaking the representation, or negotiated an unreasonable fee agreement. 264 F.3d at 265. Defendants already concede that both Fortis and Metzler are sophisticated and have not attacked the ability of the lead firms to manage the litigation. Rather, they clutch on to the possibility that Fortis and Metzler did not negotiate a retainer agreement. However, the Third Circuit did not articulate a retainer agreement was required, but that negotiation of an *<u>unreasonable</u>* agreement could impact the adequacy analysis. *Id.*

Although Defendants disparage Fortis and Metzler for delegating to its counsel the task of investigating the facts and preparing the allegations contained in the Complaint (*CB&I Opp.* at 19-20), these are precisely the type of responsibilities that a class representative may delegate to its counsel.  *See, e.g., Baffa, supra.*; *Nortel*, 2003 WL 22077464, at *4 (proposed class representative protected interests of the class by, *inter alia*, retaining experienced class counsel); *McAnaney v. Astoria Financial Corp.*, No. 04-CV-1101 (JFB)(WDW), 2006 WL 2689621, at *5 (E.D.N.Y. Sept. 19, 2006) (Second Circuit allows class representative to rely on expertise of class counsel to litigate the case).  CB&I is obviously grasping at straws when it contends that Mr. Martin only reads what is put in front of him by his counsel or that Ms. Buchmann relies on counsel to provide important documents.  *CB&I Opp.* at 18-19.  There is no requirement that a class representative read and memorize every pleading in a particular litigation.  Rather, Mr. Martin and Ms. Buchmann are entitled to rely on counsel to keep them informed.  Martin Tr. 109:16-18, 110:18-24, 111:1-12114:8-14, 115:5-116:1, 117:1-8, Buchmann Tr. 144:4-15, 157:24.

### 2.    **Mr. Mundy**

Defendants attempt to make an issue over inadvertently incorrect purchase dates in Mr. Mundy's certification.[22]  *CB&I Opp.* at 24.  However, as Defendants themselves acknowledge, once the error was discovered by Mr. Mundy and his counsel, an updated Certification was promptly produced.  *CB&I Opp.* at 24.  Courts have almost uniformly held that a small error on a plaintiff's certification, especially when corrected, should be overlooked.  *See, e.g., In re USEC Sec. Litig.*, 168 F. Supp. 2d 560, 568 (D. Md. 2001) (the court was satisfied with the plaintiff even though there was an error on his first certification); *Swack v. Credit Suisse First Boston*, 230

---

[22] It should be noted that the first Certification was never actually filed with the Court.  Rather, it was sent to Defense counsel when Mr. Mundy decided to become a proposed class representative. However, the error was discovered and corrected when Mr. Mundy produced his first set of documents – which was well before his deposition on February 15, 2007.

F.R.D. 250, (D. Mass. 2005) (plaintiff determined to be an adequate representative despite errors on her certification).[23]

Defendants next contend that Mr. Mundy has failed to monitor the litigation because he did not immediately recognize his interrogatory responses and Defendants' document requests. *CB&I Opp.* at 23. However, while Mr. Mundy may not have immediately recognized these documents by the end of his more than *seven hour* deposition, he specifically testified that he had in fact read the interrogatory responses and document requests, as well as other important pleadings in this action. *See, e.g.,* Mundy Tr. at 66:12-18. 169:10-12; 44:6-10.

Defendants also claim that Mr. Mundy's failure to monitor this litigation is evidenced by the fact that he "conceded" that he has only spent "a few minutes here, [and] a few minutes there," monitoring the case. *CB&I* Opp. at 10. This is false because Mr. Mundy testified that he had no way of determining what the total time would be because it's intermittent and that he had not even thought about adding it up. Mundy Tr. 27:1-16. *See also Id*. at 66:14-19; 66:22-23; 31:25; 172; 175. Likewise, Mr. Mundy testified that he has spoken to his attorney "maybe a dozen" times since becoming a proposed class representative and has reviewed each and every document sent by his attorneys. Mundy Tr. 23:15.[24]

---

[23] Defendants' case citations are easily distinguishable. First, in *In re Sonus Networks, Inc. Sec. Litig.*, the court held that the proposed class representative was not an adequate representative because he verified the accuracy of his certification before it was even completed. 229 F.R.D. at 343. Thus, "the court stated that the foregoing confirmed that [the proposed class representative], who would verify the accuracy of an incomplete document, was not an appropriate class representative." *Id*. Similarly, in *In re Safeguard Scientifics*, the court felt troubled because the proposed class representative "omit[ed] a significant number of trades" which led the court "to believe that the misstatement was more than [a] mere clerical mishap." 216 F.R.D. at 583 n.4. Here, there are no allegations – nor could there be – that Mr. Mundy purposefully lied on his Certification or that he was even negligent in preparing it. Thus, *Sonus* and *Safeguard* are inapposite.

[24] Defendants also claim that Mr. Mundy "could not recall ever seeing any pleadings indicating that he is a plaintiff." *CB&I Opp.* at 23, *citing* Mundy Tr. at 19:10-12. However, at the time of Mr. Mundy's deposition on February 15, 2007, it is not surprising that he had not seen any <u>pleadings</u> indicating he was a plaintiff in this lawsuit because the first such filing, Plaintiffs' Motion for Class Certification, was filed on March 2, 2007, two weeks after his deposition.

Third, Defendants also argue that Mr. Mundy lacks sufficient knowledge of the litigation.[25]  *CB&I Opp.* at 23.  His testimony flatly refutes this assertion, as he clearly understands that this case is a class action involving CB&I (Mundy Tr. 24:10-11; 53:16-17; 37:25 and 38:9-15); that he, Fortis, and Metzler are all plaintiffs in this litigation because they each lost money due to their transactions in CB&I securities (*id.* at 22:8-12); and that he agreed to represent a class of shareholders that owned CB&I stock from March 9, 2005 through February 3, 2006 "because that is when the alleged improprieties occurred."  *See e.g., id.* at 44:19-25-45:1-5; 49:3-5 49:7-14.  Additionally, Mr. Mundy has a firm understanding of the allegations in the Complaint.  Mundy Tr. at 54:8-15; 54:25; 55:1-7.  Thus, Mr. Mundy has more than sufficient knowledge of the facts underlining this litigation, and is an adequate class representative.[26]

**B.      Defendants' Attack On The Adequacy Of Certain Plaintiffs Who Have Not Negotiated A Fee Agreement Or Monitored Expenses Should Be Rejected**

Defendants attempt to make hay over the fact that Plaintiffs have not negotiated a fee arrangement with counsel with respect to limiting litigation fees and costs.  *CB&I Opp.* at 19.  There is no legal requirement that a plaintiff in a class action must negotiate the fee which its counsel will seek at the successful conclusion of the litigation.  Defendants' argument here actually goes to plaintiffs' refusal to produce the retention agreement of the Plaintiffs.[27]

---

[25] Defendants also attempt to insinuate that because Mr. Mundy brought a note card with him to the deposition that somehow makes him inadequate.  *CB&I Opp.* at 24.  However, it would be perverse to penalize an individual, especially one who is not accustomed to sitting through a deposition, from making a few notes prior to his testimony.

[26]  Defendants also raise a host of other irrelevant arguments regarding Mr. Mundy's adequacy to serve as a class representative.  For example, Defendants play loose with the facts when they criticize Mr. Mundy for having "no involvement in preparing the Complaint."  *CB&I Opp.* at 11, n.3.  As Defendants clearly know, Mr. Mundy decided to become a class representative after Defendants' Motions to Dismiss were denied; therefore, he never saw a draft of the Complaint.  Also, Defendants claim that Mr. Mundy is inadequate because "he made clear that his ability to travel to New York for the litigation is limited by, among other things, his 'other commitment' such as museum board meetings."  *CB&I Opp.* at 23.  This is yet another irrelevant red-herring because Mr. Mundy stated that he currently knew of "no" reason that would keep him from going to New York.  Mundy Tr. at 36:25-37:3

[27] Defendants note Plaintiffs' refusal to produce documents relating to fee arrangements with their counsel.  *CB&I Opp.* at 9, 19.  While Defendants attribute great significance to these materials,

*WorldCom* holds that in the securities class action context, enforcement of Disciplinary Rule 5-103(b) of the New York State Lawyers' Code of Professional Responsibility – which requires clients to bear the ultimate responsibility for litigation costs and expenses – is "unnecessary" and "would undermine the purposes of both the PSLRA and Rule 23." *WorldCom*, 219 F.R.D. at 284-86.[28]   Additionally, even had Plaintiffs negotiated a fee agreement, the Court, ultimately would have to approve any fee request.  *In re Texaco, Inc. Shareholder Litig.*, 20 F. Supp. 2d 577, 589 (S.D.N.Y. 1998) (courts are consistently obliged "to carefully scrutinize applications for counsel fees" in such cases so that little weight is given to fee agreement even approved by defense counsel) *rev'd on other grounds by Kaplan v. Rand*, 192 F.3d 60 (2d Cir. 1999); *In re McDonnell Douglas Equipment Leasing Sec. Litig.*, 842 F. Supp. 733, 740 (court not bound by fee application submitted by class counsel); *Piambino v. Bailey*, 610 F.2d 1306, 1328 (5th Cir. 1980) (court not bound by any fee agreement executed between parties). In any event, New York law has recently been clarified such that counsel may advance costs without an agreement of repayment by the client.  *See* N.Y. Judiciary Law § 488 (2006).

As their testimony reveals, Plaintiffs are completely aware that Class Counsel will be reimbursed its fees and litigation costs only if the class recovers.  Martin Tr. 120:5-17; Buchmann Tr. 135:5-10, 139:20-21; Mundy Tr. 146:8.  Until that occurs, Class Counsel must proceed on a contingent fee basis.  Martin Tr. 120:5-17.  They understand that Class Counsel must submit reasonable fees and expenses to the Court for approval.  Martin Tr. 125:7-25, 126:3-5, 130:14-19,

---

they have curiously not moved to compel their production. but, instead, raise it in their reply brief.

[28] This alone renders *Ferraro v. Gen. Motors Corp.*, 105 F.R.D. 429, 430 (D. N.J. 1985) and *Epstein v. American Reserve Corp.*, Nos. 79 C 4767, 80 C 6251, 81 C 1475, 1985 WL 2598, *3 (N.D. Ill. Sept. 18, 1985) inapposite, which Defendant relies on for the proposition that the fee agreement is relevant to adequate representation.  *CB&I Opp.* at 19, n.9.  In both cases, the defendants were seeking evidence of plaintiff's ability to support the cost of prosecuting the action, a point explicitly rejected by *WorldCom*.  Moreover, in *Ferraro*, the court found the fee agreement relevant because it stated that the New Jersey District Court has not adopted ABA Model Rule 1.8(e)(1), contrary to this Court's position, in response to what it believes was plaintiff's counsel's paraphrasing of the agreement.  105 F.R.D. at 433.

Buchmann Tr. 133:1-10.  In fact, Plaintiffs intend to monitor its counsel in that regard, such that if the expenses appear unreasonable, they will express that view to the Court and expect the Court to deny reimbursement.  Martin Tr. 130:17-19; Buchmann Tr. 145:24-146:2; Mundy Tr. 150:14-16.  Accordingly, Defendants' challenge on this point is simply counter-factual.

### C.    A Plaintiff Has The Right To Substitute Counsel

Defendants proffer the untenable position that Fortis acted in its own self-interest, and to the detriment of the proposed class members, when they selected Cohen, Milstein, Hausfeld & Toll, P.L.L.C. ("Cohen Milstein") and Spector, Roseman & Kodroff, P.C. ("Spector Roseman") as their replacement counsel for Milberg Weiss.  *CB&I Opp.* at 20.  They raise the same objection to Metzler's retention of Motley Rice as additional counsel.  *Id.*  Contrary to Defendants' contention, Fortis and Metzler simply exercised their right to substitute counsel.  *See Young Am. Merch. Corp. v. Top Quality Prods.*, Case No. 02-cv-5962, 2004 U.S. Dist. LEXIS 5748, at *2-3 (S.D.N.Y. Apr. 6, 2004) (court granted counsel's request to withdraw after client terminated representation); *Matter of First City Nat'l Bank & Trust Co.*, 759 F. Supp. 1048, 1051 (S.D.N.Y. 1991) (client has right to change counsel under New York law).  This right has been adopted for securities fraud cases through the PSLRA.  15 U.S.C. § 78u-4(a)(3)(B)(v).  Defendants now seek to impugn this Court's good judgment in appointing additional Co-Lead Counsel at the request of one of the Lead Plaintiffs.  *See Welmon v. Chicago Bridge & Iron Co. N.V.*, Case No. 06-CV-01283 (JES), (S.D.N.Y. June 20, 2006), (Order Approving Substitution of Class Counsel).

Fortis initially sought to have Milberg Weiss act as its counsel, but subsequently petitioned to substitute Cohen Milstein and Spector Roseman.[29]  Martin Tr. 139:2-140:20.  In

---

[29] Any allusion by Defendants that the appointment of Cohen Milstein and Spector Roseman, *i.e.*, two law firms, defeats the adequacy requirement is absurd.  Although Defendants fail to cite any authority that precludes the retention of two law firms to act as Class Counsel, Cohen Milstein and Spector Roseman are successfully jointly prosecuting other class action securities cases, including: *In re Parmalat Sec. Litig.*, 04 MD 1653 (LAK) (S.D.N.Y.); *In re Converium Holding AG Sec. Litig.*, 04 Civ. 7897 (MBM) (S.D.N.Y.); *Ong, et al. v. Sears, Roebuck & Co., et al.*, No. 03 C 4142 (RRP) (N.D. Ill); and *In re PSINet, Inc. Sec. Litig.*, 00-1850-A (E.D. Va.) (settled for approximately $18 million).  Moreover, Fortis' counsel must submit their reasonable legal fees

fact, Mr. Martin rightfully acknowledged that it was this Court's decision to determine the fate of

Milberg Weiss with respect to its responsibility to the Class.  Martin Tr. 141:4-7.

   The reactions of Metzler and Fortis to the Milberg Weiss indictment demonstrate, rather

than undercut, their fitness as class representatives.  Upon learning of the indictment,

Fortis chose to replace Milberg Weiss with other counsel because of a concern the indictment

might prove distracting.[30]  Metzler chose to keep Milberg Weiss as its counsel and add Motley

Rice.  Neither decision will have any affect on the Class because co-counsel are fully prepared

and able to protect the interests of the Class.

> ### D.     Defendants' Argument That Fortis Failed To Preserve Relevant Documents Is Baseless

   Defendants' argument that Fortis failed to preserve documents related to this litigation

(*CB&I Opp.* at 21) is simply another red-herring, and in no way impacts Fortis' adequacy to serve

as a class representative.  As an initial matter, the behavior about which Defendants complain is

simply not a bar to serving as class representative.  *See Vivendi*, 2007 WL 861147, *8 (class

representative who discarded public materials and some personal notes was not inadequate to

represent the interests of the class); *Davis v. Speechwork Int'l, Inc.*, No. 03-CV-533S(F), 2005

WL 1206894, *4 (W.D.N.Y. May 20, 2005) ("Defendant has offered no proof that Plaintiff acted

culpably [in not preserving relevant documents] or that it has not been able to obtain the

documents from other sources.").

---

and costs to this Court for approval.  Thus, in order to be compensated for their efforts, it is in
their best interests, and that of the Class, to work efficiently and avoid duplicative work.  In fact,
because in almost all cases the attorneys' fee is based on a percentage of the overall settlement,
there is no downside in allowing more than one law firm handle the litigation.  *See, e.g., In re
AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, Case No. MDL Docket No. 1500, 2006 U.S. Dist.
LEXIS 78101, *24  (S.D.N.Y. Sept. 28, 2006) (finding that almost every Southern District case
utilizes the percentage of recovery method) (collecting cases).

[30] Milberg Weiss believes this concern has been shown to be misplaced and is prepared to further
address this or any other Milberg Weiss-related issues if this Court directs.

In any event, some of Fortis' documents were destroyed in the normal course of business – before any litigation was instituted – a fact which Defendants conveniently fail to acknowledge.[31]  Martin Tr. 24:7-14; 40:8-10.  Nevertheless, Fortis made a significant document production, over seven-hundred and fifty pages of documents, including materials relevant to its CB&I investment.  Martin Tr. 28:4-29:2, 101:17-20.  Ultimately, Defendants' attempt to smear Fortis in its document handling confuses the point:  Fortis relied on public information via the internet in making its investment decision.  Martin Tr. 101:13-20.  As such, Defendants have equal access to these materials and their attack on these grounds is wholly undermined.  *See Davis*, 2005 WL 1206894, *4.[32]

### E.    Metzler Has Standing To Sue On Behalf Of Metzler Ireland And Its Certification Does Not Raise An Inference Of A Lack Of Credibility Rendering Metzler An Inadequate Lead Plaintiff

Metzler made a single purchase of CB&I common stock on behalf of four of its funds on January 30, 2006.  *See Huntley* Dec., Ex. H; Buchmann Tr. 46:6-25, Buchmann Ex. 2.  Two of the funds were technically administered by Metzler Ireland, a different Metzler entity than the

---

[31]  This clearly distinguishes the cases Defendants erroneously proffer for the proposition that Fortis failed to comply with reasonable discovery obligations.  For example, in *Norman v. Arcs Equities Corp.*, 72 F.R.D. 502, 506 (S.D.N.Y. 1976), the court found that there was delay and obfuscation over deposition questions.  Similarly, *McDaniel v. County of Schenectady*, No. 04-cv-757 GLS/RFT, 2005 WL 1745566, *3 (N.D.N.Y. July 21, 2005) found that a class representative who failed to attend a deposition after being ordered by the court on three separate occasions is not a person who should be entrusted with the duty of representing a class.  Contrary to the willful concealment of evidence and avoidance of duty to the class in those cases, Mr. Martin attended a deposition on behalf of Fortis and exhibited candor during his testimony.  Moreover, as part of his testimony he openly admitted that it would be unusual for Mr. Stout to retain the public material he gleans during his research of potential investments.  *See e.g.*, Martin Tr. 101:19-20 ("No, it's not usual for him to keep copies of that type of activity, it would be very surprising.").  There is no analogy to be drawn between the failure of a deponent to provide frank answers during questioning or an absolute failure to attend a court mandated deposition to Fortis' disposing of documents in the normal course of business.

[32] In addition, Fortis was not obligated to preserve documents in the manner described by Defendants.  Defendants refer to Fortis' obligation to preserve documents concerning regulatory investigations – an obligation clearly not applicable to this case.  Fortis is not being investigated by a regulatory agency, nor did it receive a subpoena from one in relation to this litigation.  Martin Tr. 26:7-24 ("Q. When you say you're not acting in a regulatory frame, what do you mean by that?  A. It's not an investment regulatory matter.").

one appointed Lead Plaintiff.  However, Metzler has a "General Power of Attorney (Class

Actions)" from Metzler Ireland expressly authorizing Metzler to act on its behalf in the

*"representation as lead plaintiff"* in securities class action litigation, including this one.  *See id.*,

Ex. L.  Ms. Buchmann, a German lawyer and the head of Metzler's legal and compliance

functions, testified that Metzler's General Power of Attorney authorized Metzler to act on Metzler

Ireland's behalf in all aspects of the litigation.  Buchmann Tr. 60:2-4, 61:15-22.

Defendants' bald assertion that Metzler's power of attorney is inadequate – without any

support whatsoever under applicable Irish or German law[33] – does not rebut Ms. Buchmann's

sworn testimony that Metzler's power of attorney was adequate and that Metzler was authorized

to bring suit on behalf of Metzler Ireland.  Although the Power of Attorney could have been

better drafted, it explicitly references "representation as a lead plaintiff" in securities class

actions.  Metzler's power of attorney, Ms. Buchmann's interpretation of that document, and her

understanding that Metzler has authority on behalf of Metzler Ireland, make it patently clear that

Metzler's Certification was not inaccurate in stating Metzler was "duly authorized to institute"

legal proceedings on behalf of the four Metzler funds.

Likewise, Defendants' contention that, without an assignment of these claims, the power

of attorney is insufficient to confer standing is incorrect.  *See CB&I Opp.* at 21-22, n. 19.  Metzler,

in addition to holding a valid power of attorney, has the clear authority to make all investment

decisions for Metzler Ireland.  Buchmann Tr. 43:21-22.  A party with a valid power of attorney

and the authority to make all investment decisions has standing to bring a claim on behalf of

another party *without an assignment of the claim.  See Adelphia Communications Corp. Sec. &

Derivative Litig.* No. 03 MDL 1529 (LMM), 2005 WL 2667201, at *1  (S.D.N.Y. Oct. 19, 2005)

(investment adviser had standing to bring securities case because of its unrestricted decision-

---

[33] *See, e.g.*, *Madanes v. Madanes*, 981 F.Supp. 241 (S.D.N.Y. 1997) (acknowledging applicability
of Argentine law to claims arising from Argentine power of attorney).

making power over investment decisions and a power of attorney); *Weinberg v. Atlas Air Worldwide Holdings, Inc.,* 216 F.R.D. 248, 255 (S.D.N.Y.2003).

Finally, to the extent certifications prepared on behalf of Metzler in other cases may have been incomplete or had an error, (*CB&I Opp.* at 22-23), Metzler's credibility should not be adversely impacted because, as Ms. Buchmann explained, any such errors were inadvertent. *See* Buchmann Tr. 195-206. To raise an inference of lack of credibility, the proper analysis is whether a plaintiff's incorrect certification resulted from bad faith and intent to deceive.

The record clearly does not support a finding of bad faith or intent to deceive.[34] To the contrary, Ms. Buchmann testified that she undertook the preparation of the certifications honestly, diligently, and in good faith. Buchmann Tr. 197:15-17, 198:5-7, 202:4-8. The supposedly omitted information was public and her testimony demonstrates that there was no bad faith or deception in completing the certifications, whether it contained inaccuracies or not. Moreover, Defendants' baseless attack on Metzler's credibility has no foundation under the securities law, *CB&I Opp.* at 21. Defendants cite no legal authority where the credibility of a prospective lead plaintiff was called into question because of corrected certifications.[35] Indeed, as a matter of law, such mistakes do not impact Metzler's ability to act as a class representative. *See In re Sepracor Inc. Sec. Litig.*, 233 F.R.D. 52, 56-57 (D. Mass. 2005) ("Questions of credibility which do not

---

[34] *See Swack v. Credit Suisse First Boston*, 230 F.R.D. at 266 (court found that plaintiffs' inaccurate description of date and method of obtaining stock on certification did not raise the inference of lack of credibility); *IPO*, 227 F.R.D. at 98 ("there is no evidence that any of the conduct here was the result of bad faith or an attempt to deceive defendants or the court....none of the inconsistencies or omissions complained of by defendants, such as failing to disclose certain specific transactions, affect the merits of the class representatives' manipulation claims."); *In re Micro Strategy Sec. Litig.* 172 F. Supp. 2d 778, 784, n. 14 (E.D. Va. 2001)("Milberg's Weiss's resulting mistake [on the plaintiff's certification] was innocent, an act of negligence rather than bad faith.").

[35] Instead, Defendants look to *Davidson v. Citizens Gas & Coke Util.,* 238 F.R.D. 225 (S.D. Ind. 2006) (failing to disclose their previous felony convictions in an employment discrimination class action) and *In re Organogenesis Sec. Litig.,* __ F.R.D. __, 2007 WL 776425, *9 (D. Mass. March 15, 2007) (Court specifically stated it did "not conclude the erroneous certifications were intentional, and does not accept them as grounds to find [the plaintiff] inadequate....") to support its claim that courts "routinely reject" class plaintiffs for inaccurate documents.

affect a plaintiff's ability to represent the class or to pursue the merits of the cause of action routinely fail to defeat certification.").

    **F.**    **Direct Communication Between All Three Class Representatives Has Not Yet Been Necessary**

       Although Fortis, Metzler, and Mundy have not discussed this case with each other directly, there is no requirement that they do so.  Defendants point to no authority to the contrary.[36]  Instead, Plaintiffs must only show that their interests are not antagonistic to other class members – a standard Fortis, Metzler, and Mundy have easily met.

       Defendants somehow impute the requirement that the proposed class representatives have not functioned collectively because they have not discussed aspects of the litigation with each other.  This is completely unsupportable.  The proposed class representatives retained experienced counsel, who have kept them informed throughout the litigation, reviewed pleadings and other relevant materials, and have actively participated in the discovery process.  Accordingly, the fact that Fortis, Metzler, and Mundy have not spoken directly with one another is irrelevant.

---

[36] Rather, Defendants misapply *In re Network Associates, Inc., Sec. Litig.*, 76 F. Supp. 2d 1017, 1026 (N.D. Cal. 1999), which simply requires that the members of lead plaintiffs function collectively as one single group.  Class Counsel and the proposed class representatives are in constant communication with each other through various media, including telephone and e-mail.

## CONCLUSION

For all of the foregoing reasons, all of Defendants' arguments should be rejected, and

Lead Plaintiffs' Motion for Class Certification should be granted in its entirety.

Dated:  April 23, 2007                    Respectfully submitted,

                                          /s/ Steven J. Toll
                                          Steven J. Toll (*pro hac vice*)
                                          Mark S. Willis (*pro hac vice*)
                                          Jason M. Leviton (*pro hac vice*)
                                          **COHEN MILSTEIN HAUSFELD & TOLL
                                          P.L.L.C.**
                                          1100 New York Avenue, N.W.
                                          West Tower, Suite 500
                                          Washington, D.C. 20005
                                          (202) 408-4600

                                          **SPECTOR, ROSEMAN & KODROFF, P.C.**
                                          Robert M. Roseman
                                          David Felderman
                                          Richard A. Kraemer
                                          1818 Market Street, Suite 2500
                                          Philadelphia, Pa. 19103
                                          (215) 496-0300

                                          **MILBERG WEISS & BERSHAD LLP**
                                          Barry A. Weprin (BW-8637)
                                          Kristi Stahnke McGregor (KSM-1575)
                                          Belinda Williams (BW-6652)
                                          One Pennsylvania Plaza - 49th Floor
                                          New York, NY  10119
                                          (212) 594-5300

                                          **Co-*Lead Counsel for Plaintiffs***