UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| WAYNE WELMON, Individually and on Behalf of all others similarly situated,<br><br>         Plaintiff,<br><br>   vs.<br><br>CHICAGO BRIDGE & IRON CO. N.V.,<br>GERALD M. GLENN, ROBERT B. JORDAN, and<br>RICHARD E. GOODRICH,<br><br>         Defendants. | Case No.  06-CV-01283 (JES)<br><br>ELECTRONICALLY FILED |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF
THEIR MOTION FOR FINAL APPROVAL OF SETTLEMENT AND PLAN OF
ALLOCATION OF SETTLEMENT PROCEEDS**

**COHEN, MILSTEIN, HAUSFELD &
  TOLL, P.L.L.C.**
Steven J. Toll (admitted *pro hac vice*)
Mark S. Willis (admitted *pro hac vice*)
Jason M. Leviton (admitted *pro hac vice*)
1100 New York Avenue, N.W.
Suite 500, West Tower
Washington, D.C.  20005
Telephone:  (202) 408-4600
Facsimile:  (202) 408-4699

**MILBERG LLP**
Barry A. Weprin (BW-8637)
Paul J. Andrejkovics (PA-2320)
One Pennsylvania Plaza
New York, NY  10119-0165
Telephone:  (212) 594-5300
Facsimile:  (212) 868-1229

*Co-Lead Counsel For Lead Plaintiffs and
Proposed Settlement Class Representative Walter
J. Mundy*

**SPECTOR ROSEMAN & KODROFF, P.C.**
Robert M. Roseman (RR-1103)
Jeffrey L. Kodroff
David Felderman
Daniel J. Mirarchi
Rachel E. Kopp
1818 Market Street, 25th Floor
Philadelphia, PA  19103
Telephone:  (215) 496-0300
Facsimile:  (215) 496-6611

## TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT ........................................................................... 1

ARGUMENT ........................................................................................................ 5

II.    CERTIFICATION OF THE PROPOSED SETTLEMENT CLASS IS PROPER .... 5

    A.  The Settlement Class Representatives' Claims Satisfy the Prerequisites of Rule 23(a) ..................................................................................................... 6

        1.    The Settlement Class Is Sufficiently Numerous ..................................... 6

        2.    There are Questions of Law or Fact Common to Members of the Settlement Class ................................................................................... 6

        3.    The Settlement Class Representatives' Claims are Typical of Those of the Settlement Class ............................................................................ 8

        4.    The Settlement Class Representatives Will Fairly and Adequately Protect the Interests of the Settlement Class ........................................... 9

    B.  The Settlement Class Representatives' Claims Satisfy the Prerequisites of Rule 23(b)(3) ............................................................................................. 10

        1.    Common Questions of Law or Fact Predominate ................................. 11

        2.    A Class Action is the Superior Method of Adjudication ....................... 12

III.   THE COURT SHOULD GRANT FINAL APPROVAL TO THE PROPOSED SETTLEMENT ................................................................................................. 14

    A.  The Standard for Evaluating Class Action Settlements ................................. 14

    B.  Application of the Grinnell Factors Supports Approval of the Settlement ..... 15

        1.    The Complexity, Expense And Likely Duration of the Litigation ........ 15

        2.    The Reaction of the Settlement Class to the Settlement ....................... 17

        3.    The Stage of the Proceedings and the Amount of Discovery Completed ............................................................................................. 18

4.  The Risks of Establishing Liability ..................................................... 19

5.  The Risks of Establishing Damages .................................................... 20

6.  Risks of Maintaining a Class Action through Trial ............................. 21

7.  The Ability of the Defendants to Withstand a Greater Judgment .......... 22

8.  The Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and all the Attendant Risks of Litigation ........ 22

IV.  THE PLAN OF ALLOCATION IS FAIR AND REASONABLE ........................ 24

V.  CONCLUSION .................................................................................... 24

## <u>TABLE OF AUTHORITIES</u>

### CASES

*Abdul-Malik v. Coombe*, No. 96 Civ. 1021 (DLC), 1996 WL 706914 (S.D.N.Y. Dec. 6, 1996) ..................................................................................... 8

*Albert Fadem Trust v. Duke Energy Corp.*, 214 F. Supp. 2d 341 (S.D.N.Y. 2002) ......... 13

*In re America Bank Note Holographics, Inc., Sec. Litigation*, 127 F. Supp. 2d 418 (S.D.N.Y. 2001) ................................................................................. 17

*Amchem Products v. Windsor*, 521 U.S. 591 (1997)..................................................... 5, 11

*In re AOL Time Warner, Inc.*, No. 02 Civ. 5575, 2006 WL 903236 (S.D.N.Y. April 6, 2006) ............................................................................... 21, 22

*In re AOL Time Warner, Inc. Sec. & "ERISA" Litigation*, No. 02 Civ. 5575 (SWK), 2006 WL 3057232 (S.D.N.Y. Oct. 25, 2006) ............................... 14

*In re Baldwin-United Corp. Litigation*, 122 F.R.D. 424 (S.D.N.Y. 1986)........................ 8

*In re Blech Sec. Litigation*, 187 F.R.D. 97 (S.D.N.Y. 1999)........................................... 21

*City of Detroit v. Grinnell*, 495 F.2d 448 (2d Cir. 1974) ...............................14, 15, 19, 22

*Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473 (2d Cir. 1995) ................... 6

*County of Suffolk v. Long Island Lighting Co.*, 907 F.2d 1295 (2d Cir. 1990) ............... 14

*Cromer Finance Ltd. v. Berger*, 205 F.R.D. 113 (S.D.N.Y. 2001).................................. 12

*Daniels v. Amerco*, No. 81 Civ. 3801 (RLC), 1983 WL 1794 (S.D.N.Y. Mar. 10, 1983)................................................................................................. 8

*Daniels v. City of New York*, 198 F.R.D. 409 (S.D.N.Y. 2001)........................................ 9

*In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285 (2d Cir. 1992)...................... 9

*Dura-Bilt Corp. v. Chase Manhattan Corp.*, 89 F.R.D. 87 (S.D.N.Y. 1981).............. 8, 11

*Gary Plastic Packaging Corp. v. Merrill Lynch*, 903 F.2d 176 (2d Cir. 1990)................. 5

*In re Gilat Satellite Networks, Ltd.*, No. CV-02-1510, 2007 WL 1191048 (E.D.N.Y. Apr. 19, 2007)................................................................... 15

*In re Global Crossing Sec. & ERISA Litigation*, 225 F.R.D. 436 (S.D.N.Y. 2004)14, 15, 21

*In re Global Crossing Sec. and ERISA Litigation*, No. 02 MD 1472, 2004 U.S. Dist. LEXIS 23946 (S.D.N.Y. Nov. 23, 2004) .................................................... 17, 21

*Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43 (2d Cir. 2000) .......................... 14

*Green v. Wolf Corp.*, 406 F.2d 291 (2d Cir. 1968) ......................................................... 13

*In re Ikon Office Solutions, Inc Sec. Litigation*, 194 F.R.D. 166 (E.D. Pa. 2000)........... 16

*In re Independent Energy Holdings PLC Sec. Litigation*, No. 00 Civ. 6689, 2003 WL 22244676 (S.D.N.Y. Sept. 29, 2003)................................................................... 23

*In re Luxottica Group S.p.A. Litigation*, 233 F.R.D. 306 (E.D.N.Y. 2006) ..................... 16

*Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358 (S.D.N.Y. 2002)................ 17, 24

*Marisol A. v. Guiliani*, 929 F. Supp. 662 (S.D.N.Y. 1996) *aff'd*, 126 F.3d 372 (2d Cir. 1997) ......................................................................................................................... 8

*Moore v. PaineWebber, Inc.*, 306 F.3d 1247 (2d Cir. 2002) ........................................... 11

*In re NASDAQ Market-Makers Antitrust Litigation*, 172 F.R.D. 119 (S.D.N.Y. 1997)......................................................................................................................... 8

*In re In re NASDAQ Market-Makers Antitrust Litigation*, 187 F.R.D. 465 (S.D.N.Y. 1998) ..................................................................................... 21, 22, 24

*In re NTL, Inc. Sec. Litigation*, No. 02 Civ. 3013 (LAK) 2006 WL 330113 (S.D.N.Y. Feb 14, 2006)......................................................................................... 14

*In re National Student Mtkg*, 68 F.R.D. 151 (D.D.C. 1974)........................................... 16

*Newman v. Stein*, 464 F.2d 689 (2d Cir. 1972)............................................................... 22

*In re Omnicom Group, Inc. Sec. Litig.*, No. 02 Civ. 4483 (RCC), 2007 WL 1300781 (S.D.N.Y. April 30, 2007) ...................................................................... 7, 10

*Oscar Gruss & Son v. Geon Industrial, Inc.*, 75 F.R.D. 531 (S.D.N.Y. 1977) ................. 8

*In re Oxford Health Plans*, 191 F.R.D. 369 (S.D.N.Y. 2000) ........................................... 9

*In re PaineWebber Ltd. P'ships Litigation*, 171 F.R.D. 104 (S.D.N.Y. 1997) *aff'd*, 117 F.3d 721 (2d Cir. 1997)................................................................... 19, 22, 24

*In re Prudential Sec. Inc. Ltd. Partnership Litigation*, 107 F.3d 3, 1996 WL
739258 (2d Cir. Dec. 27, 1996)................................................................... 14

*In re Prudential Sec. Inc. Ltd. P'ships. Litigation*, 163 F.R.D. 200 (S.D.N.Y.
1995) ........................................................................................................ 5, 11

*Robinson v. Metropolitan-North Commuter R.R.*, 267 F.3d 147 (2d Cir. 2001) ............... 8

*In re SmithKline Beckman Corp. Sec. Litigation*, 751 F. Supp. 525 (E.D. Pa.
1990) ............................................................................................................. 18

*In re Sterling Foster & Co. Sec. Litigation*, 238 F. Supp. 2d 480 (E.D.N.Y. 2002)......... 23

*Strougo v. Bassini*, 258 F. Supp. 2d 254 (S.D.N.Y. 2003) .............................................. 18

*Strube v. American Equity Investment Life Insurance Co.*, 226 F.R.D. 688 (M.D.
Fla. 2005) ..................................................................................................... 15

*In re Sumitomo Copper Litigation*, 189 F.R.D. 274 (S.D.N.Y. 1999) ...................... 14, 15

*Teachers' Ret. Sys. of La. V. ACLN Ltd.*, No. 01 Civ. 11814, 2004 WL 2997957
(S.D.N.Y. Dec. 27, 2004)................................................................................ 6

*Thompson v. Metropolitan Life Insurance Co.*, 216 F.R.D. 55 (S.D.N.Y. 2003)............. 15

*In re Towers Finance Corp. Noteholders Litigation*, 177 F.R.D. 167 (S.D.N.Y.
1997) .............................................................................................................. 7

*In re Vivendi Universal SA Sec. Litigation*, 242 F.R.D. 76 (S.D.N.Y. 2007)............ passim

*In re Warner Commc'ns Sec. Litigation*, 798 F.2d 35 (2d Cir. 1986) ............................. 14

*In re Warner Communications Sec. Litigation*, 618 F. Supp. 735 (S.D.N.Y. 1985) ........ 19

*Weinberger v. Kendrick*, 698 F.2d 61 (2d Cir. 1982)................................................... 5, 23

*White v. First American Registry, Inc.*, No. 04 Civ. 1611 (LAK), 2007 WL
703926 (S.D.N.Y. March 7, 2007) ............................................................... 15

*In re WorldCom*, No. 02 Civ. 5119, 2006 WL 2709855 (S.D.N.Y. Sept. 22, 2006)........ 14

## FEDERAL STATUTES

Class Action Fairness Act of 2005, 28 U.S.C. §1715 ...................................................... 4

Fed. R. Civ. P. 23(a)(1) ..................................................................................................... 6

## I.     **PRELIMINARY STATEMENT**

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Plaintiffs' Co-Lead Counsel on behalf of Lead Plaintiffs Fortis Investment Management N.A./S.A. ("Fortis") and Metzler Investment GmbH ("Metzler") and plaintiff Walter J. Mundy ("Mundy") (collectively "Settlement Class Representatives") respectfully submit this memorandum of law in support of plaintiffs' motion for final approval of the settlement of this litigation for $10.5 million in cash and the implementation of certain corporate governance measures by Defendant Chicago Bridge and Iron Company N.V. ("CB&I" or the "Company") ("Settlement") and final approval of the proposed Plan of Allocation[1] for the settlement proceeds.  The terms of the Settlement are set forth in the Stipulation and Agreement of Settlement dated as of January 22, 2008 (the "Stipulation"), which has been previously submitted to the Court.[2]

The Settlement is the result of arm's-length negotiations by counsel well informed in the strength and weaknesses of the claims of the Settlement Class.  The Settlement was achieved with the assistance of the Honorable Eugene F. Lynch (Ret.), a highly respected mediator with extensive experience in the mediation of complex civil actions.  As a result of the successful mediation, the Settlement Class Representatives and their counsel believe they have achieved a settlement which provides for an excellent resolution of the Settlement Class' claims and which also provides for the implementation of important remedial corporate governance measures monitoring insider trading and requiring at least

---

[1] The Plan of Allocation was set forth in the Notice of Pendency of Class Action and Proposed Settlement, Motion for Attorneys' Fees and Settlement Fairness Hearing ("Notice"), which has been mailed to Settlement Class Members, pursuant to the Court's Preliminary Order for Notice and Hearing in Connection with Settlement Proceedings, dated January 30, 2008 ("Preliminary Order").

[2] All capitalized terms shall have the same meaning as in the Stipulation.

one director to have an accounting background or related financial management expertise, which includes knowledge and experience sufficient to evaluate CB&I's compliance with GAAP and GAAS.[3]  Further, the Settlement is achieved without the substantial expense, risk, delay and uncertainty of continued litigation, including trial and any subsequent appeals.

Following the appointment of the Lead Plaintiffs, Plaintiffs' Co-Lead Counsel undertook a thorough investigation in the preparation of the Consolidated Amended Class Action Complaint for Violations of Federal Securities Laws ("Complaint").  This investigation included reviewing and analyzing all publicly-available information regarding CB&I including, but not limited to, its Securities and Exchange Commission ("SEC") filings, financial statements, press releases, reports about CB&I, and analysts' reports and notes rendered by securities firms.  Plaintiffs' Co-Lead Counsel also consulted with an expert concerning potential damages and the market efficiency of CB&I's securities.

After Lead Plaintiffs and Mundy successfully opposed Defendants' attempts to dismiss the litigation, the Court stayed all discovery, with the exception of allowing Lead Plaintiffs to serve third party subpoenas for the purpose of preserving documents pending the Court ruling on class certification.  At that time, however, the Court allowed Lead Plaintiffs to serve subpoenas on various entities that Lead Plaintiffs believed had relevant information with respect to their cause of action.

---

[3] CB&I agrees to implement the following corporate governance measures to last no fewer than five (5) years: (i) all stock sales by any of CB&I's Directors, or by CB&I's Chief Executive Officer and Chief Operating Officer, of shares of their personal holdings in CB&I stock will be approved in advance of such sales by CB&I's General Counsel; and (ii) at least one of the Directors on CB&I's Supervisory Board shall possess an accounting background or related financial management expertise, which includes knowledge and experience sufficient to evaluate CB&I's compliance with GAAP and GAAS.

With respect to class certification, the Settlement Class Representatives filed an opening motion and brief, supported by their expert, Dr. Scott Hakala, who submitted an expert declaration addressing the market efficiency of CB&I's common stock. The Settlement Class Representatives also responded to multiple sets of discovery requests from Defendants, answering interrogatories and producing documents. Moreover, Defendants deposed each of the proposed Settlement Class Representatives, testimony of which appeared in Defendants' opposition to class certification. Prior to resolving the litigation, the Settlement Class Representatives and their counsel were preparing for an evidentiary hearing with respect to their motion for class certification which the Court ordered.

Plaintiffs' Co-Lead Counsel, who are well-respected and experienced in prosecuting securities fraud class actions, have concluded that the Settlement is an excellent result and in the best interests of the Settlement Class. This conclusion is based on all the circumstances present here, including the substantial risks, expense, and uncertainties in continuing the litigation through class certification, summary judgment, trial, and appeal; the relative strengths and weaknesses of the claims and defenses asserted; a complete analysis of the evidence obtained and the legal and factual issues presented; past experience in litigating complex actions similar to the present action; and the serious disputes between the parties concerning the merits of the litigation and potential damages.[4]

---

[4] The Court is respectfully referred to the accompanying Joint Declaration of Robert M. Roseman, Mark S. Willis, and Barry A. Weprin in Support of Plaintiffs' Motion for Final Approval of Settlement and Plan of Allocation of Settlement Proceeds and Plaintiffs' Motion for Award of Attorneys' Fees and Reimbursement of Expenses ("Joint Declaration") for a more detailed history of the litigation, the efforts of counsel, and the factors bearing on the reasonableness of the Settlement and the Plan of Allocation. The Joint Declaration is being filed herewith.

Finally, members of the Settlement Class appear to agree with Plaintiffs' Co-Lead Counsel's conclusion that the proposed Settlement is fair, reasonable and adequate. Pursuant to the Court's Preliminary Order, over 47,000 copies of the Notice have been mailed to Settlement Class Members or their nominees.[5]  In addition, a Summary Notice was published in English in the national and European editions of *The Wall Street Journal* and *Financial Times*, published in German in the *Frankfurter Allgemeine Zeitung* and *Berliner Zeitung*, and transmitted over the Global Media Circuit of *Business Wire*.[6] The Notice informed potential Settlement Class Members of their right to object or request exclusion from the Settlement Class by May 8, 2008.  Additionally, pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §1715, Defendants' counsel sent out a notification and certain filings in the action to each of the 50 States' Attorney Generals advising them of the settlement and their rights.  To date, no one has filed an objection to any aspect of the Settlement or Plan of Allocation, and no objections have been received regarding counsel's request for attorneys' fees and reimbursement of expenses, and request by the Settlement Class Representatives for reimbursement of their costs and expenses (including lost wages) directly relating to their representation of the Settlement Class.  Further, only one member of the Settlement Class has requested exclusion from the Settlement Class.

For all the reasons discussed herein and in the Joint Declaration, the Settlement Class Representatives and Plaintiffs' Co-Lead Counsel respectfully submit that the

---

[5] *See* ¶ 9 of the Affidavit of Charlene Young Re:  (A) Mailing of the Notice and the Proof of Claim; and (B) Report on Requests for Exclusion Received ("Young Affidavit"), dated May 22, 2008, attached to the Joint Declaration as Exhibit F.

[6] *See* ¶ 2 of the Affidavit of Paul J. Andrejkovics Re:  Publication of the Summary Notice of Pendency of Class Action, Proposed Settlement and Settlement Hearing (the "Andrejkovics Affidavit"), dated April 7, 2008, attached to the Joint Declaration as Exhibit G.

Settlement is eminently fair, reasonable, and adequate to the Settlement Class and should be approved by the Court. The Plan of Allocation of the Settlement proceeds is fair and reasonable and, therefore, should also be approved by the Court.

## ARGUMENT

### II.   CERTIFICATION OF THE PROPOSED SETTLEMENT CLASS IS PROPER

The Second Circuit has acknowledged the propriety of certifying a class solely for settlement purposes. *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982). Moreover, certification of a settlement class "has been recognized throughout the country as the best, most practical way to effectuate settlements involving large numbers of claims by relatively small claimants." *In re Prudential Sec. Inc. Ltd. P'ships. Litig.*, 163 F.R.D. 200 (S.D.N.Y. 1995). In *Amchem Prods. v. Windsor*, 521 U.S. 591, 619-22 (1997), the Supreme Court held that a class seeking to be certified for purposes of effectuating a settlement must satisfy the applicable requirements of Rule 23, *i.e.*, numerosity, commonality, typicality, adequacy of representation, predominance of common issues and superiority. The Second Circuit has instructed District Courts to interpret these Rule 23 requirements liberally. *See, e.g., Gary Plastic Packaging Corp. v. Merrill Lynch*, 903 F.2d 176, 179 (2d Cir. 1990). As explained below, and as set forth in greater detail in Plaintiffs' Motion for Class Certification and Memorandum in Support Thereof, and Reply Memorandum previously filed with the Court, the Settlement Class here satisfies each of these requirements, and the Court should grant final certification of the Class for settlement purposes.

A.     **The Settlement Class Representatives' Claims Satisfy the Prerequisites of Rule 23(a)**

1.     **The Settlement Class Is Sufficiently Numerous**

Numerosity is satisfied when "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). In the Second Circuit, there is a presumption of numerosity when the number of class members exceeds 40. *See Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995). "In securities fraud class actions relating to publicly owned and nationally listed corporations, the numerosity requirement may be satisfied by a showing that a large number of shares were outstanding and traded during the relevant period." *In re Vivendi Universal SA Sec. Litig.*, 242 F.R.D. 76, 84 (S.D.N.Y. 2007) (quoting *Teachers' Ret. Sys. of La. V. ACLN Ltd.*, No. 01-CV-11814 (LAP), 2004 WL 2997957, at *3 (S.D.N.Y. Dec. 27, 2004)).

Throughout the Settlement Class Period, CB&I had millions of shares of common stock issued and outstanding which was actively traded on the New York Stock Exchange. As of May 1, 2006, there were 97 million shares of CB&I common shares outstanding. *See* Form 10-Q filed on June 2, 2006. Moreover, in the dissemination of notice to Settlement Class Members, more than 47,000 Notices were sent to potential Settlement Class Members who purchased CB&I stock during the Settlement Class Period. *See* Young Affidavit. These facts are sufficient to establish numerosity is satisfied for purposes of Rule 23(a)(1).

2.     **There are Questions of Law or Fact Common to Members of the Settlement Class**

Rule 23(a)(2) requires a showing that common issues of fact or law affect all Settlement Class Members. "The commonality requirement, particularly in securities

fraud litigation, is 'generally considered a 'low hurdle' easily surmounted.' Commonality does not demand that every question of law or fact be common to every class member, but instead merely requires that the 'claims arise from a common nucleus of operative facts.'" *In re Omnicom Group, Inc. Sec. Litig.*, No. 02 Civ. 4483 (RCC), 2007 WL 1300781, at *3 (S.D.N.Y. April 30, 2007) (citations omitted). Indeed, "[t]he commonality requirement 'has been applied permissively' in securities fraud litigation." *Vivendi*, 242 F.R.D. at 84 (quoting *In re Nortel Networks Corp. Sec. Litig.*, No. 01 Civ. 1855 (RMB), 2003 WL 22077464, at *3 (S.D.N.Y. Sept. 8, 2003)). Where plaintiffs allege that class members have been injured by the same fraudulent scheme, the commonality requirement is satisfied. *See, e.g., In re Towers Fin. Corp. Noteholders Litig.*, 177 F.R.D. 167, 170 (S.D.N.Y. 1997) (commonality requirement met; common questions included whether "defendants employed devices, schemes or artifices to defraud the class"). Indeed, a single common question may be sufficient to satisfy the commonality requirement.

The Settlement Class Representatives allege that they and all members of the Settlement Class were injured by a fraudulent scheme to artificially create, inflate and maintain the market for, and market prices of, CB&I common stock. Other common questions include: (1) whether Defendants engaged in a fraudulent scheme; (2) whether Defendants acted with scienter; (3) whether Defendants' acts affected the market for CB&I securities; and (4) whether Defendants' conduct had the effect of concealing the circumstances that bore on the ultimate loss. Clearly, there are sufficient common questions to satisfy Rule 23(a)(2).

3.    **The Settlement Class Representatives' Claims are Typical of Those of the Settlement Class**

Rule 23(a)(3) requires plaintiffs to demonstrate that their claims are typical of those of the class.  A representative's claims are "typical" where, as here, they "arise from the same practice or course of conduct that gives rise to the claims of the proposed class members." *Vivendi*, 242 F.R.D. at 85. (quoting *Marisol A. v. Guiliani*, 929 F. Supp. 662, 691 (S.D.N.Y. 1996) *aff'd*, 126 F.3d 372 (2d Cir. 1997)).  Typicality thus embraces the principle that class representatives "have the incentive to prove all the elements of the cause of action which would be presented by the individual members of the class were they initiating individual actions."  *In re NASDAQ Market-Makers Antitrust Litig.*, 172 F.R.D. 119, 126 (S.D.N.Y. 1997) (quoting *Daniels v. Amerco*, No. 81-CV-3801 (RLC), 1983 WL 1794, at *5 (S.D.N.Y. Mar. 10, 1983) (internal quotation marks omitted)).

The typicality requirement of Rule 23(a)(3) is not demanding.  *Robinson v. Metro-North Commuter R.R.*, 267 F.3d  147, 155 (2d Cir. 2001).  Further, the "typicality requirement is not defeated by minor variations in the fact patterns of individual class members' claims." *Abdul-Malik v. Coombe*, No. 96 Civ. 1021 (DLC), 1996 WL 706914, at *3 (S.D.N.Y. Dec. 6, 1996).  Numerous cases have held that factual differences involving the date of acquisition, type of securities purchased, and manner by which the investor acquired his securities will not destroy typicality if each class member was the victim of the same material omissions and the same fraudulent course of conduct.  *See, e.g.*, *Dura-Bilt Corp. v. Chase Manhattan Corp.*, 89 F.R.D. 87, 99 (S.D.N.Y. 1981); *In re Baldwin-United Corp. Litig.*, 122 F.R.D. 424, 428 (S.D.N.Y. 1986); *Oscar Gruss & Son v. Geon Indus., Inc.*, 75 F.R.D. 531, 534-35 (S.D.N.Y. 1977).

The Settlement Class Representatives' claims are typical of the claims of other Settlement Class Members because their claims arise out of the same course of conduct, namely, Defendants' fraudulent conduct to artificially create, inflate and maintain the market for, and market prices of, CB&I's securities. The Settlement Class Representatives each transacted in CB&I securities during the Settlement Class Period. As a result, the Settlement Class Representatives, like members of the Settlement Class they seek to represent, purchased CB&I securities during the Settlement Class Period and suffered significant losses as a result of Defendants' alleged violations of the federal securities laws. The Settlement Class Representatives stand in the same position as other investors who purchased CB&I securities during the Settlement Class Period, having suffered the same type of injury (purchasing those securities at artificially inflated prices and sustaining losses when the fraud was revealed) as a result of Defendants' actions. Thus, the Settlement Class Representatives' claims are typical of the Settlement Class.

> **4.    The Settlement Class Representatives Will Fairly and Adequately Protect the Interests of the Settlement Class**

Rule 23(a)(4) is satisfied if "the representative parties will fairly and adequately protect the interests of the class." Courts consider two factors in measuring adequacy: (1) whether the claims of the class representative conflict with those of the class; and (2) whether the plaintiffs' counsel is qualified, experienced, and generally able to conduct the litigation. *See, e.g.*, *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2d Cir. 1992); *In re Oxford Health Plans*, 191 F.R.D. 369, 376 (S.D.N.Y. 2000); *Daniels v. City of New York*, 198 F.R.D. 409, 414 (S.D.N.Y. 2001). In assessing adequacy, "many courts have observed [that] the issues of typicality and adequacy tend to merge because they 'serve as guideposts for determining whether. . .the named plaintiff's claim and the

9

class claims are so inter-related that the interests of the class members will be fairly and adequately protected in their absence.'" *Vivendi*, 242 F.R.D. at 85 (quoting *General Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 157 n. 13 (1982)). The adequacy requirement is "unmistakably lenient." *Omnicom Group*, 2007 WL 1300781, at *6.

In the case at Bar, there is clearly no conflict between the proposed Settlement Class Representatives and the other Settlement Class Members. The Settlement Class Representatives, like all Settlement Class Members, purchased CB&I securities at artificially inflated prices during the Settlement Class Period as a result of the Defendants' alleged materially false and misleading statements and were damaged as a result. To that end, the Settlement Class Representatives and Settlement Class Members share a common goal of maximizing recovery. The Settlement Class Representatives are members of the Settlement Class who suffered the same type of injury as the other members of the Settlement Class (*i.e.*, economic damages).

The Settlement Class Representatives are also being represented by preeminent securities class action lawyers. The Settlement Class Representatives retained counsel with extensive experience in complex securities class action proceedings in this Court and in other federal courts throughout the United States. Accordingly, the interests of all members of the Settlement Class were represented adequately by the proposed Settlement Class Representatives and Plaintiffs' Co-Lead Counsel.

**B.    The Settlement Class Representatives' Claims Satisfy the Prerequisites of Rule 23(b)(3)**

Rule 23(b)(3) authorizes class certification if "the Court finds that questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for

the fair and efficient adjudication of the controversy." Both of these requirements are satisfied here.

### 1. Common Questions of Law or Fact Predominate

"Class-wide issues predominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Vivendi*, 242 F.R.D. at 90 (quoting *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002)) (internal citations and quotation marks omitted). "Courts generally focus on the liability issue in deciding whether the predominance requirement is met, and if the liability issue is common to the class, common questions are held to predominate over individual questions." *In re Prudential*, 163 F.R.D. at 206 (quoting *Dura-Bilt Corp.*, 89 F.R.D. at 93). Accordingly, "the Supreme Court has noted that '[p]redominance is a test readily met in certain cases alleging. . . securities fraud.'" *Vivendi*, 242 F.R.D. at 90 (quoting *Amchem*, 521 U.S. at 625).

Here, the issues of materiality, causation and scienter are common to all members of the Settlement Class and clearly predominate over any individual issues. The common questions include: whether the federal securities laws were violated by Defendants' acts and/or omissions; whether statements made by Defendants during the Settlement Class Period misrepresented and/or omitted material facts about the financial condition of CB&I and the cost over-runs of some of its projects; whether the market price for CB&I securities was artificially inflated during the Settlement Class Period due to those material representations and/or omissions; and, if so, the extent to which members of the

11

Settlement Class have sustained damages, and the proper measure of damages. These are precisely the types of common questions that courts have held sufficient to demonstrate predominance in a securities fraud case. *See, e.g.*, *Cromer Fin. Ltd. v. Berger*, 205 F.R.D. 113, 127 (S.D.N.Y. 2001) (holding that common questions held to predominate where "[t]he proof for claims of misrepresentation or omission, materiality, and [defendant's] scienter are all based on a common nucleus of facts and a common course of conduct").

### 2.    A Class Action is the Superior Method of Adjudication

The last prong of Rule 23(b)(3) requires a court to consider whether a class action is superior to other methods of adjudication. A class action is particularly appropriate for addressing the claims at issue in this case.

Rule 23(b)(3) specifies four factors that a Court should consider in determining whether a class action is "superior" to other methods of adjudication: (1) the interests of members of the class in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of the class action. Each of these factors weighs in favor of certification of the Settlement Class.

With respect to the first factor, the Settlement Class Representatives seek to represent a Settlement Class consisting of a large number of investors in CB&I securities whose individual damages are likely small enough to render individual litigation prohibitively expensive. Relatively few members of the proposed Settlement Class,

located throughout the U.S. and in Europe, would be in a position to proceed individually against Defendants. This point is underscored by the fact that only one member of the Settlement Class requested exclusion. Superiority is readily found where, as here, "the alternatives [to a class action] are either no recourse for thousands of [defrauded investors]" or "a multiplicity and scattering of suits with the inefficient administration of litigation which follows in its wake." *Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir. 1968).

The second factor also militates in favor of certifying a settlement class here. The Court-appointed Lead Plaintiffs, Fortis and Metzler, and plaintiff Mundy, have been litigating this case for over two years on behalf of themselves and the proposed Settlement Class. They are not aware of any other securities fraud class action, other than theirs, pending against the Defendants.

The third factor, the desirability of concentrating the litigation of the claims in this particular forum, has already been decided by the Court when it consolidated the related actions. *See* Order dated May 11, 2006. *See also* Joint Declaration, ¶ 11. Concentrating litigation in a single forum plainly has a number of benefits, including eliminating the risk of inconsistent adjudications and promoting the fair and efficient use of the judicial system. "[T]he Southern District of New York is well known to have expertise in securities law." *Albert Fadem Trust v. Duke Energy Corp.*, 214 F. Supp. 2d 341, 344 (S.D.N.Y. 2002).

Lastly, with respect to the fourth factor, no difficulties are likely to be encountered in the management of a class action. Prospective Settlement Class Members may find individual litigation cost-prohibitive and equally inefficient. Indeed,

prosecution of this action on a class basis is much more efficient than individual

adjudications of hundreds or thousands of claims. Moreover, securities class actions are

routinely certified and raise no unusual manageability issues.[7] Accordingly, the class

action device is the superior method for adjudicating the claims of the Settlement Class

Representatives and all Settlement Class Members.

### III.    THE COURT SHOULD GRANT FINAL APPROVAL TO THE PROPOSED SETTLEMENT

#### A.    The Standard for Evaluating Class Action Settlements

The standards governing approval of class action settlements are well established

in this Circuit. In *City of Detroit v. Grinnell Corp.*, the Court of Appeals held that the

following were factors to be considered in evaluating a class action settlement:

> (1) the complexity, expense and likely duration of the litigation, (2) the reaction
> of the class to the settlement, (3) the stage of the proceedings and the amount of
> discovery completed, (4) the risks of establishing liability, (5) the risks of
> establishing damages, (6) the risks of maintaining the class action through the
> trial, (7) the ability of the defendants to withstand a greater judgment, (8) the
> range of reasonableness of the settlement fund in light of the best possible
> recovery, [and] (9) the range of reasonableness of the settlement fund to a
> possible recovery in light of all the attendant risks of the litigation.

495 F.2d 448, 463 (2d Cir. 1974) *abrogated on other grounds by Goldberger v.*

*Integrated Resources, Inc.*, 209 F.3d 43 (2d Cir. 2000) (citations omitted); *see also*

*County of Suffolk v. Long Island Lighting Co.*, 907 F.2d 1295, 1323-24 (2d Cir. 1990); *In*

*re Sumitomo Copper Litig.*, 189 F.R.D. 274, 281 (S.D.N.Y. 1999). "In finding that a

settlement is fair, not every factor must weigh in favor of settlement, 'rather the court

---

[7] *See, e.g.*, *In re Prudential Sec. Inc. Ltd. P'ship Litig.*, 107 F.3d 3, 1996 WL 739258 (2d Cir. Dec. 27, 1996); *In re Warner Commc'ns Sec. Litig.*, 798 F.2d 35 (2d Cir. 1986); *In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, No. MDL 1500, 02-CV-5575 (SWK), 2006 WL 3057232 (S.D.N.Y. Oct. 25, 2006); *In re WorldCom*, No. 02-CV-5119, 2006 WL 2709855 (S.D.N.Y. Sept. 22, 2006); *In re NTL, Inc. Sec. Litig.*, No. 02-CV-3013 (LAK) (AJP), 2006 WL 330113 (S.D.N.Y. Feb 14, 2006); *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436 (S.D.N.Y. 2004).

should consider the totality of these factors in light of the particular circumstances.'" *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 456 (S.D.N.Y. 2004) (quoting *Thompson v. Metro Life Ins. Co.*, 216 F.R.D. 55, 61 (S.D.N.Y. 2003)).  In deciding whether to approve a settlement, a court "should not attempt to approximate a litigated determination of the merits of the case lest the process of determining whether to approve a settlement simply substitute one complex, time consuming and expensive litigation for another." *White v. First American Registry, Inc.*, No. 04 Civ. 1611 (LAK), 2007 WL 703926, at *2 (S.D.N.Y. March 7, 2007).

> **B.      Application of the Grinnell Factors Supports Approval of the Settlement**

The Settlement satisfies the criteria for approval of class action settlements articulated by the Second Circuit in *Grinnell*.

> **1.      The Complexity, Expense And Likely Duration of the Litigation**

The courts have acknowledged the "overriding public interest in favor of settlement" of class actions because it is "common knowledge that class action suits have a well deserved reputation as being most complex." *Strube v. American Equity Inv. Life Ins. Co.*, 226 F.R.D. 688, 698 (M.D. Fla. 2005) (citation and internal quotations omitted). "[I]n evaluating the settlement of a **securities** class action, federal courts, including this Court, 'have long recognized that such litigation is notably difficult and notoriously uncertain.'" *Sumitomo*, 189 F.R.D. at 281 (citations omitted; emphasis in original). Indeed, the courts recognize that "[s]ecurities class actions are generally complex and expensive to prosecute[,]" *In re Gilat Satellite Networks, Ltd.*, No. CV-02-1510, 2007 WL 1191048, at *10 (E.D.N.Y. Apr. 19, 2007), and thus "[c]lass action suits readily lend

themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation. There is a strong public interest in quieting any litigation; this is 'particularly true in class actions.'" *In re Luxottica Group S.p.A. Litig.*, 233 F.R.D. 306, 310 (E.D.N.Y. 2006) (citations omitted).

There is no doubt that that this securities class action involves complex factual and legal issues. As discussed herein and in the Joint Declaration, the various obstacles with which the Settlement Class would necessarily be confronted with "flow from the complexities and difficulties inherently involved in shareholder securities fraud litigation." *In re Nat'l Student Mktg.*, 68 F.R.D. 151, 155 (D.D.C. 1974). Indeed, courts have recognized that "securities actions have become more difficult from a plaintiff's perspective in the wake of the PSLRA." *In re Ikon Office Solutions, Inc Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000).

If this case were tried rather than settled, the parties would have to undertake a lengthy, extensive and time consuming discovery program involving a review and analysis of hundreds of thousands of documents that defendants and third parties would produce. Additionally, Lead Plaintiffs and Mundy would also have to continue with depositions, including expert depositions and discovery.

The difficulties and complexities of issues relating to proof of loss causation and damages were very real in this case. For example, Defendants' damages expert would likely opine that there was no loss causation and that any drop in stock price was due to outside market factors. The jury's verdict with respect to damages would thus depend on its reaction to the complex testimony of experts, a reaction which is inherently uncertain to predict.

In addition, Defendants are represented by extremely capable counsel who are familiar with the defense of complex class actions such as this adding to the complexity and expense of continued prosecution of this case.

Finally, whatever the outcome of any eventual trial, which would undoubtedly require several weeks and involve the introduction of hundreds of exhibits, vigorously contested motions and significant expenses, it is virtually certain that appeals would be taken from any verdict. All of the foregoing would delay the ability of the Settlement Class to recover for years – assuming, of course, the Settlement Class Representatives are ultimately successful on their claims. Thus, the Settlement provides an immediate and certain pecuniary recovery, as well as corporate governance measures, to members of the Settlement Class. Settlement at this juncture unequivocally results in a substantial and tangible present recovery for the Settlement Class, without any attendant risk of delay of continued litigation through class certification, discovery, summary judgment, a protracted trial, and post-trial proceedings.

### 2. The Reaction of the Settlement Class to the Settlement

The reaction of the Settlement Class to the Settlement is a significant factor to be weighed in considering its adequacy. *See Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002); *In re Am. Bank Note Holographics, Inc., Sec. Litig.*, 127 F. Supp. 2d 418, 425 (S.D.N.Y. 2001); *In re Global Crossing Sec. and ERISA Litig.*, No. 02 MD 1472, 2004 U.S. Dist. LEXIS 23946, at 48 (S.D.N.Y. Nov. 23, 2004).

The Settlement Class' reaction to the Settlement is overwhelmingly and universally positive and, thus supports approval. More than 47,000 Notices were mailed to potential Settlement Class Members or their nominees. In addition, a summary form

17

of the Notice was published in English in the national and European editions of *The Wall Street Journal* and *Financial Times* and in German in the *Frankfurter Allgemeine Zeitung* and *Berliner Zeitung* and was transmitted over the Global Media Circuit of *Business Wire*. The deadline for submitting objections has now passed, and not one objection to the Settlement or the Plan of Allocation was received and only one person has requested exclusion. This is an exceptionally strong indication of the fairness of the Settlement. *See Strougo v. Bassini*, 258 F. Supp. 2d 254, 258 (S.D.N.Y. 2003) (citing *In re SmithKline Beckman Corp. Sec. Litig.*, 751 F. Supp. 525, 530 (E.D. Pa. 1990) ("The utter absence of objections and the nominal number of shareholders who have exercised their right to opt out. . .militate strongly in favor of approval of the settlement")).

3. **The Stage of the Proceedings and the Amount of Discovery Completed**

The parties have spent a great deal of time and money on many of the key legal and factual issues in this case and have survived Defendants' motion to dismiss, conducted class certification discovery, including the depositions of the named Plaintiffs, and fully briefed and argued the motion for class certification. Prior to the settlement, Plaintiffs' Co-Lead Counsel and Lead Plaintiffs and Mundy were preparing for the evidentiary hearing with respect to their motion for class certification. Additionally, while the Court imposed a stay of discovery pending resolution of the motion for class certification, Lead Plaintiffs and Mundy were permitted to serve third party subpoenas for the purpose of the preservation of documentation. Moreover, after the Settlement was reached in principle, Plaintiffs' Co-Lead Counsel conducted confirmatory discovery which included a review of thousands of pages of documents produced by Defendants following a meet and confer regarding the scope of the production and depositions and

interviews of several key witnesses of CB&I, including two of the named individual defendants, to substantiate their claims. *See* Joint Declaration, ¶¶ 10-32. Plaintiffs' Co-Lead Counsel also conferred with their experts in the preparation of these depositions and interviews.

Thus, the parties reached an agreement to settle the litigation at a point when they had a well-informed understanding of the legal and factual issues surrounding the case. Having sufficient information to properly evaluate the case, the Settlement Class Representatives and Plaintiffs' Co-Lead Counsel were able to settle the litigation and confirm following the Settlement, the strengths and weakness of their allegations, on terms highly favorable to the Settlement Class without the substantial risk, uncertainty, and delay of continued litigation. *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997) *aff'd*, 117 F.3d 721 (2d Cir. 1997) ("Class Counsel has had sufficient information to act intelligently on behalf of the class") (internal quotations and citations omitted).

### 4. The Risks of Establishing Liability

The risks associated with establishing liability, and maintaining the action through trial, are quite substantial and weigh heavily in favor of settlement. *See, e.g.*, *Grinnell*, 495 F.2d at 463; *In re Warner Communications Sec. Litig.*, 618 F. Supp. 735, 741 (S.D.N.Y. 1985). While Plaintiffs' Co-Lead Counsel believes that their claims against Defendants are valid, there is a real risk that they may ultimately fail to establish such liability. Indeed, Plaintiffs' Co-Lead Counsel's independent investigative efforts and later documentary evidence and deposition testimony obtained from Defendants and key witnesses, *see* Joint Declaration, ¶¶ 10-32, stress the difficulties Lead Plaintiffs and

Mundy would have encountered had this case proceeded through additional dispositive motions, trial and appeals that would inevitably result.

Had this case not settled, Defendants could have asserted in summary judgment or at trial, *inter alia*, CB&I's statements between March 9, 2005 and February 3, 2006 were not false and misleading or, in the alternative, were forward-looking statements; the Settlement Class suffered little or no damages; CB&I timely brought the information concerning the accounting issues to the market; the alleged accounting irregularities did not have a material impact on CB&I's financial statement; Defendants' insider trading was not improper; CB&I issued a corrective disclosure in its October 26, 2005 disclosure; and/or that Lead Plaintiffs and Mundy failed to prove scienter.

Moreover, at trial, Lead Plaintiffs and Mundy would face the risk of establishing liability posed by conflicting evidence and testimony. Since many witnesses likely would be aligned with Defendants and, as a result, hostile to plaintiffs' case, Lead Plaintiffs and Mundy would have to rely primarily on documents and expert witnesses to establish their case. The risk of establishing liability would be exacerbated by the following risks inherent in all shareholder litigation: the unpredictability of a lengthy and complex jury trial; the risks that witnesses would suddenly become unavailable or jurors could react to the evidence in unforeseen ways; and the risks that the jury would find that Defendants reasonably believed in the propriety of their actions at the time and Lead Plaintiffs and Mundy failed to prove scienter.

### 5.    The Risks of Establishing Damages

Plaintiffs' Co-Lead Counsel faced significant risks in proving causation and the amount of damages. Even in a less challenging case, "[c]alculation of damages is a

complicated and uncertain process, typically involving conflicting expert opinion about the difference between the purchase price and the stock's 'true' value absent the alleged fraud." *Global Crossing*, 2004 U.S. Dist. LEXIS 23946, at *79.  (citations and internal quotations omitted).  Undoubtedly, in this action, establishing the amount of damages at trial would have resulted in a "battle of experts."  The dispute between the parties' experts would have – and already did – focus on how much of the decline in CB&I's share price was attributable solely to the alleged fraudulent statements or omissions that the Settlement Class Representatives alleged artificially inflated the Company's stock price.  Moreover, Defendants would have continued to assert that their October 26, 2005 announcement was a corrective disclosure; thus, ending the Class Period early (*i.e.*, before February 3, 2006) and significantly limiting damages suffered by the Settlement Class.

### 6.    Risks of Maintaining a Class Action through Trial

In addition to the risks of establishing liability and damages, there is the risk of maintaining class status through trial.  *See generally, In re AOL Time Warner, Inc.*, No. 02 Civ. 5575, 2006 WL 903236 (S.D.N.Y. April 6, 2006) at *12 (risk of succeeding in certifying class supported approval of settlement); *Global Crossing*, 225 F.R.D. at 460 (same).  From the beginning of the case, Defendants made clear that they would strongly contest class certification on various grounds, jeopardizing Settlement Class Members' potential for recovery and, in fact, strenuously did oppose Plaintiffs motion for class certification.  *See*, *e.g.*, *In re Blech Sec. Litig.*, 187 F.R.D. 97, 107 (S.D.N.Y. 1999).  Despite this, even if the Settlement Class Representatives could obtain class certification, there could be a risk of decertification at a later stage.  *See In re In re NASDAQ Market-*

21

*Makers Antitrust Litig.*, 187 F.R.D. 465, 476-77 (S.D.N.Y. 1998) (decertification can occur if management problems arise during litigation; decertification or reversal of certification would deprive class of any recovery).

### 7. The Ability of the Defendants to Withstand a Greater Judgment

There is no reason to believe that Defendants could not have withstood a greater judgment at trial. However, "[t]he mere ability to withstand a greater judgment does not suggest the settlement is unfair." *AOL Time Warner*, 2006 WL 903236, at *42.

### 8. The Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and all the Attendant Risks of Litigation

The last two substantive factors courts consider are the range of reasonableness of the settlement funds in light of (i) the best possible recovery and (ii) litigation risks. In analyzing these last two factors, the issue for the Court is not whether the Settlement represents the "best possible recovery," but how the Settlement relates to the strengths and weaknesses of the case. The Court "consider[s] and weigh[s] the nature of the claim, the possible defenses, the situation of the parties, and the exercise of business judgment in determining whether the proposed settlement is reasonable." *Grinnell*, 495 F.2d at 462. Courts agree that the determination of a "reasonable" settlement "is not susceptible of a single mathematical equation yielding a particularized sum." *PaineWebber*, 171 F.R.D. at 130. Instead, "in any case there is a range of reasonableness with respect to a settlement." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972).

The Settlement Class Representatives submit that the Settlement is well within the range of reasonableness in light of the best possible recovery and all the attendant risks of litigation. In assessing whether a settlement is fair, reasonable and adequate, courts often

examine the "negotiating process by which the settlement was reached" to determine whether the settlement was the result of "arm's-length negotiations" between counsel "with the experience and ability. . .necessary [for] effective representation of the class's interests." *Weinberger*, 698 F.2d at 74; *In re Sterling Foster & Co. Sec. Litig.*, 238 F. Supp. 2d 480, 484 (E.D.N.Y. 2002) ("[a] strong presumption of fairness attaches to proposed settlements that have been negotiated at arm's-length").

The Settlement is presumptively fair because it is the product of informed arm's-length negotiations between Plaintiffs' Co-Lead Counsel and Defendants' Counsel. As detailed in the Joint Declaration, and discussed herein, counsel involved in this Litigation engaged in a lengthy and extensive private mediation, which was conducted before the Hon. Judge Eugene Lynch (Ret.), with knowledge of the strengths and weaknesses of their claims and defenses. *See* Joint Declaration, ¶¶ 27-32. The active involvement of an experienced and an independent mediator in the negotiation of the Settlement adds support to the presumption of reasonableness. *In re Independent Energy Holdings PLC Sec. Litig.*, No. 00 Civ. 6689, 2003 WL 22244676, at *4 (S.D.N.Y. Sept. 29, 2003) ("the fact that the Settlement was reached after exhaustive arm's length negotiations, with the assistance of a private mediator experienced in complex litigation is further proof that it is fair and reasonable").

Finally, qualified and experienced counsel for both sides, who are intimately familiar with all facets of this case, recommend final approval of the Settlement. Where, as here, "[t]he process by which the parties reached the Proposed Settlement was arm's length and hard fought by skilled advocates," the Settlement is deserving of the Court's

approval, *NASDAQ Market-Makers*, 187 F.R.D. at 474. Accordingly, Lead Plaintiffs and Plaintiffs' Co-Lead Counsel recommend that the Court approve the Settlement.

### IV.     THE PLAN OF ALLOCATION IS FAIR AND REASONABLE

A Plan of Allocation is fair, reasonable and adequate as long as it has a "reasonable, rational basis." *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 367 (S.D.N.Y. 2002). Because it is impossible in a large class to calculate each member's claim with mathematical precision, courts recognize that "the adequacy of an allocation plan turns on whether counsel has properly apprised itself of the merits of all claims, and whether the proposed apportionment is fair and reasonable in light of that information." *PaineWebber*, 171 F.R.D. at 133. For all of the reasons set forth herein and as detailed in the Joint Declaration, the Plan of Allocation is fair, reasonable and adequate, and should be approved. *See* Joint Declaration, ¶¶ 38-52.

### V.     CONCLUSION

For the foregoing reasons, the Settlement Class Representatives and Plaintiffs' Co-Lead Counsel respectfully request that the Court certify the Settlement Class and grant final approval of the Settlement and the Plan of Allocation.

Dated:  May 28, 2008                    Respectfully submitted,

**SPECTOR ROSEMAN & KODROFF, P.C.**
s/   Robert M. Roseman
Robert M. Roseman (RR-1103)
rroseman@srk-law.com
Jeffrey L. Kodroff
jkodroff@srk-law.com
David Felderman
dfelderman@srk-law.com
Daniel Mirarchi
dmirarchi@srk-law.com
Rachel E. Kopp

rkopp@srk-law.com
1818 Market Street, Suite 2500
Philadelphia, Pa. 19103
(215) 496-0300
*Liaison and Co-Lead Counsel for Plaintiffs*

**COHEN MILSTEIN HAUSFELD
  & TOLL P.L.L.C.**
Steven J. Toll (*pro hac vice*)
stolldc@cmht.com
Mark S. Willis (*pro hac vice*)
mwillis@cmht.com
Jason M. Leviton (*pro hac vice*)
jleviton@cmht.com
1100 New York Avenue, N.W.
West Tower, Suite 500
Washington, D.C. 20005
(202) 408-4600

**MILBERG LLP**
Barry A. Weprin (BW-8637)
bweprin@milberg.com
Paul J. Andrejkovics (PA-2320)
pandrejkovics@milberg.com
One Pennsylvania Plaza
New York, NY  10119-0165
(212) 594-5300

*Co-Lead Counsel for Plaintiffs*