UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

WAYNE WELMON, Individually and on Behalf of
all others similarly situated,

                    Plaintiff,

    vs.

CHICAGO BRIDGE & IRON CO. N.V.,
GERALD M. GLENN, ROBERT B. JORDAN, and
RICHARD E. GOODRICH,

                    Defendants.

---

Case No.  06-CV-01283 (JES)

ELECTRONICALLY FILED

---

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

**COHEN, MILSTEIN, HAUSFELD &
   TOLL, P.L.L.C.**
Steven J. Toll (admitted *pro hac vice*)
Mark S. Willis (admitted *pro hac vice*)
Jason M. Leviton (admitted *pro hac vice*)
1100 New York Avenue, N.W.
Suite 500, West Tower
Washington, D.C.  20005
Telephone:  (202) 408-4600
Facsimile:  (202) 408-4699

**MILBERG LLP**
Barry A. Weprin (BW-8637)
Paul J. Andrejkovics (PA-2320)
One Pennsylvania Plaza
New York, NY  10119-0165
Telephone:  (212) 594-5300
Facsimile:  (212) 868-1229

*Co-Lead Counsel For Lead Plaintiffs and
Proposed Settlement Class Representative Walter
J. Mundy*

**SPECTOR ROSEMAN & KODROFF, P.C.**
Robert M. Roseman (RR-1103)
Jeffrey L. Kodroff
David Felderman
Daniel J. Mirarchi
Rachel E. Kopp
1818 Market Street, 25th Floor
Philadelphia, PA  19103
Telephone:  (215) 496-0300
Facsimile:  (215) 496-6611

## <u>TABLE OF CONTENTS</u>

I.  PRELIMINARY STATEMENT ........................................................................2

II.  PROCEDURAL BACKGROUND AND SUMMARY .........................................4
     OF THE SETTLEMENT

ARGUMENT .........................................................................................................5

III.  PLAINTIFFS' CO-LEAD COUNSEL SHOULD BE AWARDED FEES FROM
      THE COMMON FUND CREATED AS A RESULT OF THE SETTLEMENT... 5

   A.  The Court Should Award Attorneys' Fees Based Upon a Reasonable Percentage
       of the Common Fund .......................................................................................5

       1.  The Requested Percentage And Lodestar Multiplier Are Reasonable............7

       2.  The Requested Fees Are Reasonable Under the *Goldberger* Criteria .......... 11

           a.  The Time and Labor Expended by Counsel ........................................... 11

           b.  The Risk of the Litigation...................................................................... 14

           c.  The Magnitude and Complexity of the Litigation ................................... 16

           d.  The Requested Fee in Relation to the Settlement ................................... 17

           e.  The Quality of the Representation ......................................................... 18

           f.  Public Policy Considerations................................................................. 20

   B.  Settlement Class Members' Favorable Reaction Confirms the........................21
       Reasonableness of the Requested Award

IV.  COUNSEL SHOULD BE REIMBURSED FOR THEIR REASONABLY
     INCURRED LITIGATION EXPENSES...............................................................21

V.  THE SETTLEMENT CLASS REPRESENTATIVES SHOULD BE
    REIMBURSED FOR THEIR REASONABLY INCURRED COSTS AND
    EXPENSES ...............................................................................................................23

VI.  CONCLUSION ...........................................................................................................24

i

## TABLE OF AUTHORITIES

### CASES

*In re Adelphia Committee Corp. Sec. Litigation*, No. 03 MDL 1529, 2006
WL 3378705 (S.D.N.Y. Nov. 16, 2006) .................................................................... 8

*In re American Bank Note Holographics*, 127 F. Supp. 2d 418 (S.D.N.Y.
2001) ........................................................................................................... 14, 21, 22

*Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215 (l0th Cir. 1996) ..................................16

*In re AOL Time Warner, Inc. Sec. and "ERISA" Litigation*, No. 02 Civ.
5575, 2006 WL 3057232 (S.D.N.Y. Oct. 25, 2006) ................................................... 8

*In re Apple Computer Sec. Litigation .*, No. C-84-20148 (A)-JW, 1991
U.S. Dist. LEXIS 15608 (N.D. Cal. Sept. 6, 1991) ....................................................16

*Arbor Hill Concerned Citizens Neighborhood Ass 'n v. County of Albany*,
522 F.3d 182 (2d Cir. N.Y. Apr. 24, 2007) ............................................................8, 9

*Backman v. Polaroid Corp.*, 910 F.2d 10 (1st Cir. 1990) ...............................................16

*In re BankAmerica Corp. Sec. Litigation*, 210 F.R.D. 694 (E.D. Mo. 2002) ..................24

*Bateman Eichler v. Berner*, 472 U.S. 299 (1985) ..........................................................21

*Becher v. Long Island Lighting Co.*, 64 F. Supp. 2d 174 (E.D.N.Y. 1999)...................... 7

*Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263 (2d Cir. 1979)......................16

*In re Blech Sec. Litigation*, No. 94 Civ. 7696 (RWS), 2002 WL 31720381
(S.D.N.Y. Dec. 4, 2002) ............................................................................................. 7

*Blue Cross & Blue Shield United v. Marshfield Clinic*, 152 F.3d 588 (7th
Cir. 1998)...................................................................................................................16

*In re Brown Co. Sec. Litigation*, 355 F. Supp. 574 (S.D.N.Y. 1973)..............................17

*In re Charter Communications Sec. Litigation*, MDL Dkt. No. 1506, 2005
WL 4045741 (E.D. Mo. June 30, 2005).....................................................................24

*In re Continental Ill. Sec. Litigation*, 962 F.2d 566 (7th Cir. 1992)................................14

*In re Crazy Eddie Sec. Litigation*, 824 F. Supp. 320 (E.D.N.Y. 1993) ........................... 7

*Detroit v. Grinnell Corp.*, 560 F.2d 1093 (2d Cir. NY 1977)............................................10

*Detroit v. Grinnell Corp. ("Grinnell II")*, 495 F.2d 448 (2d Cir. 1974)...........................14

*Edmunds v. United States*, 658 F. Supp. 1126 (D.S.C. 1987)...........................................18

*In re Fine Host Corp. Sec. Litigation*, No. 3:97-CV-2619, 2000 U.S. Dist.
    LEXIS 19367 (D. Conn. Nov. 8, 2000) .................................................................6, 9

*In re Generics Corp. Sec. Litigation*, No. 75 Civ. 6295, 1980 U.S. Dist.
    LEXIS 15730 (S.D.N.Y. Dec. 4, 1980) .......................................................................10

*Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43 (2d Cir. 2000).......................6, 11

*Harris v. Marhoefer*, 24 F.3d 16 (9th Cir. 1994) ..........................................................22

*In re Ikon Office Solutions, Inc. Sec. Litigation*, 194 F.R.D. 166 (E.D. Pa.
    2000) ...........................................................................................................................15

*Kurzweil v. Phillip Morris Co., Inc.*, No. 94 Civ. 2373 (MBM), 1999 WL
    1076105 (S.D.N.Y. Nov. 30, 1999) ........................................................................7, 9

*Lindy Brothers Builders, Inc. v. American Radiator & Standard Sanitary
    Corp.*, 487 F.2d 161 (3d Cir. 1973) .............................................................................8

*Luciano v. Olsten Corp.*, 109 F.3d 111 (2d Cir. 1997).....................................................9

*Maley v. Del Global Technologies Corp.*, 186 F. Supp. 2d 358 (S.D.N.Y.
    2002) .......................................................................................................................5, 20

*In re Managed Care Litigation*, MDL No. 1334, 2003 U.S. Dist. LEXIS
    27228 (S.D. Fla. Oct. 24, 2003)...................................................................................7

*Mathes v. Roberts*, 85 F.R.D. 710 (S.D.N.Y. 1980).......................................................16

*In re Medical X-Ray Film Antitrust Litigation*, 1998 U.S. Dist. LEXIS
    14888 (E.D.N.Y. 1997)............................................................................................7, 20

*Mills v. Electric Automobile-Lite Co.*, 396 U.S. 375 (1970)............................................5

*Miltland Raleigh-Durham v. Myers*, 840 F. Supp. 235 (S.D.N.Y. 1993).......................22

*Missouri v. Jenkins*, 491 U.S. 274 (1989).......................................................................10

*In re NASDAQ Market-Makers Antitrust Litigation*, 187 F.R.D. 465
    (S.D.N.Y. 1998)........................................................................................................9, 20

*In re Prudential Sec. Inc. Ltd. P'shps. Litigation*, 985 F. Supp. 410
(S.D.N.Y. 1997)..............................................................................8, 14

*Ressler v. Jacobson*, 149 F.R.D. 651 (M.D. Fla. 1992)...............................9, 18

*In re Rite Aid Corp. Securities Litigation*, 146 F. Supp. 2d 706 (E.D. Pa.
2001) ..................................................................................................18

*In re Rite Aid Corp. Sec. Litigation*, 362 F. Supp. 2d 587 (E.D. Pa. 2005)......................9

*In re Safety Components Int'l Inc. Sec. Litig.*, 166 F. Supp. 2d 72 (D.N.J.
2001) ...................................................................................................7

*Savoie v. Merchants Bank*, 166 F.3d 456 (2d Cir. 1999)...............................6, 9

*In re Shell Oil Refinery*, 155 F.R.D. 552 (E.D. La. 1993) .................................9

*In re Sumitomo Copper Litigation*, 74 F. Supp. 2d 393 (S.D.N.Y. 1999) .......................9

*In re Sumitomo Copper Litigation*, 189 F.R.D. 274 (S.D.N.Y. 1999)..........................14

*Susman v. Lincoln American Corp.*, 578 F. Supp. 1041 (N.D. Ill. 1984)......................15

*Teachers' Retirement System v. A.C.L.N*, No. 01-CV-11814, 2004 U.S.
Dist. LEXIS 8608 (S.D.N.Y. May 14, 2004) ................................................ 13, 20, 21

*Trans World Airlines, Inc. v. Hughes*, 312 F. Supp. 478 (S.D.N.Y. 1970),
*modified*, 449 F.2d 51 (2d Cir. 1971), *rev'd*, 409 U.S. 363 (1973)..........................16

*In re Union Carbide Corp. Consumer Prod. Bus. Sec. Litigation*, 724 F.
Supp. 160 (S.D.N.Y. 1989) ...........................................................6, 10, 20

*Van Gemert v. Boeing Co.*, 590 F.2d 433 (2d Cir. 1978) .................................. 5

*Van Vraken v. Atlantic Richfield Co.*, 901 F. Supp. 294 (N.D. Cal. 1995).......................9

*Varljen v. H.J. Meyers & Co.*, No. 97 Civ. 6742, 2000 U.S. Dist. LEXIS
16205 (S.D.N.Y. Nov. 8, 2000).................................................................23

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96 (2d Cir. 2005) ............................ 8

*Waters v. International Precious Metals Corp.*, 190 F.3d 1291 (11th Cir.
1999) ...................................................................................................7

*In re WorldCom Inc. Sec. Litigation*, 388  F. Supp. 2d 319 (S.D.N.Y. 2005) ........................................................................................................ 9

*In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litigation*, 364 F. Supp. 2d 980 (D. Minn. 2005)........................................................19, 24

## DOCKETED CASES

*Alidina v. Penton Media, Inc.*, 98 Civ. 8474 (JES) ........................................ 7

*In re Branca v. Paymentech, Inc.*, No. 3:97- CV-2507-L (N.D. Tex. Jan. 4, 2001) .......................................................................................................... 7

*In re Copley Pharmaceutical*, C.A. No. 94-11897-WGY (D. Mass Feb. 8, 1996) .......................................................................................................... 7

*In re Deutsche Telekom, AG, Sec. Litig.*, 00 CV 9475 (S.D.N.Y. June 14, 2007) .......................................................................................................... 8

*In re Edison Schools, Inc. Sec. Litigation*, Master File No. 02-CV-3692 (JES) (S.D.N.Y. June 28, 2007).......................................................................... 7

*In re Interpool, Inc. Sec. Litigation*, No. 3:04-cv-00321-SRC (D.N.J. Sept. 9, 2006).......................................................................................................... 7

*Roy v. Delias, Inc.*, 99 Civ. 3951 (JES) .......................................................... 7

*In re VoiceFlash Networks, Inc. Sec. Litig.*, 03-CV-80099 .............................. 7

## FEDERAL STATUTES

15 U.S.C. §78u-4(a)(4) ................................................................................23

Fed. R. Civ. P. 23(h) .................................................................................... 1

Plaintiffs' Co-Lead Counsel Spector Roseman & Kodroff, P.C. ("SRK"), Cohen, Milstein Hausfeld & Toll, P.L.L.C. ("CMHT") and Milberg LLP ("Milberg") (collectively "Plaintiffs' Co-Lead Counsel"), having achieved a significant recovery of $10.5 million and certain corporate governance reforms (the "Settlement") in this Action,[1] respectfully submit this memorandum of law in support of their motion, pursuant to Fed. R. Civ. P. 23(h), for an award of attorneys' fees in the amount of 30% of the Gross Settlement Fund. Plaintiffs' Co-Lead Counsel also seeks reimbursement of litigation expenses incurred on behalf of the Settlement Class in a combined amount of $259,694.89. Additionally, Lead Plaintiffs Fortis Investment Management N.A./S.A. ("Fortis") and Metzler Investment GmbH ("Metzler") and Walter J. Mundy ("Mundy") (collectively "Settlement Class Representatives") seek reimbursement of their reasonable costs and expenses (including lost wages) directly relating to their representation of the Settlement Class in the amount of $62,825. Although over 47,000 Notices were mailed to potential Settlement Class Members stating that Plaintiffs' Co-Lead Counsel would seek fees in an amount not to exceed 30% of the Gross Settlement Fund, reimbursement of approximately $300,000 in expenses, and up to $80,000 for reimbursement of expenses and costs by the proposed Settlement Class Representatives the proposed Settlement Class Representatives, not a single Settlement Class Member objected to these requests.

Detailed information about the history of the litigation and work performed by counsel is set forth in the Joint Declaration of Robert M. Roseman, Mark S. Willis, and

---

[1] Capitalized terms herein have the same meaning as set forth in the Stipulation and Agreement of Settlement dated as of January 22, 2008 ("Stipulation") previously filed with the Court and adopted in the Preliminary Order for Notice and Hearing in connection with Settlement Proceedings dated January 30, 2008 ("Preliminary Order").

Barry A. Weprin in Support of Plaintiffs' Motion for Final Approval of Settlement and Plan of Allocation of Settlement Proceeds and Plaintiffs' Motion for Award of Attorneys' Fees and Reimbursement of Expenses ("Joint Declaration") which is contemporaneously being filed with Plaintiffs' Memorandum in Support of Final Approval of Settlement and Plan of Allocation of Settlement Proceeds and the respective fee affidavits of each firm (attached as Exhibits B-D to the Joint Declaration). Additionally, each of the proposed Settlement Class Representatives have submitted a declaration detailing the amount of time they devoted to the prosecution of the litigation, their hourly rate based on their compensation at their place of employment, a description of the tasks that each undertook, and a list of out of pocket expenses they incurred (attached as Exhibits H-J to the Joint Declaration). For the reasons set forth below and in the accompanying papers, Plaintiffs' Co-Lead Counsel respectfully submit that the application for attorneys' fees and reimbursement of expenses is reasonable and should be granted in full.

## I.       PRELIMINARY STATEMENT

This Settlement represents a considerable recovery for a class consisting of all investors who purchased all persons who purchased the securities of Chicago Bridge & Iron N.V. ("CB&I") during the period March 9, 2005 and February 3, 2006, inclusive (the "Settlement Class"). The substantial monetary recovery obtained for the Settlement Class, and the corporate governance measures CB&I will implement, was achieved solely through the skill, work, tenacity, and effective advocacy of Plaintiffs' Co-Lead Counsel.

The prosecution and settlement of this litigation required extensive effort on the part of Plaintiffs' Co-Lead Counsel, particularly given the complexity of the legal and factual issues raised by the claims and the vigorous defense by Defendants and their

2

counsel.  Plaintiffs' Co-Lead Counsel gathered considerable resources and committed substantial amounts of time to the thorough research, investigation, and discovery of critical facts to meet the high pleading standards of the Private Securities Litigation Reform Act of 1995 ("PSLRA").  *See* Joint Declaration, ¶¶ 11-17.  Moreover, counsel devised a litigation plan designed to avoid duplication of effort.

Plaintiffs' Co-Lead Counsel represented the proposed Settlement Class Representatives and the Settlement Class on a purely contingent-fee basis, with no remuneration whatsoever having been made to Plaintiffs' Co-Lead Counsel to date for their services or for the litigation expenses they have incurred in connection with this lawsuit. Given the current status of the litigation, the complexity and amount of work involved, the skill and expertise required, and the risks counsel undertook, Plaintiffs' Co-Lead Counsel strongly believe that this case warrants an award of 30% of the Gross Settlement Fund and reimbursement of expenses in the amount of $259,694.89.  Indeed, federal courts in this District and throughout the nation, recognizing the risks and effort generally expended by counsel to obtain favorable results, have not hesitated to award one-third or greater fees in complicated securities fraud cases such as this.

Finally, the reaction of the Settlement Class overwhelmingly supports Plaintiffs' Co-Lead Counsel's fee request and reimbursement of expenses.  Over 47,000 Notices have been mailed to potential Settlement Class Members or their nominees and Publication Notice was published in English in the national and European editions of *The Wall Street Journal* and *Financial Times*, published in German in the *Frankfurter Allgemeine Zeitung* and *Berliner Zeitung*, and transmitted over the Global Media Circuit of *Business Wire*.  *See* Affidavit of Charlene Young Re: (A) Mailing of the Notice and

the Proof of Claim; and (B) Report on Requests for Exclusion Received ("Young Affidavit"), dated May 22, 2008, attached to the Joint Declaration as Exhibit F; *See* Affidavit of Paul J. Andrejkovics Re:  Publication of the Summary Notice of Pendency of Class Action, Proposed Settlement and Settlement Hearing, attached to the Joint Declaration as Exhibit G.  The Notice mailed to Settlement Class Members stated that Lead Counsel would seek a fee not to exceed 30% of the Gross Settlement Fund and reimbursement of expenses in the approximate amount of $300,000.  Notably, not a single Settlement Class Member objected to these requests.  *See* Joint Declaration, ¶ 36.

As discussed herein, as well as in the Final Approval Brief and the Joint Declaration, the requested fee is fair and reasonable, and is well within the range of awards in class actions in this Circuit and other courts nationwide.  Likewise, the expenses requested are reasonable in their amount and were necessarily incurred for the successful prosecution of this case.  Finally, the costs and expenses requested by the proposed Settlement Class Representatives directly related to their representation of the Settlement Class in the prosecution of this litigation are reasonable.

## II.    PROCEDURAL BACKGROUND AND SUMMARY OF THE SETTLEMENT

For a full presentation of the facts, procedural history of the case and the terms of the Settlement, the Court is respectfully referred to the accompanying Joint Declaration in support of final approval of the Settlement.

# ARGUMENT

### III.    PLAINTIFFS' CO-LEAD COUNSEL SHOULD BE AWARDED FEES FROM THE COMMON FUND CREATED AS A RESULT OF THE SETTLEMENT

Courts have long recognized that when, as in this case, a party maintains a suit that results in the creation of a fund for the benefit of a class, the costs of the litigation, including an award of reasonable attorneys' fees, should be recovered from the fund created by the litigation.  *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375 (1970).  *See also Van Gemert v. Boeing Co.*, 590 F.2d 433, 439-40 (2d Cir. 1978); *Maley v. Del Global Technologies Corp.*, 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002) (Second Circuit "recognizes that class counsel who create a settlement fund for the benefit of a class are entitled to be compensated for their services from that settlement fund").  The purpose of the common fund doctrine is to fairly and adequately compensate class counsel for services rendered and to prevent the unjust enrichment of persons who benefit from a lawsuit without shouldering its costs.  *Mills*, 396 U.S. at 392.  Accordingly, Plaintiffs' Co-Lead Counsel are entitled to an award of attorneys' fees and expenses from the Gross Settlement Fund.

### A.    The Court Should Award Attorneys' Fees Based Upon a Reasonable Percentage of the Common Fund

Courts traditionally have used two methods to calculate attorneys' fees in common fund cases: the percentage method, which awards attorneys' fees as a percentage of the common fund created for the benefit of the class; and the lodestar/multiplier or presumptively reasonable fee approach, which multiplies the number of hours expended by counsel by the hourly rate normally charged for similar work by attorneys of comparable skill and experience, and enhances the resulting lodestar figure by an

appropriate multiplier to reflect litigation risk, the complexity of the issues, the

contingent nature of the engagement, the skill of the attorneys, and other factors. *Savoie*

*v. Merchants Bank*, 166 F.3d 456, 460 (2d Cir. 1999). The Second Circuit has held that

both the percentage and lodestar/multiplier methods are available to district courts

in awarding attorneys' fees in common fund cases. *Goldberger v. Integrated Resources,*

*Inc.*, 209 F.3d 43, 50 (2d Cir. 2000).

   Under either the percentage or lodestar/multiplier method, the fees awarded in

common fund cases must be "reasonable" under the circumstances. *Goldberger*, 209

F.3d at 47; *In re Fine Host Corp. Sec. Litig.*, No. 3:97-CV-2619, 2000 U.S. Dist. LEXIS

19367, at *12 (D. Conn. Nov. 8, 2000). The Second Circuit has instructed that in the

exercise of their discretion:

> [D]istrict courts should continue to be guided by the traditional
> criteria in determining a reasonable common fund fee, including:
> "(1) the time and labor expended by counsel; (2) the magnitude
> and complexities of the litigation; (3) the risk of the litigation ... ;
> (4) the quality of representation; (5) the requested fee in relation to
> the settlement; and (6) public policy considerations.

*Goldberger*, 209 F.3d at 50 (quoting *In re Union Carbide Corp. Consumer Prod. Bus.*

*Sec. Litig.*, 724 F. Supp. 160, 163 (S.D.N.Y. 1989). As the *Union Carbide* court

observed, in applying these criteria, "a Court essentially makes no more than a qualitative

assessment of a fair legal fee under all the circumstances of the case." *In re Union*

*Carbide*, 724 F. Supp. 160 at 166.

   For the reasons set forth below, Plaintiffs' Co-Lead Counsel submits that their

request for an award of 30% of the Gross Settlement is reasonable under applicable

standards.

1.      **The Requested Percentage And Lodestar Multiplier Are Reasonable**

Plaintiffs' Co-Lead Counsel seeks an award of 30% of the Gross Settlement Fund.
This is entirely consistent with - if not below – precedent in this Circuit.  *See, e.g., In re Edison Schools, Inc. Sec. Litig.*, Master File No. 02-CV-3692 (JES), slip op. at 8 (S.D.N.Y. June 28, 2007) (Sprizzo) (awarding fee equal to 33 1/3%, plus expenses), attached hereto as Exhibit A; *Roy v. Delias, Inc.*, 99 Civ. 3951 (JES), slip op. at 2 (S.D.N.Y. Apr. 21, 2004) (Sprizzo) (awarding fee equal to 33 1/3%), attached hereto as Exhibit B; *Alidina v. Penton Media, Inc.*, 98 Civ. 8474 (JES), slip op. at 8 (S.D.N.Y. July 21, 2004) (Sprizzo) (fee award equals 30% of recovery, plus reimbursement of expenses), attached hereto as Exhibit C; *In re Blech Sec. Litig.*, No. 94 Civ. 7696 (RWS), 2002 WL 31720381, at *1 (S.D.N.Y. Dec. 4, 2002) (awarding 33.3%).[2]  Likewise, courts in other circuits around the country commonly award attorneys' fees equal to or higher than the compensation requested here.[3]

Applying the lodestar cross-check method further demonstrates that the requested fee is reasonable.  The logical starting point for any lodestar analysis is the calculation of

---

[2] *See also Kurzweil v. Phillip Morris Co., Inc.*, No. 94 Civ. 2373 (MBM), 1999 WL 1076105, at *1 (S.D.N.Y. Nov. 30, 1999) *(*awarding $37.1 million, 30% of $123 million settlement*); Becher v. Long Island Lighting Co.*, 64 F. Supp. 2d 174, 182 (E.D.N.Y. 1999) *(*one-third fee, plus expenses, is "well within the range accepted by courts in this circuit"*); In re Medical X-Ray Film Antitrust Litig.*, 1998 U.S. Dist. LEXIS 14888, at *7 (E.D.N.Y. 1997) (awarding 33.3% of $39.36 million after concluding such an award is "well within the range accepted by courts in this circuit"); *In re Crazy Eddie Sec. Litig.*, 824 F. Supp. 320, 326-27 (E.D.N.Y. 1993) (fees of 33.8% of $42 million settlement fund are reasonable and within range awarded by courts in this circuit).

[3] *See, e.g., In re VoiceFlash Networks, Inc. Sec. Litig.*, 03-CV-80099, slip op. at 6 (S.D. Fla. Mar. 30, 2007) (fee awarded 33.3% of recovery, plus expenses), attached hereto as Exhibit D; *In re Interpool, Inc. Sec. Litig.*, No. 3:04-cv-00321-SRC, slip op. at 2 (D.N.J. Sept. 9, 2006) (fee awarded 33.3% of recovery, plus expenses), attached hereto as Exhibit E; *In re Managed Care Litig.*, MDL No. 1334, 2003 U.S. Dist. LEXIS 27228, at *6 (S.D. Fla. Oct. 24, 2003) (awarding 35.5%); *In re Safety Components Int'l Inc. Sec. Litig.*, 166 F. Supp. 2d 72, 109 (D.N.J. 2001) (33.3%); *In re Branca v. Paymentech, Inc.*, No. 3:97-CV-2507-L, slip op. at 6 (N.D. Tex. Jan. 4, 2001) (awarding 33.3%), attached hereto as Exhibit F; *Waters v. International Precious Metals Corp.*, 190 F.3d 1291 (11th Cir. 1999) (awarding 33.3%) *In re Copley Pharmaceutical*, C.A. No. 94-11897-WGY, slip op. at 6 (D. Mass Feb. 8, 1996) (awarding 33.3%), attached hereto as Exhibit G.

the lodestar or the presumptively reasonable fee which is comprised of the amount of hours devoted by counsel multiplied by the normal, non-contingent hourly billing rate of counsel, which is what a reasonable, paying client would be willing to pay considering the various factors that bear upon the representation. *Arbor Hill Concerned Citizens Neighborhood Ass 'n v. County of Albany*, 522 F.3d 182, 190 (2d Cir. 2008); *see also In re Prudential Sec. Inc. Ltd. P'shps. Litig.*, 985 F. Supp. 410, 414 (S.D.N.Y. 1997). The courts then adjust that lodestar figure (by applying a multiplier) to reflect such factors as the risk and contingent nature of the litigation, the result obtained and the quality of the attorneys' work. *See, e.g., Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.*, 487 F.2d 161, 167-69 (3d Cir. 1973).

Plaintiffs' Co-Lead Counsel and firms working at their behest collectively expended more than 6,100 hours of professional time in the prosecution of this litigation.[4] The total lodestar of Plaintiffs' Co-Lead Counsel and the firms working at their behest, derived by multiplying these hours by each firm's current hourly rates of attorneys, paralegals, and other support staff, amounts to $2,607,612.50, such that the requested 30% fee results in a multiplier of only 1.21 and indeed appears to be at the low end of the customary range. *See, e.g., In re AOL Time Warner, Inc. Sec. and "ERISA" Litig.*, No. 02 cv 5575, 2006 WL 3057232, at *1 (S.D.N.Y. Oct. 25, 2006) (multiplier of 3.69 times adjusted lodestar of $39,973,056.76); *In re Adelphia Comm. Corp. Sec. Litig.*, No. 03 MDL 1529, 2006 WL 3378705, at *2-3 (S.D.N.Y. Nov. 16, 2006) (multiplier of 2.89 on lodestar of $33,686,468); *In re Deutsche Telekom, AG, Sec. Litig.*, 00 CV 9475, slip op. at 7-8 (S.D.N.Y. June 9, 2005) (awarding a multiplier of 3.96 on lodestar of $8,476,724) attached hereto as Exhibit H; *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 123

---

[4] The work Plaintiffs' Co-Lead Counsel has performed is set out at length in the Joint Declaration.

(2d Cir. 2005) (approving multiplier of 3.5 times lodestar of $62,940,045.84); *In re WorldCom Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 354 (S.D.N.Y. 2005) (multiplier of 4 on lodestar of $83,183,238.70); *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393,399 (S.D.N.Y. 1999) (awarding 2.5 multiplier in complex commodities fraud litigation producing $134.6 million dollar settlement for class and noting that "[i]n recent years multipliers of between 3 and 4.5 have been common in federal securities cases"); *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 489 (S.D.N.Y. 1998) (multiplier of 3.97 on lodestar of $36,191,751, noting multipliers between 3 and 4.5 are common); *Kurzweil v. Phillip Morris Co., Inc.*, No. 94 Civ. 2373 (MBM), 1999 WL 1076105 at *3 (S.D.N.Y. Nov. 30, 1999), (noting that multipliers between 3 and 4.5 are common in federal securities cases).[5]

The Second Circuit has explained that the hourly rates to be applied in calculating the lodestar are "what a reasonable, paying client would be willing to pay." *Arbor Hill Concerned Citizens Neighborhood Ass'n*, 522 F.3d at 190. Pursuant to the "forum rule," reasonable hourly rates are those normally charged for similar work by attorneys of comparable skill and experience in the district where the court sits. *Id.* at 191; *see also Savoie*, 166 F.3d at 460; *see also Fine Host*, 2000 U.S. Dist. LEXIS 19367, at *12; *Luciano v. Olsten Corp.*, 109 F.3d 111, 115-16 (2d Cir. 1997) ("[t]he lodestar figure should be in line with those [rates] 'prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation'"); *NASDAQ Market-*

---

[5] Other courts throughout the country also commonly award attorneys' fees that result in multipliers greater. than the multiplier here. *See, e.g., In re Rite Aid Corp. Sec. Litig.*, 362 F. Supp. 2d 587, 589 (E.D. Pa. 2005) (multiplier of 6.96 on lodestar of 4,549,824.75); *Van Vraken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 298-99 (N.D. Cal. 1995) (multiplier of 3.6 on lodestar of $10,692,067.25); *In re Shell Oil Refinery*, 155 F.R.D. 552, 573-74 (E.D. La. 1993) (multiplier of 3.25 on lodestar of $9,796,500); *see also Ressler v. Jacobson*, 149 F.R.D. 651 at 653 (M.D. Fla. 1992) (observing that "courts in common fund cases regularly award multiples of 2 to 3 times lodestar in attorney's fees to reflect the quality of the work performed and the risks undertaken").

*Makers*, 187 F.R.D. 465 at 489 (appropriate rate in performing lodestar analysis is "the rate 'normally charged for similar work by attorneys of like skill in the area,' taking into account factors such as the experience of the attorney performing the work and the type of work performed") (quoting *Detroit v. Grinnell Corp.*, 560 F.2d 1093, 1098 (2d Cir. NY 1977)).[6]  The best indicators of the "market rate" for plaintiffs' securities class actions counsel are the rates charged by New York, Philadelphia and Washington, D.C. firms, including those that defend class actions on a regular basis.  The rates of counsel here are in-line with the general rates of firms practicing on both sides of the aisle of securities class action litigation.

Moreover, courts in this District and around the country have repeatedly found rates similar to those charged by counsel here to be reasonable given, *inter alia*, the complex nature of securities class action work.  Thus, both a market check and substantial precedent confirm that the rates charged by Plaintiffs' Co-Lead Counsel and firms working at their behest to calculate their lodestar are reasonable.

Thus, the attorneys' fee requested by Plaintiffs' Co-Lead Counsel is well within the range of what courts in this Circuit and throughout the country commonly award in complex class actions such as this one.  The requested fee is, therefore, manifestly reasonable, whether calculated as a percentage of the fund or in relation to counsel's lodestar, and warrants the Court's approval.

---

[6] The Supreme Court and Second Circuit have both approved the use of current rates in the lodestar calculation to "compensate for the delay in receiving compensation, inflationary losses, and the loss of interest." *Union Carbide*, 724 F. Supp. at 163 (quoting *In re Generics Corp. Sec. Litig.*, No. 75 Civ. 6295, 1980 U.S. Dist. LEXIS 15730, at *6 (S.D.N.Y. Dec. 4, 1980); *Missouri v. Jenkins*, 491 U.S. 274, 284 (1989).

2.    **The Requested Fees Are Reasonable Under the *Goldberger* Criteria**

As explained previously, the Second Circuit has stated that whether the Court uses the percentage method or the lodestar approach, it should continue to consider the following traditional criteria: (1) the time and labor expended by counsel; (2) the risks of the litigation; (3) the magnitude and complexity of the litigation; (4) the requested fee in relation to the settlement; (5) the quality of representation; and (6) public policy considerations. *Goldberger*, 209 F.3d at 50. As discussed below, an analysis of these factors demonstrates that the requested fee is reasonable.

a.    **The Time and Labor Expended by Counsel**

The hours expended by counsel, which yielded the $10.5 million settlement and certain corporate governance reforms are plainly reasonable in view of the work performed in this complex securities action. As described in greater detail in the Joint Declaration, Plaintiffs' Co-Lead Counsel, and the other firms working at their behest, have spent over 6,100 hours working on this case, which represents a total combined lodestar of $2,607,612.50. *See* Joint Declaration, ¶¶ 6-7, 57. Plaintiffs' Co-Lead Counsel has also made every effort to litigate in the most efficient and economical manner.

By the time the Settlement was reached, notwithstanding the stay of discovery which was in place, Plaintiffs' Co-Lead Counsel completed a significant amount of work for the prosecution of the proposed Settlement Class Representatives' class claims including, but not limited to: an extensive investigation of the issues involved in this case, both before and after filing the Complaint; researching and briefing oppositions to Defendants' motions to dismiss the Complaint; preparing subpoenas to third parties;

11

consulting with an expert concerning potential damages and the market efficiency of

CB&I's common stock; and responding to multiple sets of discovery requests from

Defendants addressed to the proposed Settlement Class Representatives. *See* Joint

Declaration, ¶¶ 11-19.

Additionally, Plaintiffs' Co-Lead Counsel devoted a substantial amount of time

with respect to class certification including working with their market efficiency expert,

drafting both the Motion for Class Certification and Memorandum in Support Thereof

and the Reply brief, defending their clients at depositions, and arguing the Motion in

Court. The proposed Settlement Class Representatives at the time of the settlement were

also in the process of beginning to prepare for the Court ordered evidentiary hearing with

respect to the motion for class certification. *Id.*, at ¶¶ 20-26.

Plaintiffs' Co-Lead Counsel also devoted significant time to negotiating and

documenting the Settlement. *Id.*, at ¶¶ 27-32. Prior to the mediation before the

Honorable Eugene F. Lynch (Ret.), Plaintiffs' Counsel prepared a detailed mediation

statement with the assistance of their damages consultant. The mediation, which took

place on October 24, 2007 in San Francisco, did not resolve the litigation. It wasn't until

three weeks later, after Judge Lynch issued a proposal for a settlement for $10.5 million

in cash, plus corporate governance reforms, with confirmatory discovery, and following

several conversations with Defendants' counsel, an agreement was reached and the

parties entered into a Memorandum of Understanding.

As part of the agreement, Plaintiffs' Co-Lead Counsel conducted confirmatory

discovery to substantiate the Settlement Class' claims. *Id.*, at ¶ 32. Plaintiffs, after

negotiating the scope of the discovery review and analysis of documents produced by

Defendants, took the depositions of Alan Black, Controller, Financial Operations at CB&I and Tommy Rhodes, the alleged whistleblower, and conducted extensive interviews of Defendant Glenn, the Company's Chairman, CEO and President and Defendant Jordan, the Company's former Executive Vice President and Chief Operating Officer. The information obtained from the documents, depositions, and interviews allowed Plaintiffs' Co-Lead Counsel to confirm the strengths and weaknesses of their case and to opine that the Settlement is fair, reasonable and adequate for the Settlement Class.

Furthermore, Plaintiffs' Co-Lead Counsel operated very efficiently in litigating this Action. As much as possible, Plaintiffs' Co-Lead Counsel avoided unnecessary duplicative or overlapping work. *See* Joint Declaration, ¶¶ 37. Plaintiffs' Co-Lead Counsel performed the various tasks necessary to advance the litigation in a more efficient manner than could have been expected of counsel with a lesser degree of specialization in this highly complex field. Plaintiffs' Co-Lead Counsel also respectfully submits that their experience and commitment to the litigation allowed them to negotiate this superior Settlement notwithstanding the presence of sophisticated adversaries. *See Teachers' Ret. Sys. v. A.C.L.N*, No. 01-CV-11814, 2004 U.S. Dist. LEXIS 8608, at *20 (S.D.N.Y. May 14, 2004) (noting that skill and prior experience of counsel in specialized field of shareholder securities litigation is relevant in determining fair compensation).

Accordingly, the significant amount of time and effort devoted to this case by Plaintiffs' Co-Lead Counsel and firms working at their behest, their efficient management of the litigation and the propriety of the rates underlying their lodestar confirm that the fee request here is reasonable.

**b.**     **The Risk of the Litigation**

The reasonableness of the requested fee is also supported by an evaluation of the risks undertaken by Plaintiffs' Co-Lead Counsel in prosecuting this Action.  The Second Circuit has recognized that "despite the most vigorous and competent of efforts, success is never guaranteed."  *Detroit v. Grinnell Corp.* ("*Grinnell II*"), 495 F.2d 448 (2d Cir. 1974).  Securities class actions, such as this, are "notably difficult and notoriously uncertain."  *In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 281 (S.D.N.Y. 1999).

Plaintiffs' Co-Lead Counsel undertook this Action on a wholly contingent basis, investing substantial amounts of time and money to prosecute this litigation without a guarantee of compensation or even the recovery of out-of-pocket expenses.  Unlike counsel for Defendants, who are paid substantial hourly rates and reimbursed for their expenses on a regular basis, Plaintiffs' Co-Lead Counsel and the firms working at their behest have not been compensated for any time or expenses since this case began.  Courts in the Second Circuit have recognized that the risk associated with a case undertaken on a contingent fee basis is an important factor in determining an appropriate fee award.  *See, e.g.*, *In re Am. Bank Note Holographics*, 127 F. Supp. 2d 418, 432-33 (S.D.N.Y. 2001) (concluding it is "appropriate to take this [contingent-fee] risk into account in determining the appropriate fee to award"); *In re Prudential*, 985 F. Supp. at 417 ("'Numerous courts have recognized that the attorney's contingent fee risk is an important factor in determining the fee award").  This risk encompasses not just the risk of non payment, but also the risk of underpayment.  *See In re Continental Ill. Sec. Litig.*, 962 F.2d 566, 569-70 (7th Cir. 1992) (reversing district court's fee award because it failed to account for, among other things, risk of underpayment to counsel).  Even

assuming that some recovery is likely in a particular case, there is no guarantee that the recovery will be enough to fully compensate Plaintiffs' Co-Lead Counsel and the firms working at their behest for their time and expenses. *Id.*

Here, substantial risks and uncertainties existed in this case, which made it far from certain that a recovery, let alone a substantial settlement of $10.5 million and the implementation of corporate governance measures, would ultimately be obtained for the Settlement Class. From the outset, this action was an especially difficult and highly uncertain securities case, with no assurance that Plaintiffs' Co-Lead Counsel and the firms working at their behest would ever see any compensation for the substantial time and resources expended on behalf of the Settlement Class. For example:

(1) Courts have recognized that "securities actions have become more difficult from a plaintiffs perspective in the wake of the PSLRA." *In re Ikon Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000);

(2) it was equally unclear whether this case would have been certified as a class action, or whether class certification would have been maintained through trial;

(3) the Court could have granted summary judgment in Defendants' favor and affirmed on appeal;

(4) an adverse judgment could have been entered against plaintiffs following trial, *Susman v. Lincoln American Corp.*, 578 F. Supp. 1041 (N.D. Ill. 1984), or judgment as a matter of law could have been entered for Defendants after the class' case-in-chief was presented;

(5) even if the plaintiffs succeeded at trial, judgment may have been overturned on appeal or on judgment notwithstanding the verdict;[7] and

(6) success in proving liability could have been followed by a rejection of class plaintiffs' damages case, *see Blue Cross & Blue Shield United v. Marshfield Clinic*, 152 F.3d 588 (7th Cir. 1998).

These risks are reflected in the fee arrangement negotiated by the parties at the outset of the litigation. Plaintiffs' Co-Lead Counsel and the firms working at their behest have received no compensation during the course of this litigation and have committed significant resources of both time and money to the vigorous and successful prosecution of this litigation for the benefit of the Settlement Class. The risks undertaken by Plaintiffs' Co-Lead Counsel and the firms working at their behest in commencing this action strongly favor approval of the requested percentage.

### c. The Magnitude and Complexity of the Litigation

Shareholder class actions are notoriously complex and difficult to prove. *See Mathes v. Roberts*, 85 F.R.D. 710, 713-14 (S.D.N.Y. 1980). This case is no different, involving complex issues of fact and law, including, *inter alia*: whether the statements made by Defendants were false, material or otherwise actionable under securities laws; how to determine the appropriate economic model for determining the amount by which

---

[7] *See, e.g., Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215 (l0th Cir. 1996) (Tenth Circuit overturned securities fraud class action jury verdict for plaintiffs in case filed in 1973 and tried in 1988 on the basis of 1994 Supreme Court opinion); *In re Apple Computer Sec. Litig .*, No. C-84-20148 (A)-JW, 1991 U.S. Dist. LEXIS 15608 (N.D. Cal. Sept. 6, 1991) (verdict against two individual defendants, but court vacated judgment on motion for judgment notwithstanding the verdict); *Backman v. Polaroid Corp.*, 910 F.2d 10 (1st Cir. 1990) (where the class won a substantial jury verdict and motion for judgment not withstanding the verdict was denied, on appeal the judgment was reversed and the case was dismissed - after 11 years of litigation); *Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263 (2d Cir. 1979) (multimillion dollar judgment reversed after lengthy trial); *Trans World Airlines, Inc. v. Hughes*, 312 F. Supp. 478 (S.D.N.Y. 1970) (judgment for $145 million overturned after years of litigation and appeals), *modified*, 449 F.2d 51 (2d Cir. 1971), *rev'd*, 409 U.S. 363 (1973).

CB&I stock was allegedly artificially inflated; the amount by which CB&I stock was allegedly artificially inflated; the extent to which external factors, such as general market conditions, influenced the trading price of CB&I stock; and the extent to which the various matters that the proposed Settlement Class Representatives alleged were materially false and misleading influenced the trading price of CB&I stock.  The difficulties and complexities of issues relating to scienter and loss causation also posed considerable challenges in this case.

Further, this Action was vigorously contested by Defendants who were represented by attorneys from two nationally renowned law firms – Wilmer, Cutler, Pickering, Hale & Dorr LLP and LeBoeuf, Lamb, Green & MacRae (n/k/a Dewey & LeBoeuf LLP).  *See In re Brown Co. Sec. Litig.*, 355 F. Supp. 574, 592-93 (S.D.N.Y. 1973) (standing of opposing counsel underscores complexity of litigation and challenges faced by class counsel).

Accordingly, the magnitude and complexity of this securities class action supports the conclusion that the requested fee is reasonable and fair.

> **d.      The Requested Fee in Relation to the Settlement**

As discussed above, the proposed fee represents 30% of the Gross Settlement Fund, well within the range of fees awarded by courts in this Circuit and other circuits in securities class actions.  Thus, this factor weighs heavily in favor of the reasonableness of the requested fee.

In addition, the $10.5 million cash portion of the Settlement represents nearly 10% of the class' best-case total estimated damages of $114.9 million submitted to Judge Lynch during mediation.  Recent published data by Cornerstone Research which finds

that the median settlement for all §10(b) cases as a percentage of estimated damages for

the period 1996-2006 is 3.6% and 2.9% for 2007. *See* Joint Declaration, ¶ 5. *See also*

*Rite Aid Corp. Securities Litigation*, 146 F. Supp. 2d 706 at 715 (E.D. Pa. 2001) (noting

that, since 1995, class action settlements typically recovered "between 5.5% and 6.2% of

the class members' estimated losses"). *See id.* Similarly, if one focuses on all securities

cases (including the easier to prove cases under §11 and §12) with estimated total

damages in the range of $50-$125 million, the median settlement amount for all such

cases for the period 1996-2006 is only 5.0%, and 4.7% for 2007. *Id.* Furthermore,

according to Cornerstone Research, the $10.5 million recovery here is significantly

higher than the value of the median settlement ($6.9 million) in class actions reported

during the period 1997-2006, and slightly higher than the value of the median settlement

($9.0 million) for 2007. *Id.* Moreover, if one were to view this recovery against

Defendants' damages estimate, the percentage of recovery would increase substantially.

Thus, the superior Settlement reached here further warrants the Court's approval

of the requested fee.

### e.    The Quality of the Representation

The quality of the representation and the standing of Plaintiffs' Co-Lead Counsel

are important factors that also support the reasonableness of the requested fee. *See*

*Ressler*, 149 F.R.D. at 654. As in *Edmunds v. United States*, 658 F. Supp. 1126, 1137

(D.S.C. 1987), the court stated "prosecution and management of a complex national class

action requires unique legal skills and abilities." Such skills were certainly called upon

here. From the very beginning, Plaintiffs' Co-Lead Counsel fought strenuously to obtain

the maximum recovery for the Settlement Class. This case required a determined

investigation and the skill to respond to a host of legal and factual defenses raised by Defendants. As a result, Plaintiffs' Co-Lead Counsel's determined and sustained effort in moving this litigation forward is ultimately reflected in the outcome.

The substantial recovery obtained for the Settlement Class is the direct result of the significant efforts of highly skilled and specialized attorneys who possess substantial experience in the prosecution of complex securities class actions. Plaintiffs' Co-Lead Counsel demonstrated that, notwithstanding the barriers erected by the PSLRA's pleading standards and Defendants' repeated efforts to dismiss the proposed Settlement Class Representative's claims, they could develop evidence to support a strong and convincing case. *See,* Joint Declaration, ¶¶ 6, 10-32.

Despite entering settlement negotiations, Plaintiffs' Co-Lead Counsel demonstrated a willingness to continue to litigate rather than accept a settlement that was not in the best interests of the Settlement Class. As a result, Plaintiffs' Co-Lead Counsel persisted until they achieved an amount that they thought was in the best interests of the Settlement Class. Based upon Plaintiffs' Co-Lead Counsel's diligent and extensive efforts on behalf of the Settlement Class and their skill and reputations, Plaintiffs' Co-Lead Counsel was able to negotiate a very favorable result for the Settlement Class under extremely difficult circumstances. *See, e.g.*, *In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*, 364 F. Supp. 2d 980, 995 (D. Minn. 2005) (lead plaintiffs faced numerous hurdles in achieving a successful result, including defendants' motion to dismiss, defenses posed by defendants, and the lack of a governmental investigation to provide meaningful assistance).

Courts have repeatedly recognized that the quality of the opposition faced by plaintiffs' counsel should be taken into consideration in assessing the quality of the plaintiffs' counsel's performance.[8]  Plaintiffs were opposed in this litigation by very skilled and highly respected counsel from two major law firms, which are two of the most prestigious law firms in the country with well-deserved reputations for vigorous advocacy in the defense of complex civil cases such as this.  Consequently, Defendants, through their counsel, zealously fought the proposed Settlement Class Representatives' class claims at every turn.  They filed motions to dismiss, aggressively pursued class certification discovery from the proposed Settlement Class Representatives, opposed plaintiffs' motion for class certification, and were fully prepared to continue to litigate rather than settle for an unreasonably high amount.  *See* Joint Declaration, ¶ 14-32. Notwithstanding the formidable opposition, Plaintiffs' Co-Lead Counsel were able to develop their case so as to settle the litigation on terms highly favorable to the Settlement Class.

> **f.    Public Policy Considerations**

Public policy considerations also support the requested fee in this case.  As the *Union Carbide* court held:

> The award of attorneys' fees in complex securities class action litigation is
> informed by the public policy that individuals damaged by violations of
> the federal securities laws should have reasonable access to counsel with

---

[8] *See, e.g., Teachers' Ret. Sys.*, 2004 U.S. Dist. LEXIS 8608, at *20 ("The quality of opposing counsel is also relevant in evaluating the quality of services rendered by Plaintiffs' counsel."); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 373 (S.D.N.Y. 2002) (noting that one factor supporting a 33 1/3 % fee award was that defendants were represented by five law firms, including several "nationally prominent" firms); *NASDAQ Market-Makers*, 187 F.R.D. at 488 ("The quality of opposing counsel is also significant in considering the quality of services rendered by Plaintiffs' Counsel, as measured by the result achieved."); *Medical X-Ray*, 1998 U.S. Dist. LEXIS 14888, at *23 (among factors supporting 33% award of attorneys' fees was that "Plaintiffs' Counsel confronted defense counsel from highly respected law firms that raised several challenges to the merits of this case").

the ability and experience necessary to analyze and litigate complex cases. Enforcement of the federal securities laws should be encouraged in order to carry out the statutory purpose of protecting investors and assuring compliance. *See Bateman Eichler v. Berner*, 472 U.S. 299, 86 L. Ed. 2d 215, 105 S. Ct. 2622 (1985). A large segment of the public might be denied a remedy for violations of the securities laws if contingent fees awarded by the courts did not fairly compensate counsel for the services provided and the risks undertaken. These policies further support the award of a multiplier of counsel's lodestar fee.

724 F. Supp. at 169. An award of the fees requested herein would be fully consistent with these important public policy considerations.

> **B.      Settlement Class Members' Favorable Reaction Confirms the Reasonableness of the Requested Award**

The Settlement Class's reaction to the Settlement is overwhelmingly positive. The Notice, which was mailed to more than 47,000 potential Settlement Class Members or their nominees, sets forth Plaintiffs' Co-Lead Counsel's intent to request an award of attorneys' fees not to exceed 30% of the Gross Settlement Fund and reimbursement of expenses in the approximate amount of $300,000. The Notice also informs Settlement Class Members of their right to object to this fee application by May 8, 2008. The deadline for submitting objections has now passed, and not a single objection was received.[9] Thus, no member of the Settlement Class has objected to Plaintiffs' Co-Lead Counsel's fee request or for their reimbursement of expenses.

## IV.      COUNSEL SHOULD BE REIMBURSED FOR THEIR REASONABLY INCURRED LITIGATION EXPENSES

It is well established that counsel who create a common fund are entitled to the reimbursement of expenses that they advanced for the class. *See, e.g.*, *Teachers' Ret. Sys.*, 2004 U.S. Dist. LEXIS 8608, at * 17 (citations omitted); *Am. Bank Note*

---

[9] There was a lone opt out filed by John L. Brottem III. According to the Brottem opt-out, he only purchased 300 shares of CB&I common stock on November, 7, 2005, representing an extremely small fraction of the Class

*Holographics*, 127 F. Supp. 2d at 430 ("Attorneys who create a common fund to be shared by a class are entitled to an award of fees and expenses from that fund as compensation for their work"). Particular costs are compensable if they are of the type normally billed by attorneys to paying clients. *See, e.g., Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994); *Miltland Raleigh-Durham v. Myers*, 840 F. Supp. 235, 239 (S.D.N.Y. 1993).

As reflected in the Fee Affidavits, counsel for the Class here advanced $259,694.89 in expenses in connection with this Action. To support this, Lead Counsel contributed to a common litigation fund ("Litigation Fund") maintained by CMHT. The expenses paid through the Litigation Fund are of the type that law firms typically bill to their clients, including copying costs, legal record costs, financial reports and data retrieval costs, telephone and fax charges, transcript costs, expert and consulting fees, travel charges, mediator fees, and settlement administration and notice. Payments from the Litigation Fund to vendors for these services include:

| VENDOR | AMOUNT |
|---|---|
| Document Technologies | $ 174.95 |
| JAMS, Inc.<br>  (Mediation services) | $ 4,025.00 |
| LegaLink – a Merrill Corporation<br>  (Deposition transcripts) | $ 1,433.03 |
| LegaLink, Inc.<br>  (Deposition transcripts) | $ 1,500.79 |
| Word For Word Reporting LLC<br>  (Deposition transcripts) | $   524.00 |
| **TOTAL** | $ 7,657.77 |

Lead Counsel also retained an expert to proffer opinions on, *inter alia*, market efficiency and damages.  The charges of that expert include fees for reviewing materials in anticipation of rendering an opinion and the preparation of an expert report:

| EXPERT | AMOUNT |
|---|---|
| CBIZ Valuation Group, LLC<br>  (Scott D. Hakala, Ph.D, CFA) | $ 12,781.16 |
| **TOTAL** | $ 12,781.16 |

Moreover, Lead Counsel notes that the expenses for which they seek reimbursement amount to less than the maximum expense figure of $300,000 referred to in the Notice, to which no objection was filed.  Accordingly, Co-Lead Counsel's request for reimbursement of these expenses should be granted.

## V.    THE SETTLEMENT CLASS REPRESENTATIVES SHOULD BE REIMBURSED FOR THEIR REASONABLY INCURRED COSTS AND EXPENSES

Under the PSLRA, the Court may award "reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of a class."  15 U.S.C. §78u-4(a)(4).  Courts have noted that it is important to reimburse time and expenses of lead plaintiffs because doing so "encourages participation of plaintiffs in the active supervision of their counsel." *Varljen v. H.J. Meyers & Co.,* No. 97 Civ. 6742, 2000 U.S. Dist. LEXIS 16205 at *14 n.2 (S.D.N.Y. Nov. 8, 2000).

The Notice states that "Plaintiffs' Co-Lead Counsel are also moving the Court for an award of payments to the Settlement Class Representatives for an amount not to exceed $80,000 in total for reimbursement of their reasonable costs and expenses (including lost wages) directly relating to their representation of the Settlement Class."

As shown in Exhibits H-J to the Joint Declaration, Lead Plaintiff Fortis requests reimbursement of $24,200, Lead Plaintiff Metzler requests reimbursement of $35,325, and Mundy requests reimbursement of $3,300.

The amounts sought by the Settlement Class Representatives here are consistent with amounts awarded by other courts. *See*, e.g. *In re Charter Communications Sec. Litig.,* MDL Dkt. No. 1506, 2005 WL 4045741, at *13-14, *25 (E.D. Mo. June 30, 2005) (awarding lead plaintiff $26,625 as reimbursement for 88.75 hours that it expended for the benefit of the Class, and collecting other cases); *In re BankAmerica Corp. Sec. Litig.,* 210 F.R.D. 694 (E.D. Mo. 2002) (approving award totaling $130,000 to class representatives); *In re Xcel Energy, Inc. Sec. Litig.*, 364 F. Supp. 2d at 1000 (D. Minn. 2005) (awarding total of $100,000 to multiple class representatives).

As shown in their declarations, the Settlement Class Representatives devoted substantial time to the oversight of, and participation in, the Action on behalf of the Settlement Class. *See* Joint Dec., Exhibits H-J (Declarations of the Settlement Class Representatives). The Settlement Class Representatives also produced their trading records and prepared for and gave deposition testimony. Joint Dec., Exhibits H-J. The requested awards to the Settlement Class Representatives are appropriate and should be approved.

## VI.    CONCLUSION

For all the reasons stated herein, we respectfully submit that the Court should approve the fee and expense application and enter the order submitted herewith awarding Plaintiffs' Co-Lead Counsel attorneys' fees in the amount of 30% of the Gross Settlement Fund and $259,694.89 in expenses, plus interest. Additionally, the Settlement Class

Representatives should be receive payments to totaling $62,825 for their costs and

expenses (including loss wages) relating to their representation of the Settlement Class.


Dated:  May 28, 2008                      Respectfully submitted,

                                          **SPECTOR ROSEMAN & KODROFF,
                                          P.C.**
                                          /s/ Robert M. Roseman
                                          Robert M. Roseman (RR-1103)
                                          rroseman@srk-law.com
                                          Jeffrey L. Kodroff
                                          jkodroff@srk-law.com
                                          David Felderman
                                          dfelderman@srk-law.com
                                          Daniel Mirarchi
                                          dmirarchi@srk-law.com
                                          Rachel E. Kopp
                                          rkopp@srk-law.com
                                          1818 Market Street, Suite 2500
                                          Philadelphia, PA 19103
                                          (215) 496-0300

                                          *Liaison and Co-Lead Counsel for Plaintiffs*

                                          **COHEN MILSTEIN HAUSFELD
                                            & TOLL P.L.L.C.**
                                          Steven J. Toll (*pro hac vice*)
                                          stolldc@cmht.com
                                          Mark S. Willis (*pro hac vice*)
                                          mwillis@cmht.com
                                          Jason M. Leviton (*pro hac vice*)
                                          jleviton@cmht.com
                                          1100 New York Avenue, N.W.
                                          West Tower, Suite 500
                                          Washington, D.C. 20005
                                          (202) 408-4600

**MILBERG LLP**
Barry A. Weprin (BW-8637)
bweprin@milberg.com
Paul J. Andrejkovics (PA-2320)
pandrejkovics@milberg.com
One Pennsylvania Plaza
New York, NY  10119-0165
(212) 594-5300

***Co-Lead Counsel for Plaintiffs***