UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| WAYNE WELMON, Individually and on Behalf of all others similarly situated, | Case No. 06-CV-01283 (JES) |
| Plaintiff, | ELECTRONICALLY FILED |
| vs. | |
| CHICAGO BRIDGE & IRON CO. N.V., GERALD M. GLENN, ROBERT B. JORDAN, and RICHARD E. GOODRICH, | |
| Defendants. | |

**JOINT DECLARATION OF ROBERT M. ROSEMAN, MARK S. WILLIS, AND BARRY A. WEPRIN IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT AND PLAN OF ALLOCATION OF SETTLEMENT PROCEEDS AND PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES**

**COHEN, MILSTEIN, HAUSFELD & TOLL, P.L.L.C.**
Steven J. Toll (admitted *pro hac vice*)
Mark S. Willis (admitted *pro hac vice*)
Jason M. Leviton (admitted *pro hac vice*)
1100 New York Avenue, N.W.
Suite 500, West Tower
Washington, D.C. 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699

**MILBERG LLP**
Barry A. Weprin (BW-8637)
Paul J. Andrejkovics (PA-2320)
One Pennsylvania Plaza
New York, NY 10119-0165
Telephone: (212) 594-5300
Facsimile: (212) 868-1229

*Co-Lead Counsel For Lead Plaintiffs and Proposed Settlement Class Representative Walter J. Mundy*

**SPECTOR ROSEMAN & KODROFF, P.C.**
Robert M. Roseman (RR-1103)
Jeffrey L. Kodroff
David Felderman
Daniel J. Mirarchi
Rachel E. Kopp
1818 Market Street, 25th Floor
Philadelphia, PA 19103
Telephone: (215) 496-0300
Facsimile: (215) 496-6611

Robert M. Roseman, Mark S. Willis, and Barry A. Weprin hereby declare:

## I.    INTRODUCTION AND BACKGROUND

1.    Our firms, Spector Roseman and Kodroff, P.C. ("SRK"), Cohen, Milstein, Hausfeld & Toll, P.L.L.C. ("CMHT"), and Milberg LLP ("Milberg"), are Plaintiffs' Co-Lead Counsel representing the Settlement Class in this securities fraud class action (the "Action").[1]  We have personal knowledge of the matters set forth herein based upon our personal direction of all material aspects of the prosecution and settlement of this litigation.  Plaintiffs' Co-Lead Counsel was vested with sole authority to conduct the litigation on behalf of Lead Plaintiffs Fortis Investment Management N.A./S.A. ("Fortis") and Metzler Investment GmbH ("Metzler") and Walter J. Mundy ("Mundy") (collectively "Settlement Class Representatives") and to enter into a settlement of the litigation.  Plaintiffs' Co-Lead Counsel faithfully carried out their mandate, zealously litigating this case and ultimately arriving at the proposed Settlement, which the Court has preliminarily approved.[2]  *See* Preliminary Order for Notice and Hearing in Connection with Settlement Proceedings, dated January 30, 2008 ("Preliminary Order") (Docket No. 75).

2.    We submit this Joint Declaration in support of Plaintiffs' motion, pursuant to Rule 23 of the Federal Rules of Civil Procedure, for final approval of the proposed Settlement with Defendants.  The motion includes our application for an award of attorneys' fees and reimbursement of expenses on behalf of firms working at the behest of

---

[1] Fortis selected CMHT and SRK as their replacement counsel for Milberg Weiss & Bershad (n/k/a Milberg LLP) after that firm was indicted by the United States Department of Justice.  Metzler, while retaining Milberg as counsel, also hired Motley Rice to act as additional counsel.  A summary report of the hours, lodestar and expenses of Lead Counsel, Sturman LLC and Motley Rice LLC is attached hereto as Exhibit A.  The affidavits of each of these firms, respectively, are attached hereto as Exhibit B through D.

[2] Capitalized terms shall have the same meaning as in the Stipulation and Agreement of Settlement dated as of January 22, 2008 (the "Stipulation"), previously filed in this Action.

Plaintiffs' Co-Lead Counsel, and for the reimbursement of reasonable costs and expenses (including lost wages) for each of the proposed Settlement Class Representatives directly related to their representation of the Settlement Class in the prosecution of this litigation.

3.      As described herein, the Settlement was the product of intensive, arm's-length negotiations between Plaintiffs' Co-Lead Counsel and counsel for Defendants during the course of a one-day mediation before the Honorable Eugene F. Lynch (Ret.) in San Francisco.  The Settlement reflects careful consideration of the strengths and weaknesses of the claims against Defendants, as informed by Plaintiffs' Co-Lead Counsel's investigation, developments in the law, rulings by this Court, and through confirmatory discovery.

4.      The Settlement, as set forth in the Stipulation, provides for the payment by Defendants of $10.5 million in cash and the implementation of corporate governance measures[3] for the benefit of the members of the Settlement Class.  The Settlement Class is defined as all persons who purchased the securities of Chicago Bridge & Iron N.V. ("CB&I" or the "Company") during the period March 9, 2005 and February 3, 2006, inclusive (the "Settlement Class Period").  The Settlement will resolve all claims made in the Action among all parties.

5.      Based on the facts set forth in this Declaration, it is respectfully submitted that the proposed Settlement is fair, reasonable and adequate, and represents an excellent result for the Settlement Class.  It provides an immediate and substantial cash benefit for

---

[3] CB&I agrees to implement the following corporate governance measures to last no fewer than five (5) years: (i) all stock sales by any of CB&I's Directors, or by CB&I's Chief Executive Officer and Chief Operating Officer, of shares of their personal holdings in CB&I stock will be approved in advance of such sales by CB&I's General Counsel; and (ii) at least one of the Directors on CB&I's Supervisory Board shall possess an accounting background or related financial management expertise, which includes knowledge and experience sufficient to evaluate CB&I's compliance with GAAP and GAAS.

Settlement Class Members without the risks, delays or costs of continued litigation, and indeed represents a superior recovery (measured as a percentage of total damages recovered) in a class action securities case that presented decidedly above-average litigation risk. For example, as recently reported by Cornerstone Research,[4] the median settlement amount in securities fraud cases expressed as a percentage of estimated damages, for cases with estimated total damages in the range of $50-$125 million, was 5.0% for the period 1996-2006, and 4.7% for 2007. *See* Cornerstone Report at 6, attached hereto as Exhibit E. Here, by contrast, the $10.5 million Settlement represents nearly 10% of the class' best-case total estimated damages of $114.9 million submitted to Judge Lynch during the mediation. Furthermore, according to Cornerstone Research, the $10.5 million recovery here is significantly higher than the value of the median settlement ($6.9 million) in class actions reported during the period 1997-2006, and is also higher than the value of the median settlement ($9.0 million) for 2007. *Id.* at 2.

6.    Plaintiffs' Co-Lead Counsel and the firms working at their behest prosecuted this Action on a wholly-contingent basis and, to date, have received no compensation whatsoever for their considerable efforts on behalf of the Settlement Class. The fee request of 30% of the Gross Settlement Fund created for the benefit of the Settlement Class is fair and reasonable and warrants Court approval. Whether assessed as a percentage of the Settlement Fund, or as a multiple of counsel's lodestar, the requested fee is well within the range of fees customarily awarded in similar actions within this District and other jurisdictions, and (as more fully set forth in Lead Plaintiffs' Memorandum in Support of Their Application for an Award of Attorneys' Fees and

---

[4] *See* L. Simmons and E. Ryan, *Securities Class Action Settlements: 2007 Review and Analysis* (the "Cornerstone Report"), available at www.cornerstone.com.

Reimbursement of Expenses) is fully justified in light of the substantial benefit achieved for the Settlement Class, the substantial risks undertaken, and the quality and extent of the services rendered.  Attached hereto are affidavits of Plaintiffs' Co-Lead Counsel from each of the firms that were involved in this Action as Exhibits B-D.  These affidavits set forth the respective contributions of each firm to the prosecution of the claims as attested to by the representative of each firm.  In the aggregate, counsel's time records show 6,170.55 hours devoted to this action or over $2.5 million in lodestar.  *See also* Compendium of Plaintiffs' Counsel's Affidavits in Support of Plaintiffs' Counsels' Application for an Award of Attorneys' Fees and Reimbursement of Expenses from the Settlement Fund attached hereto as Exhibit A.

7.      Plaintiffs' Co-Lead Counsel also seeks reimbursement of expenses reasonably and necessarily incurred in prosecuting this Action, including expert fees, in the aggregate amount of $259,694.89, plus interest.  *See* Exhibits A-D.

8.      The Court preliminarily approved the terms of the proposed Settlement by entering the Preliminary Order on January 30, 2008, and ordered the mailing of the Court-approved notice (the "Notice") to the Settlement Class Members and ordered the publication of notice in English in the national and European editions of *The Wall Street Journal* and *Financial Times*, and in German in the *Frankfurter Allgemeine Zeitung* and *Berliner Zeitung*, and transmission over the Global Media Circuit of *Business Wire*.  The Notice complied with Rule 23 of the Federal Rules of Civil Procedure and due process in that it provided, *inter alia*, all necessary and required information concerning the Action, the proposed Settlement, the hearing date, the Settlement Class Members' rights to appear and object to the Settlement, the release of claims, Plaintiffs' Co-Lead Counsel's request

for attorneys' fees and reimbursement of expenses, and the Settlement Class Representatives' requests for the reimbursement of their reasonable costs and expenses (including loss wages) directly relating to the representation of the Settlement Class.

9.    Commencing on February 8, 2008, the Notice was mailed *via* first-class mail, postage pre-paid, to the Settlement Class Members or their nominees by Complete Claim Solutions, LLC, the claims administrator retained by Plaintiffs' Co-Lead Counsel and approved by the Court in the Preliminary Order. *See* Affidavit of Charlene Young Re: (A) Mailing of the Notice and the Proof of Claim; and (B) Report on Requests for Exclusion Received ("Young Affidavit"), dated May 22, 2008, attached hereto as Exhibit F. As set forth in the Notice, the deadline for filing objections was May 8, 2008. To date, there has not been a single objection to the Settlement, the Plan of Allocation the requests for attorneys' fees and reimbursement of expenses, or for the Settlement Class Representatives' costs and expenses directly related to their representation of the Settlement Class. As set forth in the Notice, the deadline for mailing requests for exclusion was May 8, 2008. Only one Settlement Class Member has requested exclusion from the Settlement Class.[5]

## II.    **THE LITIGATION**

10.    The following summary is meant to provide the Court with an overview of the litigation in an effort to detail the work performed by Plaintiffs' Co-Lead Counsel and the firms working at their behest. The description herein does not purport to be an exhaustive list of each and every action undertaken by Plaintiffs' Co-Lead Counsel and the firms working at their behest since the inception of this litigation.

---

[5] The only purported Settlement Class Member to request exclusion reported a purchase of 300 shares of CB&I common stock on November, 7, 2005. This represents a very small fraction of the Settlement Class.

A.    **Pleadings**

11.    Beginning on or about February 21, 2006, eleven putative class action complaints were filed in the United States District Court for the Southern District of New York against CB&I, Richard E. Goodrich ("Goodrich"), Gerald M. Glenn ("Glenn") and Robert B. Jordan ("Jordan") (collectively "Defendants").[6]  The cases were subsequently consolidated under the above caption by Order dated May 10, 2006.  In its May 10, 2006 Order, this Court appointed Metzler and Fortis as Lead Plaintiffs in the consolidated action.  Thereafter, on July 5, 2006, Lead Plaintiffs filed their Consolidated Amended Class Action Complaint for Violations of the Federal Securities Laws ("Complaint").  The allegations in the Complaint arose from Defendants' dissemination of false and misleading statements in filings with the Securities and Exchange Commission ("SEC") filings, press releases, and conference calls with analysts beginning on March 9, 2005, regarding their failure to disclose earning problems involving, *inter alia*, cost overruns on construction projects, unapproved change orders, and losses due to derivative contracts.

12.    The Complaint further alleges that, on October 26, 2005, CB&I announced that its third-quarter financial results would be delayed because they were not finalized in time to meet the original schedule.  However, on October 31, 2005, CB&I issued a press release disclosing that the delay was triggered by a memorandum from Tommy Rhodes ("Rhodes"), CB&I's controller, alleging accounting improprieties.

---

[6] These actions were: *Welmon v. Chicago Bridge & Iron Co. N.V., et al.*, Case No. 06-CV-01283 (JES); *O'Brien v. Chicago Bridge & Iron Co. N.V., et al.*, Case No. 06-CV-01532 (JES); *Sabella v. Chicago Bridge & Iron Co. N.V., et al.*, Case No. 06-CV-01542 (JES); *Chiert v. Chicago Bridge & Iron Co. N.V., et al.*, Case No. 06-CV-01677 (JES); *Friedman v. Chicago Bridge & Iron Co. N.V., et al.*, Case No. 06-CV-01835 (JES); *Rasheed v. Chicago Bridge & Iron Co. N.V., et al.*, Case No. 06-CV-01879 (JES); *Detenber v. Chicago Bridge & Iron Co. N.V., et al.*, Case No. 06-CV-01957 (JES); *Taddei v. Chicago Bridge & Iron Co. N.V., et al.*, Case No. 06-CV-01959 (JES); *Stein v. Chicago Bridge & Iron Co. N.V., et al.*, Case No. 06-CV-01976 (JES); *Goldstein v. Chicago Bridge & Iron Co. N.V., et al.*, Case No. 06-CV-02563 (UA); *Weis v. Chicago Bridge & Iron Co. N.V., et al.*, Case No. 06-CV-02671 (UA).

Despite this, in the same release, CB&I assured shareholders that, *inter alia*, financial viability, growth potential, and strong cash position of CB&I would remain intact. Nevertheless, the Rhodes Memo expressed concerns associated with the accounting for claims on two projects as well as the assessment of costs to complete two projects.[7]  Lead Plaintiffs alleged that the fraud was finally revealed when CB&I announced that it had fired Defendants Glenn and Jordan, that CB&I expected to issue revised guidance regarding its operations for the year ended December 31, 2005, and disclosed that all previous earnings guidance issued by the Company for 2005 were no longer operative. As a result, the Settlement Class Representatives and the Settlement Class suffered significant damages.

13.    The Complaint charged Defendants with violations of §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78j(b) and 78t(a) and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5.  In connection with the drafting of the Complaint, Plaintiffs' Co-Lead Counsel engaged in an extensive review of, among other things, CB&I's public statements, filings, press releases, as well as analyst reports and other industry studies and materials.  Plaintiffs' Co-Lead Counsel also worked with a financial consulting expert.

14.    Defendants subsequently filed two motions to dismiss the Complaint arguing that the claims should be dismissed for several reasons including, *inter alia*, that: (a) plaintiffs' allegations regarding the 2Q05 accounting errors did not support a "strong

---

[7] On January 27, 2006, CB&I disclosed that it had entered into a lucrative "Stay Bonus Agreement" with Rhodes valued at over $1.74 million in an apparent attempt to silence a potential whistle-blower. According to the Agreement, Rhodes would receive total compensation of $1.74 million, plus a five percent contribution to Rhodes's savings plan, in exchange for, *inter alia*, remaining an employee of CB&I, "withdraw[ing] and dismiss[ing] or clos[ing] any and all Complaints he previously has filed against the Company. . .," and refraining from "defam[ing] or mak[ing] disparaging, negative or other similar remarks concerning the Company."

inference" of scienter; (b) the October and November 2005 press releases did not relate to the 2Q05 results; (c) the termination of defendants Glenn and Jordan, the resignation of Goodrich, and the Stay Bonus Agreement paid to Rhodes did not support an inference of fraudulent intent; (d) allegations of Defendants' access to internal reports were insufficient to support scienter as a matter of law; (e) plaintiffs' failed to allege facts suggesting that the 2Q05 issues proximately caused their economic loss; (f) Defendants' public statements were forward-looking statements protected under the Private Securities Litigation Reform Act of 1995 ("PSLRA"); (g) plaintiffs failed to state a claim with respect to Defendants' Sarbanes-Oxley certifications and descriptions of accounting policies; and (h) plaintiffs did not state a claim for control person liability.

15.     On October 6, 2006, Lead Plaintiffs filed their omnibus opposition to Defendants' motions to dismiss asserting, *inter alia*, that: (a) the Complaint set forth several false and misleading statements and omissions made by Defendants during the Settlement Class Period, including a March 9, 2005 press release and SEC filing concerning CB&I's current position and guidance for 2005, and why they were false and misleading; (b) plaintiffs properly alleged scienter through a strong circumstantial evidence of conscious misbehavior including showing that Defendants Goodrich, Glenn, and Jordan had access to internal information contradicting the Company's public statements, that CB&I's financial statements violated GAAP, the Company's payment of over $1.74 million to silence whistle-blower Rhodes, and the abrupt firings of Glenn and Jordan and Goodrich's resignation; (c) plaintiffs properly alleged scienter by demonstrating Defendants had motive and opportunity to commit fraud by their large insider stock sales; (d) plaintiffs properly pled loss causation; (e) neither the PSLRA's

safe-harbor provision nor the common law bespeaks doctrine insulates Defendants from issuing false and misleading guidance; (f) plaintiffs adequately pled a claim with respect to Defendants' Sarbanes-Oxley certifications, assurances regarding internal controls and descriptions of accounting policies; (g) plaintiffs adequately alleged causes of action against Defendant Jordan under the Exchange Act; and (h) plaintiffs properly alleged Section 20(a) control person claims.

16.     After extensive briefing by the parties, and a hotly contested oral argument before the Court on November 7, 2006, the Court denied Defendants' motions to dismiss the Complaint in their entirety.

17.     As a result, on November 29, 2006, Defendants filed their answers to the Complaint.

**B.     Discovery**

18.     In accordance with the PSLRA, discovery was stayed against Defendants until their respective motions to dismiss the various claims were adjudicated.  *See* 15 U.S.C. § 78u-4(b)(3)(B).

19.     During the November 7, 2006 hearing, and in the subsequent Order dated November 13, 2006, this Court stayed all discovery except for discovery related to class certification and set forth the schedule for class certification briefing.  The Court also permitted Lead Plaintiffs to serve discovery on third party witnesses[8] for the limited purposes of notifying those parties that the litigation exists, that all discovery is stayed

---

[8] Plaintiffs served subpoenas *duces tecum* and document requests on, *inter alia*, the following companies: Wells Fargo Investments LLC; Simmons & Company International; Sanders Morris Harris Group, Inc.; Ernst & Young (NY); Ernst & Young (TX); Deloitte & Touche USA LLP (NY); Deloitte & Touche USA LLP (TX); CreditSuisse First Boston; and Citigroup, Inc.

pending resolution of plaintiffs' class certification motion, and to take all steps necessary to preserve documentation identified by Lead Plaintiffs in the subpoena.

### C.    Class Certification

20.    On March 2, 2007, Lead Plaintiffs and Mundy filed their Motion for Class Certification on the heels of the Second Circuit Court of Appeals opinion pertaining to class certification in *In re Initial Public Offerings Sec. Litig.*, 471 F.3d 24 (2d Cir. 2006) ("*IPO*").  As a result, plaintiffs' class certification motion was supported by the Declaration of Scott D. Hakala, Ph.D., Plaintiffs' expert witness on the issue of market efficiency.

21.    During this time period, Defendants also propounded multiple sets of discovery requests and interrogatories on Lead Plaintiffs and Mundy.  As a result of Defendants' overly broad document requests, Plaintiffs' Co-Lead Counsel and Defendants' Counsel engaged in a series of meet and confer conference calls in an attempt to limit the scope of Defendants' discovery requests and interrogatories. Nevertheless, Lead Plaintiffs and Mundy were required to produce thousands of pages of discovery and respond to the interrogatories.

24.    Also in connection with class certification discovery, Defendants deposed the following witnesses: (1) Paul Martin as a representative of Fortis; (2) Stefanie Buchmann as a representative of Metzler; and (3) Mundy.  Plaintiffs' Co-Lead Counsel expended significant time and resources in attending and defending these depositions, which took place in New York City, London, and Oklahoma City.

25.    Thereafter, Defendants served on plaintiffs their Opposition to Plaintiffs' Motion for Class Certification ("Opposition Brief"), which included excerpts of

testimony taken of the Lead Plaintiffs and Mundy. Plaintiffs' then submitted a Reply to Defendants' Opposition Brief.

26.     On May 29, 2007, the Court heard oral argument on Plaintiffs' Motion for Class Certification. At the conclusion of the presentations, the Court ordered that an evidentiary hearing would be needed to assist the Court in ruling on the motion.

## III.    THE SETTLEMENT

27.     Following the hearing on Lead Plaintiffs' Motion for Class Certification, the parties began discussing the possibility of settlement. After several conversations, the parties agreed to retain the services of an experienced mediator. Eventually, the parties agreed to a one-day mediation before the Honorable Eugene F. Lynch (Ret.).

28.     On October 24, 2007, the parties and a number of CB&I's insurance carriers engaged in a mediation session before Judge Lynch in San Francisco. In preparation for the mediation, Plaintiffs' Co-Lead Counsel consulted with their damages expert and prepared and submitted their Mediation Statement which incorporated various damage analyses. While the parties engaged in serious negotiations, with each side pointing out its strengths and the other side's potential weaknesses, the mediation did not result in a settlement.

29.     However, on October 25, 2007, Judge Lynch issued a proposal for a settlement, which included $10.5 million in cash, certain corporate governance measures to be implemented by CB&I, and the requirement of confirmatory discovery. Defendants were advised that the request would remain open for three weeks on the condition that the evidentiary hearing for class certification scheduled by the Court would be continued.

30.     Prior to the expiration of the three week period, Defendants agreed to the settlement. Plaintiffs' Co-Lead Counsel then negotiated the terms and manner of the Memorandum of Understanding and, after completion of confirmatory discovery, the Stipulation.

31.     The Stipulation was entered into on January 22, 2008 and provided for the payment of $10.5 million in cash and the implementation of corporate governance reforms.

32.     As part of the Settlement, Plaintiffs' Co-Lead Counsel conducted confirmatory discovery to substantiate that the settlement was fair, reasonable, and adequate. As a result, Plaintiffs' Co-Lead Counsel reviewed thousands of pages of documents produced by Defendants pursuant to Lead Plaintiffs' document requests. After a review of these documents, Lead Counsel took the deposition of Alan Black, Controller, Financial Operations at CB&I and Mr. Rhodes – the alleged whistle-blower – and conducted extensive interviews of defendants Glenn and Jordan.

IV.     **PRELIMINARY APPROVAL BY THE COURT**

33.     The Court preliminarily approved the proposed Settlement on January 30, 2008. The Preliminary Approval Order provisionally certified the Action as a class action and certified the Lead Plaintiffs and Mundy as Settlement Class Representatives, scheduled the Settlement Fairness Hearing for June 3, 2008, appointed Complete Claim Solutions, LLC as the Claims Administrator, and approved the form, substance and requirements of the Notice and the Proof of Claim.

34.     In accordance with the Court's Preliminary Order, copies of the Notice (which included the Plan of Allocation) were mailed to Settlement Class Members or their nominees.  *See* Young Affidavit.

35.     Also in accordance with the Court's Preliminary Order, Publication Notice was published in English in the national and European editions of *The Wall Street Journal* and *Financial Times*, published in German in the *Frankfurter Allgemeine Zeitung* and *Berliner Zeitung*, and transmitted over the Global Media Circuit of *Business Wire*. *See* Affidavit of Paul J. Andrejkovics Re:  Publication of the Summary Notice of Pendency of Class Action, Proposed Settlement and Settlement Hearing, attached hereto as Exhibit G.

36.     As provided in the Notice, Settlement Class Members had until May 8, 2008 to file objections to the Settlement or seek exclusion from the Settlement Class and have until June 26, 2008, to submit Proofs of Claim to the Claims Administrator.  As noted herein, not a single Class member has objected to the Settlement and only one has sought to opt out.

37.     Throughout the litigation, Plaintiffs' Co-Lead Counsel participated in regular conference calls and otherwise stayed in regular communication to discuss the latest developments, make assignments, and generally discuss case strategy as the case proceeded.  In addition, Plaintiffs' Co-Lead Counsel regularly advised and consulted with the proposed Settlement Class Representatives concerning the progress of the litigation and discussions concerning Settlement, including offers made and terms.

## V.     **PLAN OF ALLOCATION**

38.     Pursuant to the Preliminary Order, and as set forth in the Notice, all Settlement Class Members who wish to participate in the distribution of the Net

Settlement Fund must submit a valid Proof of Claim form postmarked on or before June 26, 2008. The $10.5 million Cash Settlement Amount and the interest earned thereon shall be the Gross Settlement Fund. The Gross Settlement Fund, less all taxes, approved costs, fees and expenses (the "Net Settlement Fund") shall be distributed to members of the Settlement Class according to the Plan of Allocation.

39.    If approved, the Plan of Allocation will govern how the proceeds of the Net Settlement Fund will be distributed among Settlement Class Members who submit timely, valid Proof of Claim forms ("Authorized Claimants").

40.    The Claims Administrator shall determine each Authorized Claimant's *pro rata* share of the Net Settlement Fund based upon each Authorized Claimant's "Recognized Claim." The Recognized Claim formula is not intended to be an estimate of the amount of what a Settlement Class Member might have been able to recover after a trial; nor is it an estimate of the amount that will be paid to Authorized Claimants pursuant to the settlement. The Recognized Claim formula is the basis upon which the Net Settlement Fund will be proportionately allocated to the Authorized Claimants.

41.    The Plan of Allocation reflects Plaintiffs' Co-Lead Counsel's assessment, in consultation with their damages consultant, of the facts regarding the artificial inflation caused by the alleged misrepresentations and omissions made during the Settlement Class Period.

42.    The potential damages were allegedly incurred on the declines in CB&I common stock price following a partially corrective disclosure after the close of trading on October 26, 2005 and following a full corrective disclosure after the close of trading on February 3, 2006. For CB&I common stock purchased during the Settlement Class

Period, the Plan of Allocation recognizes the losses incurred on these disclosures as the basis for allocating the recovery among claimants. Under the PSLRA, the potential damages are somewhat reduced if a claimant sold his shares in the 90 day period following the end of the Settlement Class Period, or if he continued to hold the shares beyond the 90 day period because the price of CB&I common stock " bounced back" above the price immediately following the corrective disclosures.

43.    In addition, the United States Supreme Court's decision in *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336 (2005) requires that to be compensable as damages, plaintiffs must show that any decrease in the price of a security results from the elimination of the alleged artificial inflation, so that securities that were both purchased and sold before a corrective disclosure cannot show damages, even if the price has declined in the interim.

44.    As set forth above, the proposed Plan of Allocation reflects the plaintiffs' allegations that the price of CB&I common stock was inflated artificially by reason of allegedly false and misleading statements made by the Defendants. The artificial inflation allegedly began on March 9, 2005, after CB&I issued a press release and held a conference call with analysts announcing its financial results for fiscal year 2004 and touting its prospects for 2005. Plaintiffs allege that the March 9, 2005 statements failed to disclose that CB&I had several projects running over-budget and that CB&I lacked necessary internal controls to accurately report its financial condition. Plaintiffs further allege that Defendants created a materially false and misleading impression of the fair market value of CB&I common stock. Plaintiffs further contend that the price of CB&I common stock allegedly continued to be artificially inflated thereafter throughout the

Class Period, but that a partially corrective disclosure was made by Defendants after the close of trading on October 26, 2005 (when CB&I issued a press release announcing that it would delay release of its third quarter 2005 financial results because the results were not finalized in time to meet the schedule for the release of those results). The price of CB&I common stock, which had closed at $29.69 on October 26, 2005, fell to $23.47 at the close on October 27, 2005, a $6.22 per share drop. The price of CB&I common stock rebounded thereafter until the alleged full corrective information was disclosed on February 3, 2006, when, after the market closed, CB&I issued a press release announcing the termination of Defendants Glenn and Jordan, that it expected to issue revised guidance regarding its fiscal year 2005 financial results, and that all previous earnings guidance issued for 2005 was no longer operable. The price of CB&I common stock, which had closed at $29.00 on Friday, February 3, 2006, fell to $22.33 at the close on Monday, February 6, 2006 (a $6.67 per share drop), and reflected the elimination of the artificial inflation that the Defendants' alleged misrepresentations may have caused. In the 90 days following February 3, 2006, the price of CB&I common stock rebounded somewhat and the average for the 90 day period was $24.29 per share.

45.     Defendants deny any wrongdoing whatsoever and deny that CB&I's common stock was ever artificially inflated or that the Plaintiffs or any member of the Settlement Class suffered any damages. The Settlement was agreed upon without any concession or implication of any wrongdoing by any Defendant.

## Calculation of Claims Under the Plan of Allocation

46.     The following is the calculation of claims pursuant to the Plan of

Allocation:[9]

**"Recognized Claims"** on CB&I shares sold at a loss[10] will be calculated for purposes of the Settlement as follows:

(a) For shares of CB&I common stock <u>purchased during the period March 9, 2005 through and including October 26, 2005,</u> and

(1)     <u>Sold at a loss on or before October 26, 2005 (prior to any alleged corrective disclosures),</u> an Authorized Claimant's "Recognized Claim" from such shares shall be zero ($0.00).

(2)     <u>Sold at a loss during the period October 27, 2005 through and including February 3, 2006,</u> an Authorized Claimant's "Recognized Claim" from such shares shall mean **the least of:  (a)** $6.22 per share ($29.69 minus $23.47 -- the amount that the common stock dropped upon the alleged partially corrective disclosure); **or (b)** the PPP, but not more than $29.69 per share, minus the SPR, but not less than $23.47 per share; **or (c)** the PPP, but not more than $29.69 per share, less the average closing price of CB&I common shares during the period from October 27, 2005 to the date of sale.

(3)     <u>Sold at a loss during the period February 6, 2006 through and including May 4, 2006</u> (90 days after the end of the Settlement Class Period), an Authorized Claimant's "Recognized Claim" from such shares shall mean **the least of:  (a)** $7.36 per share ($29.69 minus $22.33 -- the amount that the common stock dropped from October 26, 2005 to February 6, 2006); **or (b)** the PPP, but not more than $29.69 per share, minus the SPR, but not less than $22.33 per share; **or (c)** the PPP, but not more than $29.69 per share, less the average closing price of CB&I common shares during the period from February 6, 2006 to the date of sale.

(4)     <u>Still held at the close of trading on May 4, 2006,</u> an Authorized Claimant's "Recognized Claim" from such shares shall mean **the lesser of:  (a)** $5.40 per share ($29.69 minus $24.29 -- the amount that the common stock dropped from October 26, 2005 to the average in the 90 days following the alleged full corrective disclosure) **or (b)** the PPP, but not more than $29.69 per share, minus $24.29 per share (the average closing price for the 90 days after the Class Period).[11]

---

[9] For purposes of calculating claims for the Settlement, the following terms have the indicated meanings: **"PPP"** means the purchase price paid for a security, and it includes the purchase price and any brokerage commissions or other charges incurred on the purchase.  **"SPR"** means the sales proceeds received and it is the net amount received for the security sold after deduction of brokerage commissions and other sales charges incurred on the sale.

[10] Shares purchased during the Settlement Class Period and sold for a gain (or no loss) shall have zero ($0.00) Recognized Claim.

[11] Shares purchased during the Settlement Class Period for $24.29 or less and held at the close of trading on May 4, 2006 have zero ($0.00) Recognized Claim.

(b) For shares of CB&I common stock <u>purchased during the period October 27, 2005 through and including February 3, 2006</u>, and

(1)     <u>Sold at a loss during the period October 27, 2005 through and including February 3, 2006</u>, an Authorized Claimant's "Recognized Claim" from such shares shall be zero ($0.00).

(2)     <u>Sold at a loss during the period February 6, 2006 through and including May 4, 2006</u>, an Authorized Claimant's "Recognized Claim" from such shares shall mean **the least of: (a)** $4.71 per share ($29.00 minus $24.29); **or (b)** the PPP, but not more than $29.00 per share, minus the SPR, but not less than $24.29 per share; **or (c)** the PPP, but not more than $29.00 per share, less the average closing price of CB&I common shares during the period from February 6, 2006 to the date of sale.

(3)     <u>Still held at the close of trading on May 4, 2006</u>, an Authorized Claimant's "Recognized Claim" from such shares shall mean **the lesser of: (a)** $4.71 per share ($29.00 minus $24.29; **or (b)** the PPP, but not more than $29.00 per share, minus $24.29 per share.[12]

47.     In the event a Settlement Class Member has more than one purchase or sale of CB&I common stock, all purchases and sales shall be matched on a First In First Out ("FIFO") basis.  Settlement Class Period sales (and sales in the 90 days after the Settlement Class Period) will be matched first against any CB&I shares held at the beginning of the Settlement Class Period and then against purchases in chronological order.  A purchase or sale of CB&I common stock shall be deemed to have occurred on the "contract" or "trade" date as opposed to the "settlement" or "payment" date.  The receipt or grant by gift, devise or operation of law of CB&I common stock during the Settlement Class Period shall not be deemed a purchase or sale of CB&I common stock for the calculation of an Authorized Claimant's Recognized Claim nor shall it be deemed an assignment of any claim relating to the purchase of such shares unless specifically provided in the instrument of gift or assignment.

48.     To the extent a Claimant had a gain from his, her or its overall transactions in CB&I common stock during the Settlement Class Period (and sales in the 90 days after

---

[12] Shares purchased during the period October 27, 2005 through and including February 3, 2006 for $24.29 or less and held at the close of trading on May 4, 2006 have zero ($0.00) Recognized Claim.

the Settlement Class Period), the value of the Recognized Claim will be zero. To the

extent that a Claimant suffered an overall loss on his, her or its overall transactions in

CB&I common stock during the Settlement Class Period (and sales in the 90 days after

the Settlement Class Period), but that loss was less than the Recognized Claim calculated

above, then the Recognized Claim shall be limited to the amount of the actual loss.

49.    For purposes of determining whether a Claimant had a gain from his, her,

or its overall transactions in CB&I common stock during the Settlement Class Period

(and sales in the 90 days after the Settlement Class Period) or suffered a loss, the Claims

Administrator shall:  (i) total the amount paid for all CB&I common stock purchased

during the Settlement Class Period by the claimant (the "Total Purchase Amount"); (ii)

match any sales of CB&I common stock during the Settlement Class Period (and sales in

the 90 days after the Settlement Class Period) first against the Claimant's opening

position in the stock (the proceeds of those sales will not be considered for purposes of

calculating gains or losses); (iii) total the amount received for sales of the remaining

shares of CB&I common stock sold during the Settlement Class Period (and sales in the

90 days after the Settlement Class Period) (the "Sales Proceeds"); and (iv) ascribe a

$24.29 per share holding value for the number of shares of CB&I common stock

purchased or acquired during the Settlement Class Period and still held at the close of

trading on May 4, 2006 (90-days after the end of the Settlement Class Period) ("Holding

Value"). The difference between (x) the Total Purchase Amount ((i) above) and (y) the

sum of the Sales Proceeds ((iii) above) and the Holding Value ((iv) above) will be

deemed a Claimant's gain or loss on his, her or its overall transactions in CB&I common

stock.

50. Each Authorized Claimant shall be allocated a *pro rata* share of the Net Settlement Fund based on his, her or its Recognized Claim as compared to the total Recognized Claims of all Authorized Claimants. The minimum distribution amount to an Authorized Claimant with a valid Recognized Claim shall be $10.00.

51. The proposed Plan of Allocation comports with Section 21D(e) of the PSLRA, 15 U.S.C. § 78u-4(e)(1) and (2), by calculating recognized losses in a manner that limits damages to those caused by the fraud, not unrelated market conditions. No member of the Settlement Class is treated differently under the Plan. Each investor will have his/her/its damages capped pursuant to Section 21D(e).

52. Perhaps the strongest evidence that the Plan of Allocation is both fair and reasonable is that not one Settlement Class Member, each of whom has a direct financial interest in the Settlement Fund, has objected to the Plan.

## VI. THE PROPOSED SETTLEMENT CLASS REPRESENTATIVES SHOULD BE REIMBURSED FOR THEIR REASONABLE COSTS AND EXPENSES DIRECTLY RELATING TO THEIR REPRESENTATION OF THE SETTLEMENT CLASS

53. The Notice states that "Plaintiffs' Co-Lead Counsel are also moving the Court for an award of payments to the Settlement Class Representatives for an amount not to exceed $80,000 in total for reimbursement of their reasonable costs and expenses (including lost wages) directly relating to their representation of the Settlement Class." As shown in the accompanying declarations attached hereto as Exhibits H-J, Lead Plaintiff Fortis requests reimbursement of $24,200, Lead Plaintiff Metzler requests reimbursement of $35,325, and Mundy requests reimbursement of $3,300.

54. As demonstrated in their declarations, the Settlement Class Representatives devoted substantial time to the oversight of, and participation in, the

Action on behalf of the Settlement Class. *See id.* The Settlement Class Representatives also produced documents with respect to their investment in CB&I and prepared for and gave deposition testimony. Additionally, the Settlement Class Representatives, working together, were involved in the settlement process including reviewing the mediation statement, consulting with Counsel throughout the mediation, and authorizing the settlement. The requested awards to the Settlement Class Representatives, as allowed under the PSLRA, are appropriate and should be approved.

## VII.    CONCLUSION

55.    Plaintiffs' Co-Lead Counsel respectfully submit that, based on our understanding of the facts and circumstances concerning the subject matter of this Action, the principles of law applicable to them, the procedural posture of this Action and the risks of continued litigation against the Defendants, the Settlement represents an extremely favorable result for the Settlement Class and should be approved by this Court.

56.    Based on all these factors, as well as Plaintiffs' Co-Lead Counsel's extensive experience in litigating securities class actions, we believe that the Settlement, which provides a substantial recovery to the Settlement Class is far more beneficial than waiting for an uncertain outcome.

57.    Wherefore, we respectfully submit that the Settlement and Plan of Allocation are fair, reasonable and adequate in light of the criteria generally considered by courts in this Circuit. Furthermore, we respectfully submit that our application for an award of attorneys' fees in the amount of 30% of the Gross Settlement Fund and expenses in the amount of $259,694.89 and for reimbursement to the Settlement Class Representatives in the amounts requested is reasonable and justified based on the work performed in this litigation, the result achieved for the Class and under applicable law.

We declare under the penalty of perjury that the foregoing is true and correct.

Executed this 28th day of May, 2008.

Robert M. Roseman (RR-1103)
**SPECTOR ROSEMAN & KODROFF, P.C.**
1818 Market Street, Suite 2500
Philadelphia, Pa. 19103
(215) 496-0300

Mark S. Willis (*pro hac vice*)
**COHEN MILSTEIN HAUSFELD
& TOLL P.L.L.C.**
1100 New York Avenue, N.W.
West Tower, Suite 500
Washington, D.C. 20005
(202) 408-4600

Barry A. Weprin (BW-8637)
**MILBERG LLP**
One Pennsylvania Plaza
New York, NY  10119-0165
(212) 594-5300

We declare under the penalty of perjury that the foregoing is true and correct.

Executed this 28th day of May, 2008.

_____
Robert M. Roseman (RR-1103)
**SPECTOR ROSEMAN & KODROFF, P.C.**
1818 Market Street, Suite 2500
Philadelphia, Pa. 19103
(215) 496-0300

_____
Mark S. Willis (*pro hac vice*)
**COHEN MILSTEIN HAUSFELD
& TOLL P.L.L.C.**
1100 New York Avenue, N.W.
West Tower, Suite 500
Washington, D.C. 20005
(202) 408-4600

_____
Barry A. Weprin (BW-8637)
**MILBERG LLP**
One Pennsylvania Plaza
New York, NY  10119-0165
(212) 594-5300

We declare under the penalty of perjury that the foregoing is true and correct.

Executed this 28th day of May, 2008.

_____
Robert M. Roseman (RR-1103)
**SPECTOR ROSEMAN & KODROFF, P.C.**
1818 Market Street, Suite 2500
Philadelphia, Pa. 19103
(215) 496-0300

_____
Mark S. Willis (*pro hac vice*)
**COHEN MILSTEIN HAUSFELD
& TOLL P.L.L.C.**
1100 New York Avenue, N.W.
West Tower, Suite 500
Washington, D.C. 20005
(202) 408-4600

_____
Barry A. Weprin (BW-8637)
**MILBERG LLP**
One Pennsylvania Plaza
New York, NY  10119-0165
(212) 594-5300